# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

―――――――――

## No. 24-30223

―――――――――

Frisard's Transportation, L.L.C.; Louisiana Motor Transport Association, Incorporated; A & B Group, Incorporated; Triple G Express, Incorporated; Northlake Moving and Storage, Incorporated,

Plaintiffs - Appellants

v.

United States Department of Labor; Julie A. Su, in her official capacity as Acting Secretary, U.S. Department of Labor; Jessica Looman, in her official capacity as Administrator of the Wage and Hour Division; and United States Department of Labor, Wage and Hour Division,

Defendants - Appellees

―――――――――――――――――――

On Appeal from the United States District Court
for the Eastern District of Louisiana
Case No. 2:24-cv-00347-L Honorable Eldon E. Fallon

―――――――――――――――――――

### APPELLANTS' OPENING BRIEF

M.E. Buck Dougherty III
Reilly Stephens
Liberty Justice Center
13341 W. U. S. Hwy. 290, Bldg. 2
Austin, Texas 78737
Telephone (512) 481-4400
bdougherty@libertyjusticecenter.org
rstephens@libertyjusticecenter.org
*Attorneys for Plaintiffs-Appellants*

James Baehr
Sarah Harbison
Pelican Center for Justice
400 Poydras Street, # 900
New Orleans, LA 70130
Telephone (504) 475-8407
james@pelicaninstitute.org
sarah@pelicaninstitute.org

i

## CERTIFICATE OF INTERESTED PERSONS

1.  Pursuant to Fifth Circuit Rule 28.2.1, Plaintiffs-Appellants file this Certificate of Interested Persons. The case number, style, and complete case caption of all parties is on the preceding cover page.

2.  The undersigned counsel of record certifies that the following listed persons and non-governmental entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

    a.    Frisard's Transportation, L.L.C.

    b.    Louisiana Motor Transport Association, Incorporated

    c.    A & B Group, Incorporated

    d.    Triple G Express, Incorporated

    e.    Northlake Moving & Storage, Incorporated

3.  Defendants-Appellees are the United States Department of Labor; Julie A. Su, in her official capacity as Acting Secretary, United States Department of Labor; Jessica Looman, in her official capacity as Administrator of the Wage and Hour Division; and United States Department of Labor, Wage and Hour Division (collectively, the "DOL").

4.  These DOL Defendants-Appellees are represented in this appeal

by Alisa Beth Klein and Joseph Forrest Busa, attorneys with the

United States Department of Justice.


/s/ James Baehr
Attorney for Plaintiffs-Appellants

# REQUEST FOR ORAL ARGUMENT

Plaintiffs-Appellants respectfully request oral argument because of the significance and importance of the DOL's independent contractor classification rule at issue, effective March 11, 2024. Employee or Independent Contractor Classification Under the Fair Labor Standards Act, 89 Fed. Reg. 1638 (Jan. 10, 2024) (the "2024 Rule").

The 2024 Rule rescinded the existing independent contractor classification rule promulgated by the DOL in 2021. Independent Contractor Status Under the Fair Labor Standards Act, 86 Fed. Reg. 1168 (Jan. 7, 2021) (the "2021 Rule"). In rescinding the 2021 Rule, the DOL acknowledges its new 2024 Rule is a "significant regulatory action." 89 Fed. Reg. at 1725.

Oral argument would help place this case in context among those recent and older authorities under the Administrative Procedure Act (the "APA"). And it would help explain the statutory framework of the Fair Labor Standards Act ("FLSA") at issue, its application to independent contractor and employee classification, and the DOL's legal authority to rescind agency rules that it recently promulgated.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.........................................ii

REQUEST FOR ORAL ARGUMENT ....................................................iv

TABLE OF AUTHORITIES.................................................................vii

JURISDICTIONAL STATEMENT............................................................1

ISSUES PRESENTED ..............................................................................3

INTRODUCTION....................................................................................4

STATEMENT OF THE CASE ..................................................................6

    A. Factual Background..........................................................................6

        1. DOL's 2021 Rule .......................................................................6

        2. DOL's 2024 Rule .......................................................................7

        3. Plaintiffs and their Injuries .......................................................9

    B. Procedural History..........................................................................18

STANDARD OF REVIEW .......................................................................19

SUMMARY OF ARGUMENT..................................................................20

ARGUMENT...........................................................................................21

  I. The district court erred in denying Plaintiffs' motion for a
     preliminary injunction to set aside the DOL's unlawful
     2024 Rule .........................................................................................21

A. Plaintiffs are likely to succeed on the merits of their claims because the 2024 Rule is arbitrary and capricious in violation of the APA .................................................................. 21

    1. The 2024 Rule is arbitrary and capricious because DOL considered only the binary choice of whether to retain or rescind the 2021 Rule, without also considering less disruptive alternatives .............................................................. 25

    2. The 2024 Rule is arbitrary and capricious because DOL failed to consider employers' reliance interests on the 2021 Rule ........................................................................................ 29

B. The district court abused its discretion in its findings because the 2024 Rule will irreparably harm the Plaintiffs since they will incur substantial financial injury with no guarantee of eventual recovery........................................................................... 31

C. The balance of equities tips in Plaintiffs' favor for issuing a preliminary injunction ................................................. 32

II. This Court may issue a preliminary injunction in favor of Plaintiffs and set aside the 2024 Rule because the record is clear, and remand would serve no useful purpose...................................... 33

CONCLUSION ........................................................................................ 34

CERTIFICATE OF SERVICE ................................................................ 35

CERTIFICATE OF COMPLIANCE……………... .................................... 36

# TABLE OF AUTHORITIES

## Cases

*10 Ring Precision, Inc. v. Jones*,
  722 F.3d 711 (5th Cir. 2013) ................................................................ 24

*Alabama Ass'n of Realtors v. HHS*,
  141 S. Ct. 2485 (2021) .............................................................. 31, 32

*Azar v. Allina Health Servs.*,
  139 S. Ct. 1804 (2019) ................................................................ 23

*Boudreaux v. La. State Bar Ass'n*,
  86 F.4th 620 (5th Cir. 2023) ....................................................... 33

*Castillo v. Givens*,
  704 F.2d 181 (5th Cir. 1983) ......................................................... 6

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ...................................................................... 23

*Coal. for Workforce Innovation v. Walsh*,
  2022 U.S. Dist. LEXIS 68401 (E.D. Tex. Mar. 14, 2022) .................... 25

*DHS v. Regents of the Univ. of Cal.*,
  140 S. Ct. 1891 (2020) .......................................................... 22, 24

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016) ...................................................................... 23

*Env't Integrity Project v. EPA*,
  425 F.3d 992 (D.C. Cir. 2005) ...................................................... 23

*Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ...................................................................... 23

*Franklin* v. *Massachusetts*,
  505 U. S. 788 (1992) ..................................................................... 22

*Larson v. Domestic and Foreign Commerce Corp.*,
  337 U.S. 682 (1949) ....................................................................... 1

*Michigan v. EPA*,
  576 U.S. 743 (2015) ................................................ 23, 26, 29, 30

*Mock v. Garland,*
    75 F.4th 563 (5th Cir. 2023) ................................................................. 20

*Moore v. Brown,*
    868 F.3d 398 (5th Cir. 2017) ........................................................ 19, 31

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v.*
    *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ................ 22, 24, 29

*Nat'l. Cable & Telecomms. Ass'n. v. Brand X Internet Servs.,*
    545 U.S. 967 (2005) ................................................................. 23

*Nken v. Holder,*
    556 U.S. 418 (2009) ................................................................. 20

*R.J. Reynolds Vapor Co. v. FDA,*
    65 F.4th 182 (5th Cir. 2023) ................................................... 22

*Sierra Club v. EPA,*
    939 F.3d 649 (5th Cir. 2019) ............................................ 24, 28

*Sierra Club, Lone Star Chapter v. FDIC,*
    992 F.2d 545 (5th Cir. 1993) .................................................... 33

*Speaks v. Kruse,*
    445 F.3d 396 (5th Cir. 2006) .................................................... 20

*Texas v. Biden,*
    10 F.4th 538 (5th Cir. 2021) .................................................... 32

*Texas v. Biden,*
    20 F.4th 928 (5th Cir. 2021) .................................................... 25

*Texas v. EPA,*
    829 F.3d 405 (5th Cir. 2016) .................................................... 31

*United States v. Silk,*
    331 U.S. 704 (1947) ................................................................. 6

*Wages v. White Lions Invs., L.L.C.,*
    16 F.4th 1130 (5th Cir. 2021) ............................................ 25, 32

*White v. Carlucci,*
    862 F.2d 1209 (5th Cir. 1989) .................................................... 33

**Statutes**

28 U.S.C. § 1292 ..................................................................... 2

28 U.S.C. § 1331 .................................................................. 1

5 U.S.C. § 702 .................................................................... 22

5 U.S.C. § 704 .................................................................... 22

5 U.S.C. § 706 ................................................................. 1, 23

## Rules

Fed. R. App. P. 4 ............................................................... 2

Fed. R. Civ. P. 57 .............................................................. 1

Fed. R. Civ. P. 65 .............................................................. 1

## Regulations

86 Fed. Reg. 1168 ..................................................... 6, 28, 32

89 Fed. Reg. 1638 ......................................................passim

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 because this claim presents a federal question arising under the APA. The district court had jurisdiction to review the DOL's final 2024 Rule pursuant to 5 U.S.C. §§ 702-703.

The district court had jurisdiction pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to grant a declaratory judgment because an actual controversy exists among the parties. The district court had jurisdiction pursuant to Fed. R. Civ. P. 65 to grant injunctive relief and set aside the 2024 Rule and also had jurisdiction pursuant to 5 U.S.C. § 706(2)(A) to set aside the 2024 Rule alleged to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

On March 7, 2024, Plaintiffs filed a motion for a preliminary injunction to set aside the 2024 Rule. ROA.173-206. The following day on March 8, 2024, the district court conducted a telephone hearing with the parties' counsel and entered a minute order denying Plaintiffs' motion for a preliminary injunction. ROA.215. The district court's telephone hearing denying Plaintiffs' motion for a preliminary

injunction was transcribed by an official court reporter. ROA.296-316.

Plaintiffs filed their notice of appeal on April 8, 2024. ROA.225-26.

This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1)

because the district court entered an interlocutory order denying

Plaintiffs' motion for a preliminary injunction. *See also* Fed. R. App. P.

4(a)(1)(A) and (B)(ii).

## ISSUES PRESENTED

1.  Did the district court abuse its discretion in finding that the 2024 Rule did not harm Plaintiffs, given DOL's estimated employer costs of $148,000,000 in Year 1 and Plaintiffs' showing of a substantial financial injury with no guarantee of eventual recovery?

2.  Is the 2024 Rule that rescinded the 2021 Rule arbitrary and capricious under the APA because the DOL considered only the binary choice of whether to retain or rescind the 2021 Rule, without also considering less disruptive alternatives?

3.  Is the 2024 Rule arbitrary and capricious under the APA given that the DOL summarily rejected employers' reliance interests on the 2021 Rule as "unpersuasive?"

# INTRODUCTION

This case involves the same federal agency—DOL—completely reversing course on significant regulatory action on how employers should classify independent contractors and employees. Simply put, the 2024 Rule is unlawful under the APA.

The DOL concedes the 2024 Rule could adversely affect in a material way a sector of the economy. The 2024 Rule was promulgated by the DOL in violation of the APA because it is arbitrary and capricious. Indeed, in promulgating the 2024 Rule, the DOL considered only the binary choice of whether to retain or rescind the 2021 Rule, without also considering less disruptive alternatives. DOL also failed to consider employers' reliance interests on the 2021 Rule before rescinding it.

Plaintiffs filed a motion for a preliminary injunction in the district court, seeking to set aside the DOL's 2024 Rule, which took effect three months ago. The new 2024 Rule rescinded the existing 2021 Rule that Plaintiffs had relied upon for three years when classifying their independent owner-operator trucking labor. The district court denied Plaintiffs' motion. But the court abused its discretion in denying Plaintiffs' motion for a preliminary injunction to set aside the 2024 Rule

because it inexplicably found that Plaintiffs had failed to show that they would suffer an immediate threat of harm from the 2024 Rule.

This was clear error by the district court. First, the DOL expressly conceded in the text of the 2024 Rule itself that compliance costs to employers—such as the Plaintiffs—in Year 1 of the new Rule were estimated to be $148,000,000. Second, Plaintiffs submitted declarations in support of their motion for a preliminary injunction stating that they would incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. Third, the DOL Defendants did not submit any counter declarations or opposition briefing, and the district court merely relied upon DOL counsel's oral arguments in reaching its factual findings to deny Plaintiffs' motion.

This Court should reverse the district court's decision and issue a preliminary injunction setting aside the 2024 Rule because it is arbitrary and capricious under the APA, and because Plaintiffs will suffer irreparable harm from the 2024 Rule absent injunctive relief.

## STATEMENT OF THE CASE

### A. Factual Background

### 1. DOL's 2021 Rule

In January 2021, DOL issued a classification rule establishing when a worker qualifies as either an employee or independent contractor. *See* 86 Fed. Reg. 1168. DOL promulgated the 2021 Rule "to promote certainty for stakeholders, reduce litigation, and encourage innovation in the economy." *Id*.

The DOL's 2021 Rule reconciled decades of inconsistency and set forth a formal interpretation of the traditional standards established in *United States v. Silk*, 331 U.S. 704 (1947), to provide clarity to employers when classifying employees and independent contractors. ROA.95. Specifically, the 2021 Rule found, similarly to this Court in *Castillo v. Givens*, 704 F.2d 181 (5th Cir. 1983), that in practice two factors predominate in determining whether a person should be considered an employee or an independent contractor: (1) the nature and degree of the worker's control over work; and (2) the worker's opportunity for profit or loss. ROA.95.

Under the 2021 Rule, if these two key factors give a clear answer, that is the end of the analysis. ROA.95. But if those factors point in disparate directions, then there are three additional factors for a court to consider: (3) the amount of skill required for the work; (4) the degree of permanence of the working relationship; and (5) whether the work is part of an integrated unit of production. ROA.96.

**2. DOL's 2024 Rule**

On January 10, 2024, the DOL issued and published in the Federal Register the new 2024 Rule, effective March 11, 2024, which rescinded the 2021 Rule. *See* 89 Fed. Reg. 1638. DOL promulgated the 2024 Rule "to rescind and replace the 2021 IC Rule."[1] *Id.* at 1639.

The 2024 Rule expressly states that the new Rule "is a 'significant regulatory action' under section 3(f)(1) of Executive Order 12866." *Id.* at 1725. A "significant regulatory action" under 3(f)(1) means a rule that is likely to: "(1) have an annual effect on the economy of $200 million or more, or adversely affect in a material way a sector of the economy, productivity, competition, jobs, the environment, public health or safety,

---

[1] DOL refers to the 2021 Rule as the "2021 IC Rule." *See* 89 Fed. Reg. 1638.

or state, local, or tribal governments or communities." *Id.* "Total regulatory familiarization costs to businesses in Year 1 [of the 2024 Rule] are estimated to be $148,749,744 ($52.80 × 1 hour × 2,817,230) in 2022 dollars." *Id.* at 1733.

Unlike the 2021 Rule, the 2024 Rule prescribes a "totality of the circumstances" analysis, including six nonexclusive factors that a court could look to when determining employee status: (1) workers' opportunity for profit or loss depending on managerial skill; (2) investments made by worker and employer; (3) degree of permanence of the work relationship; (4) nature and degree of businesses' control over the worker; (5) the extent to which work performed is an integral part of the potential employer's business; and (6) whether the worker uses specialized skills in performing the work. *Id.* at 1640.

The DOL claimed that it is not "obligated to wait for more time to gather data before rescinding the 2021 IC Rule and promulgating a new rule." *Id.* at 1660. The DOL did acknowledge that it is "mindful of the impact that changes in the Department's guidance may end up having on the regulated community" by rescinding and replacing the 2021 Rule. *Id.* But despite this acknowledgment and recognition that the

2024 Rule is a "significant regulatory action," with costs to businesses in Year 1 of the Rule projected to be $148,000,000, the DOL said that stakeholder reliance interest on the 2021 Rule is "unpersuasive." *Id.* at 1660, 1725, and 1733.

### 3. Plaintiffs and Their Injuries

*Frisard's Transportation, L.L.C.*

Since 2014, Plaintiff Frisard's Transportation, L.L.C. has been a family-owned trucking company specializing in transporting finished goods to stock the shelves of supermarkets and other retail stores, among other cargo, that relies on independent contracting labor as a core necessity of its business. ROA.126-27.

Frisard's is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule. ROA.127. Frisard's has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent-contracting labor. ROA.127. Frisard's has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill Frisard's clients' needs. ROA.127.

Frisard's transports cargo throughout the southern and eastern United States, from Texas and Nebraska to Maryland and Florida, wherever its customers need cargo delivered. ROA.127. Frisard's contracts with more than thirty owner-operated independent drivers who own their own trucks, decide which loads to carry or not, and who are paid a flat percentage of shipping fee for a given load, plus reimbursable expenses such as fuel which are passed on to the client. ROA.127. Frisard's utilizes only independent owner operators to make deliveries and employs no in-house drivers. ROA.127. By contrast, a related but separate company, Frisard's Trucking Co., employes a staff of in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned. ROA.127.

Frisard's use of independent owner-operators is beneficial to both Frisard's itself, which is able to operate more efficiently and reduce excess costs, and to Frisard's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. ROA.127-28.

Frisard's will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.128. For example, the 2024 Rule threatens to upend Frisard's business operations, increasing costs, depriving truckers of the opportunity to operate independently within their own business, and potentially driving many of the independent contractors Frisard's relies on out of business, or into different lines of business other than Frisard's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. ROA.128.

### *Louisiana Motor Transport Association, Incorporated*

Plaintiff Louisiana Motor Transport Association, Incorporated is a non-profit corporation founded in 1939, and it represents 388 Louisiana trucking and related industry companies. ROA.131.

LMTA's mission is to protect and promote Louisiana's trucking industry. ROA.131. Its members include every type of motor carrier in Louisiana, including related and exempt, intrastate and interstate, and for-hire and private. ROA.131. LMTA champions the trucking industry and advocates for its members on laws and regulations in Baton Rouge, La., and in Washington, D.C. ROA.131.

LMTA's members are subject to the FLSA, the 2021 Rule, and the 2024 Rule, and they rely on independent contracting labor as a core necessity of their businesses. ROA.131. Moreover, LMTA's members have relied on the 2021 Rule since its effective date of March 8, 2021, when classifying their independent-contracting labor. ROA.131. LMTA's members' use of independent owner-operators benefits both employer members, who are able to operate more efficiently and reduce excess costs, and to members' independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. ROA.131.

LMTA's members will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.131. For example, the 2024 Rule threatens to upend LMTA's employer members' business operations, increase costs, and deprive independent owner-operator truckers of the opportunity to work independently within their own business. ROA.131. Additionally, the 2024 Rule could potentially drive many of the independent contractors LMTA's employer members rely on out of business, or into different lines of business other than LMTA's members' businesses, depriving them of needed

manpower to deliver cargo wherever their clients need it delivered. ROA.132.

*A & B Group, Inc.*

Plaintiff A & B Group, Inc. is a trucking company in operation since 1995, specializing in delivering liquid and dry bulk long-haul services and transporting cargo to all 50 U.S. states and Canada. ROA.135.

A&B is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. ROA.135. A&B has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor. ROA.135. A&B has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs. ROA.135.

A&B contracts with drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel. ROA.135. A&B also employs in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits

package, and are required to work set hours and carry loads as assigned. ROA.135. A&B's use of independent owner-operators is beneficial to both A&B itself, which is able to operate more efficiently and reduce excess costs, and to A&B's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. ROA.135.

A&B will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.136. For example, the 2024 Rule threatens to upend A&B's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors A&B relies on out of business, or into different lines of business other than A&B's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. ROA.136.

### *Northlake Moving and Storage, Inc.*

Plaintiff Northlake Moving and Storage, Inc. is a trucking company that has operated for over 40 years, specializing in transportation and

storage of household goods, office furniture, and special products, and it transports cargo to 48 U.S states. ROA.138.

Northlake is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. ROA.139. Northlake has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor. ROA.139. Northlake has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs. ROA.139.

Northlake contracts with drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel. ROA.139. Northlake also employs in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned. ROA.139. Northlake's use of independent owner-operators is beneficial to both Northlake itself, which is able to operate more efficiently and reduce excess costs, and to Northlake's independent

contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. ROA.139.

Northlake will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.139. For example, the 2024 Rule threatens to upend Northlake's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors Northlake relies on out of business, or into different lines of business other than Northlake's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. ROA.139-40.

### Triple G. Express, Inc.

Plaintiff Triple G. Express, Inc. is a family-owned trucking company that has operated since 1985 and is an intermodal carrier serving the Port of New Orleans Markets. ROA.142. Triple G transports cargo throughout the Southeastern United States, including Louisiana, Texas, Mississippi, and Alabama, wherever their clients and customers need cargo delivered. ROA.143.

Triple G is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. ROA.143. Triple G has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor. ROA.143. Triple G has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs. ROA.143.

Triple G contracts with 100 independent drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel. ROA.143. Triple G utilizes only independent owner-operators to make deliveries and employs no in-house drivers. ROA.143. Triple G's use of independent owner-operators is beneficial to both Triple G's itself, which is able to operate more efficiently and reduce excess costs, and to Triple G's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. ROA.143.

Triple G will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.144. For example, the 2024 Rule threatens to upend Triple G's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors Triple G relies on out of business, or into different lines of business other than Triple G's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. ROA.144.

## B.  Procedural History

On February 8, 2024, Plaintiff Frisard's filed a complaint for declaratory and injunctive relief against the DOL Defendants. ROA.7. On March 7, 2024, Frisard's amended its complaint pursuant to Fed. R. Civ. P. 15(a) to include the additional Plaintiffs as parties. ROA.89. That same day, the Plaintiffs also filed a motion for a preliminary injunction to set aside the 2024 Rule.[2] ROA.173-206.

---

[2] Plaintiffs further filed a separate motion for an emergency temporary restraining order to postpone the 2024 Rule from taking effect on March 11, 2024, which is not part of this interlocutory appeal. ROA.118.

The following day, in a telephonic hearing, the district court denied
the Plaintiffs' motion for a preliminary injunction. ROA.315-16. The
court concluded that the Plaintiffs failed at least the irreparable harm
preliminary injunction factor and said, "In this case it appears to me
that the question of immediate harm hasn't been shown." ROA.315. The
district court further said, "So because there's no immediate threat of
harm or immediate harm, if there is harm, there's adequate opportunity
for the person who is harmed to show specifically what the harm is and
how the individual has been harmed." ROA.315.

## STANDARD OF REVIEW

Courts review denial of a preliminary injunction for abuse of
discretion. *Moore v. Brown*, 868 F.3d 398, 402 (5th Cir. 2017). "Factual
findings are reviewed for clear error, while legal conclusions are
reviewed de novo." *Id.* at 403.

A court must issue a preliminary injunction "if the movant
establishes: (1) a substantial likelihood of success on the merits, (2) a
substantial threat of irreparable injury if the injunction is not issued,
(3) that the threatened injury if the injunction is denied outweighs any
harm that will result if the injunction is granted, and (4) that the grant

of an injunction will not disserve the public interest." *Speaks v. Kruse*,
445 F.3d 396, 399-400 (5th Cir. 2006) (quotation omitted). "The
government's and the public's interests merge when the government is
a party." *Mock v. Garland*, 75 F.4th 563, 577 (5th Cir. 2023) (citing
*Nken v. Holder*, 556 U.S. 418, 435 (2009)).

## SUMMARY OF ARGUMENT

*First*, the district court erred in denying Plaintiffs' motion for a
preliminary injunction. The 2024 Rule is arbitrary and capricious under
the APA as a matter of law. DOL considered only the binary choice of
whether to retain or rescind the 2021 Rule, without also considering
less disruptive alternatives. The 2024 Rule is also arbitrary and
capricious because DOL did not consider employers' reliance interests
on the 2021 Rule, summarily rejecting such interests as "unpersuasive."
And the court abused its discretion in its factual findings because the
record shows that Plaintiffs would incur substantial financial injury
with no guarantee of eventual recovery as a result of the 2024 Rule.

*Second*, this Court should reverse the district court and render a
preliminary injunction in Plaintiffs' favor to set aside the 2024 Rule.

# ARGUMENT

## I. The district court erred in denying Plaintiffs' motion for a preliminary injunction to set aside the DOL's unlawful 2024 Rule.

The district court erred in denying Plaintiffs' motion for a preliminary injunction. This Court should reverse the district court's decision to deny Plaintiffs' motion, enter a preliminary injunction in Plaintiffs' favor, and set aside the 2024 Rule because it is unlawful.

A preliminary injunction is warranted because Plaintiffs are likely to succeed on the merits of their claims since the 2024 Rule is arbitrary and capricious under the APA; the factual record reflects they will suffer irreparable harm by incurring substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule; and the balancing of equities tilts in their favor when weighing whether to issue a preliminary injunction.

### A. Plaintiffs are likely to succeed on the merits of their claims because the 2024 Rule is arbitrary and capricious in violation of the APA.

Plaintiffs are likely to succeed on the merits of their claims because DOL's promulgation of the 2024 Rule was arbitrary and capricious in violation of the APA.

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin* v. *Massachusetts*, 505 U. S. 788, 796 (1992). Under the APA, a person wronged by federal agency action "is entitled to judicial review thereof." 5 U.S.C. § 702. The APA further allows judicial review for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. An agency must defend its actions based on contemporaneous reasons it gave when it acted and may not engage in post hoc rationalizations. *See generally DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020).

Specifically, where, as here, "an agency rescinds a prior policy[,] its reasoned analysis must consider the alternatives that are within the ambit of the existing policy." *Id.* at 1913 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)). When changing course, an agency must account for "serious reliance interests" its "longstanding policies may have engendered." *Regent*s, 140 S. Ct. at 1913. Indeed, such a policy change is colloquially known as the "surprise switcheroo" doctrine. *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 189, n. 6 (5th Cir. 2023) (citing *Azar v. Allina Health Servs.*,

22

139 S. Ct. 1804, 1810 (2019); *Env't Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005)). And failure to consider "relevant factors" will render "an agency's decreed result" unlawful. *Michigan v. EPA*, 576 U.S. 743, 750 (2015). These requirements ensure that an agency has engaged in "reasoned decisionmaking." *Id*.

To be sure, agencies are "free to change their existing policies," as long as "they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (citing *Nat'l. Cable & Telecomms. Ass'n. v. Brand X Internet Servs.*, 545 U.S. 967, 981-82 (2005)); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). But the agency must "show that there are good reasons for the new policy." *Encino*, 579 U.S. at 222 (citing *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)).

The APA forbids an agency from acting in an arbitrary and capricious manner in promulgating rules. *See* 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a

> difference in view or the product of agency
> expertise.

*Motor Vehicle Mfrs.*, 463 U.S. at 43. A court must "ensure that the agency 'examined the relevant data and articulated a satisfactory explanation for its action.'" *Sierra Club v. EPA*, 939 F.3d 649, 664 (5th Cir. 2019) (quoting *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 723 (5th Cir. 2013)).

An agency's failure to consider alternatives within the ambit of existing policy is fatal to an agency's new policy because an agency thus fails to "consider important aspects of the problem before [it]," and that "omission alone causes agency action to be arbitrary and capricious." *Motor Vehicle Mfrs.*, 463 U.S. at 43. And an agency must assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns. *Regents*, 140 S. Ct. at 1915.

By failing to consider alternatives within the ambit of the existing 2021 Rule, DOL failed to meet these established standards under the APA. As discussed below, the 2024 Rule is arbitrary and capricious under the APA because DOL: (1) considered only the binary choice of whether to retain or rescind the 2021 Rule, without considering less

24

disruptive alternatives; and (2) failed to consider employers' reliance

interests on the 2021 Rule.

> **1. The 2024 Rule is arbitrary and capricious because DOL considered only the binary choice of whether to retain or rescind the 2021 Rule, without also considering less disruptive alternatives.**

The 2024 Rule is arbitrary and capricious because DOL considered

only the binary choice of whether to retain or rescind the 2021 Rule

without considering less disruptive alternatives.

"In short, agency action is arbitrary and capricious when the agency

considers only the binary choice of whether to retain or rescind a policy,

without also 'considering less disruptive alternatives.'" *Coal. for*

*Workforce Innovation v. Walsh*, 2022 U.S. Dist. LEXIS 68401, *49 (E.D.

Tex. Mar. 14, 2022) (citing *Texas v. Biden*, 20 F.4th 928, 992 (5th Cir.

2021) (quoting *Wages v. White Lions Invs., L.L.C.*, 16 F.4th 1130, 1139

(5th Cir. 2021))).

Here, the 2024 Rule acknowledges that DOL promulgated the 2024

Rule "to rescind and replace the 2021 IC Rule." 89 Fed. Reg. at 1639.

DOL made clear in the 2024 Rule itself that it wanted to switch course,

burn the 2021 Rule to the ground, and start over. In other words, the

2024 Rule is clear that DOL began with its conclusion—rescind and

replace the 2021 Rule—then worked backwards in unreasoned and haphazard fashion in an attempt to connect the dots to muster support showing why the 2021 Rule should be rescinded. This is not "reasoned decisionmaking." *Michigan,* 576 U.S. at 750.

The 2024 Rule provides conclusory and unsupported allegations on why the 2021 Rule needed to be rescinded, but does not offer any actual analysis on how the DOL might have promulgated a less disruptive new rule. The 2024 Rule does mention four "alternatives" to rescinding the 2021 Rule. 89 Fed. Reg. at 1660. But upon closer review, these "alternatives" consider only the binary choice of whether to retain or rescind the 2021 Rule, without considering less disruptive alternatives.

DOL concedes it rejected the first two "alternatives" out of hand before the final 2024 Rule, and they were not within the ambit of the existing 2021 Rule, nor did DOL provide analysis on how they might be less disruptive to a complete rescission of the 2021 Rule. *Id.*

The third "alternative" was for the DOL "to only partially rescind the 2021 IC Rule." 89 Fed. Reg. at 1661. In other words, it was binary because DOL considered retaining some of the 2021 Rule and rescinding the rest. It is also not an alternative within the ambit of the

existing 2021 Rule, particularly given that DOL admits it did not monitor data on the effects of the 2021 Rule as further discussed below.

And DOL's fourth proposed "alternative"—rescinding the 2021 Rule entirely to provide "guidance"—is a binary choice between complete rescission while retaining some guidance. It is also not an alternative within the ambit of the 2021 Rule. DOL clearly wanted to do away with the 2021 Rule entirely, which is unlawful under well-established principles within the APA's legal framework. 89 Fed. Reg. at 1661.

Moreover, DOL stated in the 2024 Rule that it is not "obligated to wait for more time to gather data before rescinding the 2021 IC Rule and promulgating a new rule." 89 Fed. Reg. at 1660. In other words, according to the DOL's unlawful, rudimentary, and unsophisticated analysis devoid of reasoning, it apparently does not have to review *any* data when it promulgates a new rule such as the 2024 Rule and rescinds an old rule like the 2021 Rule. And the 2021 Rule had been in effect for *three years,* so DOL did not have to "wait" to gather such data, which could inform its decisionmaking in coming up with less disruptive alternatives to a complete rescission of the 2021 Rule. The DOL's approach was instead to take a sledgehammer to the 2021 Rule and

27

start over from scratch. Even though it is constrained by law to ensure that it "examined the relevant data and articulated a satisfactory explanation for its action." *Sierra Club*, 939 F.3d at 664.

Why would any reasonable federal agency not review data from the effects of a rule—like the 2021 Rule—that had been in effect for three years? Particularly when the DOL acknowledged that the 2024 Rule that would rescind the 2021 Rule is a "significant regulatory action" with costs to businesses in Year 1 of the new Rule projected to be $148,000,000. It is inexplicable. And no reasonable agency would make such a glaring omission of not reviewing data when rescinding a rule as important and significant as one establishing how businesses must classify workers. DOL promulgated the 2021 Rule "to promote certainty for stakeholders, reduce litigation, and encourage innovation in the economy." 86 Fed. Reg. at 1168. And then DOL rescinded the 2021 Rule without analyzing any data to see if it accomplished its goal.

Consider the data DOL could have reasonably monitored with minimal effort to determine if the 2021 Rule achieved its purpose: questionnaires sent to stakeholders to conduct a survey on whether the 2021 Rule promoted certainty as it claimed; an analysis of court filings

and relevant litigation both before and after promulgation of the 2021 Rule to determine if it reduced litigation; and an assessment on the number of workers being classified as employees versus independent contractors and the relevant impact on the economy and innovation.

DOL 's failure to review data on the effects of the 2021 Rule before rescinding it means it failed to "consider important aspects of the problem before [it]," and this "omission alone causes agency action to be arbitrary and capricious." *See Motor Vehicle Mfrs*., 463 U.S. at 43. Moreover, DOL's explanation for its decision that it was not obligated to monitor data on the effects of the 2021 Rule before rescinding it "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See id*. Additionally, its failure to consider "relevant factors" like data on the 2021 Rule before rescinding it renders the 2024 Rule unlawful because DOL did not engage in "reasoned decisionmaking." *See Michigan*, 576 U.S. at 750.

### 2. The 2024 Rule is arbitrary and capricious because DOL failed to consider employers' reliance interests on the 2021 Rule.

DOL failed to consider employers' reliance interests on 2021 Rule, and the Plaintiffs' declarations show that they have relied on the 2021

Rule since its effective date of March 8, 2021, when classifying their independent contracting trucking labor.

Although DOL acknowledged that it is "mindful of the impact that changes in the Department's guidance may end up having on the regulated community" by rescinding the 2021 Rule, it then summarily dismissed that impact and said that stakeholder reliance interest on the 2021 Rule is "unpersuasive." 89 Fed. Reg. at 1660.

But a federal agency like the DOL is required to assess whether there were reliance interests, determine whether those interests were significant, and weigh any such interests against competing policy concerns, *see Regents*, 140 S. Ct. at 1915—all of which DOL failed to do. Even assuming arguendo that DOL assessed employer reliance interests, the 2024 Rule still shows that DOL failed to determine whether employer reliance interests were significant, and it did not weigh employer reliance interests against competing policy concerns. This is unreasoned decisionmaking. *See Michigan*, 576 U.S. at 750.

**B. The district court abused its discretion in its findings because the 2024 Rule will irreparably harm the Plaintiffs since they will incur substantial financial injury with no guarantee of eventual recovery.**

Under the second factor, Plaintiffs would be irreparably harmed absent a preliminary injunction because the 2024 Rule will cause them substantial financial injury with no guarantee of eventual recovery.

"[S]ubstantial financial injury" may be "sufficient to show irreparable injury," especially when there is "no guarantee of eventual recovery." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016); *Alabama Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021). Further, "complying with a regulation later held invalid almost always produces irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d at 433.

The district court clearly abused its discretion in finding that Plaintiffs failed to show an "immediate threat of harm or immediate harm." ROA.315; *see Moore*, 868 F.3d at 403.

First, the DOL conceded in the text of the 2024 Rule itself that costs to employers in the new Rule's first year were estimated to be $148,000,000. 89 Fed. Reg. at 1733.

Second, Plaintiffs submitted unopposed declarations in support of their motion for a preliminary injunction stating that they would incur

substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.128, 131, 136, 139, 144.

Finally, the DOL's sovereign immunity bars Plaintiffs' ability to recover costs. *See Wages*, 16 F.4th at 1142.

### C. The balance of equities tips in Plaintiffs' favor for issuing a preliminary injunction.

Under the third and fourth preliminary injunction factors, merged because the government is the defendant, the balance of equities favors issuing a preliminary injunction because DOL violated the APA when it promulgated the 2024 Rule.

It is of the highest public importance that federal agencies follow the law. *See Texas v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (per curiam). "[O]ur system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Alabama Ass'n of Realtors*, 141 S. Ct. at 2490.

Setting aside the unlawful 2024 Rule and restoring the 2021 Rule that DOL promulgated "to promote certainty for stakeholders, reduce litigation, and encourage innovation in the economy" is of the highest public importance. 86 Fed. Reg. at 1168; *see Alabama Ass'n of Realtors*, 141 S. Ct. at 2490.

## II. This Court may issue a preliminary injunction in favor of Plaintiffs and set aside the 2024 Rule because the record is clear, and remand would serve no useful purpose.

This Court may issue a preliminary injunction in favor of the Plaintiffs and set aside the 2024 Rule.

An appellate court has the power to issue a preliminary injunction. *Boudreaux v. La. State Bar Ass'n*, 86 F.4th 620, 640 (5th Cir. 2023) (rendering a preliminary injunction to prevent bar association from requiring a person to join or pay dues). Moreover, in the absence of factual findings from a district court, "[an appellate court] will only review the district court's injunction decision when the record is exceptionally clear and remand would serve no useful purpose." *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993) (quoting *White v. Carlucci*, 862 F.2d 1209, 1210 n.1 (5th Cir. 1989)).

Here, despite the district court's clear abuse of discretion in finding the 2024 Rule did not harm the Plaintiffs, the factual record in this case is clear because there is no dispute that the DOL estimated the 2024 Rule would cost employers $148,000,000 in the new Rule's first year,

and Plaintiffs would incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule.

Accordingly, remand to the district court to develop the factual record would serve no useful purpose, and this Court may issue a preliminary injunction in favor of the Plaintiffs and set aside the unlawful 2024 Rule.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court reverse the district court and render a preliminary injunction in favor of Plaintiffs and set aside the 2024 Rule.

June 17, 2024                                    Respectfully submitted,

                                                /s/ James Baehr

M.E. Buck Dougherty III*                        James Baehr
Reilly Stephens                                 Sarah Harbison
Liberty Justice Center                          Pelican Center for Justice
13341 W. U.S. Hwy. 290, Bldg. 2                 400 Poydras Street, # 900
Austin, Texas 78737                             New Orleans, LA 70130
Telephone (512) 481-4400                        Telephone (504) 475-8407
bdougherty@libertyjusticecenter.org             james@pelicaninstitute.org
rstephens@libertyjusticecenter.org              sarah@pelicaninstitue.org

*pending application to the Fifth Circuit

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I certify that on June 17, 2024, I caused a copy of the foregoing document to be served on all registered counsel of record via the Court's ECF filing system.

/s/ James Baehr
Attorney for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, according to the Word Count software function, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 6,150 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in Word in a proportionally spaced typeface, using Century Schoolbook 14-point font.

/s/ James Baehr
Attorney for Plaintiffs-Appellants

June 17, 2024