# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

-------------

### No. 24-30223

-------------

Frisard's Transportation, L.L.C.; Louisiana Motor Transport
Association, Incorporated; A & B Group, Incorporated; Triple G
Express, Incorporated; Northlake Moving and Storage, Incorporated,

Plaintiffs - Appellants

v.

United States Department of Labor; Julie A. Su, in her official capacity
as Acting Secretary, U.S. Department of Labor; Jessica Looman, in her
official capacity as Administrator of the Wage and Hour Division; and
United States Department of Labor, Wage and Hour Division,

Defendants - Appellees

-------------

On Appeal from the United States District Court
for the Eastern District of Louisiana
Case No. 2:24-cv-00347-L Honorable Eldon E. Fallon

-------------

### APPELLANTS' RECORD EXCERPTS

M.E. Buck Dougherty III
Reilly Stephens
Liberty Justice Center
13341 W. U.S. Hwy. 290, Bldg. 2
Austin, Texas 78737
Telephone (512) 481-4400
bdougherty@libertyjusticecenter.org
rstephens@libertyjusticecenter.org
*Attorneys for Plaintiffs-Appellants*

James S. Baehr
Sarah Harbison
Pelican Center for Justice
400 Poydras Street, # 900
New Orleans, LA 70130
Telephone (504) 475-8407
james@pelicaninstitute.org
sarah@pelicaninstitute.org

**TABLE OF CONTENTS**

|  |  | **Page** | **Tab** |
|---|---|---|---|
| 1. | Docket Sheet | ROA.1 | 1 |
| 2. | Notice of Appeal | ROA.225 | 2 |
| 3. | Order | ROA.215 | 3 |
| 4. | Transcript of Hearing | ROA.296 | 4 |
| 5. | Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction | ROA.178 | 5 |
| 6. | Plaintiffs' Declarations | ROA.126 | 6 |

**TAB 1:**
**DOCKET SHEET**

APPEAL

Jump to Docket Table

# U.S. District Court
# Eastern District of Louisiana (New Orleans)
# CIVIL DOCKET FOR CASE #: 2:24-cv-00347-EEF-EJD

| | |
|---|---|
| Frisard's Transportation, L.L.C. v. United States Department of Labor et al | Date Filed: 02/08/2024 |
| Assigned to: Judge Eldon E. Fallon | Jury Demand: None |
| Referred to: Magistrate Judge Eva J. Dossier | Nature of Suit: 899 Other Statutes: Administrative Procedures Act/Review or Appeal of Agency Decision |
| Cause: 05:702 Administrative Procedure Act | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**Louisiana Motor Transport Association, Incorporated**

represented by **James Stuart Baehr**
Law Office of James Baehr
609 Metairie Rd
#8162
Metairie, LA 70005
504-475-8407
Email: james@baehr.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Reilly Stephens**
Liberty Justice Center
440 North Wells Street
Suite 200
Chicago, IL 60654
443-791-6801
Email: rstephens@ljc.org
*ATTORNEY TO BE NOTICED*

**Sarah R Harbison**
Pelican Institute for Public Policy
400 Poydras Street
Suite 900
New Orleans, LA 70130
504-952-8016
Email: sarah@pelicaninstitute.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**A & B Group, Inc.**

represented by **James Stuart Baehr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Reilly Stephens**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah R Harbison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Triple G Express, Inc.**                    represented by    **James Stuart Baehr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Reilly Stephens**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah R Harbison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Northlake Moving and Storage, Inc.**        represented by    **James Stuart Baehr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Reilly Stephens**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah R Harbison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Frisard's Transportation L.L.C.**           represented by    **James Stuart Baehr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Reilly Stephens**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah R Harbison**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**United States Department of Labor**
*Julie Su, in her official capacity as Acting*
*Secretary of Labor*

represented by **Lisa A. Olson**
U. S. Department of Justice (Federal
Programs Branch)
Civil Division
20 Massachusetts Avenue, NW
Washington, DC 20530
(202) 514-5633
Fax: (202) 616-8470
Email: lisa.olson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Department of Labor,**
**Wage and Hour Division**
*Jessica Looman, in her official capacity as*
*Administrator of the Wage and Hour*
*Division*

represented by **Lisa A. Olson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/08/2024 | 1 (p.7) | COMPLAINT against All Defendants (Filing fee $ 405 receipt number ALAEDC-10395339) filed by Frisard's Transporation, L.L.C.. (Attachments: # 1 (p.7) Civil Cover Sheet, # 2 Summons, # 3 (p.47) Summons, # 4 (p.49) Summons, # 5 Summons, # 6 (p.75) Summons, # 7 (p.83) Summons, # 8 (p.85) Summons, # 9 (p.89) Summons, # 10 (p.110) Summons, # 11 (p.112) Summons, # 12 (p.114) Summons, # 13 (p.116) Summons, # 14 (p.118) Summons)Attorney James Stuart Baehr added to party Frisard's Transporation, L.L.C.(pty:pla).(Baehr, James) (Attachment 2 replaced on 2/9/2024) (my). (Attachment 3 replaced on 2/9/2024) (my). (Attachment 4 replaced on 2/9/2024) (my). (Attachment 5 replaced on 2/9/2024) (my). (Attachment 6 replaced on 2/9/2024) (my). (Attachment 7 replaced on 2/9/2024) (my). (Attachment 8 replaced on 2/9/2024) (my). (Attachment 9 replaced on 2/9/2024) (my). (Attachment 10 replaced on 2/9/2024) (my). (Attachment 11 replaced on 2/9/2024) (my). (Attachment 12 replaced on 2/9/2024) (my). (Attachment 13 replaced on 2/9/2024) (my). (Attachment 14 replaced on 2/9/2024) (my). (Entered: 02/08/2024) |
| 02/08/2024 | 2 | Initial Case Assignment to Judge Eldon E. Fallon and Magistrate Judge Michael North. (cc) (Entered: 02/08/2024) |
| 02/08/2024 | 3 (p.47) | Statement of Corporate Disclosure by Frisard's Transporation, L.L.C. (Baehr, James) (Entered: 02/08/2024) |
| 02/09/2024 | 4 (p.49) | Summons Issued as to United States Department of Labor, United States Department of Labor, Wage and Hour Division. (Attachments: # 1 (p.7) Summons, # 2 Summons, # 3 (p.47) Summons, # 4 (p.49) Summons, # 5 Summons, # 6 (p.75) Summons, # 7 (p.83) Summons, # 8 (p.85) Summons, # 9 (p.89) Summons, # 10 (p.110) Summons, # 11 (p.112) Summons, # 12 (p.114) Summons)(my) (Entered: 02/09/2024) |

| 02/09/2024 | 5 | Correction of Docket Entry by Clerk re 1 (p.7) Complaint. **Filing attorney did not properly format the pdf of Summons. The pdf should not have the 3red buttons at the bottom. When using a FORM, fill in the applicable fields then click the red PRINT button at the bottom to print the document to pdf format. Clerk has taken corrective action.** (my) (Entered: 02/09/2024) |
|---|---|---|
| 02/14/2024 | 6 (p.75) | EXPARTE/CONSENT MOTION to Appear Pro Hac Vice *Reilly Stephens* (Filing fee $ 100 receipt number ALAEDC-10401222) by Frisard's Transporation, L.L.C.. (Attachments: # 1 (p.7) Exhibit 1 Certificate of Good Standing, # 2 Exhibit 2 Declaration, # 3 (p.47) Exhibit 3 Consent to Electronic Filing, # 4 (p.49) Proposed Order)(Baehr, James) Modified on 2/15/2024 (my). (Entered: 02/14/2024) |
| 02/15/2024 | 7 (p.83) | ORDER granting 6 (p.75) Motion to Appear Pro Hac Vice as to Reilly Stephens. Signed by Judge Eldon E. Fallon on 2/15/2024. (Attachments: # 1 (p.7) Pro Hac Notice) (my) (Entered: 02/15/2024) |
| 02/20/2024 | 8 (p.85) | SUMMONS Returned Executed; U.S. Attorney, Eastern District of Louisiana Civil Division served on 2/15/2024, answer due 4/15/2024. (Baehr, James) Modified text on 2/21/2024 (my). (Entered: 02/20/2024) |
| 03/07/2024 | 9 (p.89) | First AMENDED COMPLAINT against All Defendants filed by Frisard's Transporation, L.L.C., Louisiana Motor Transport Association, Incorporated, A & B Group, Inc., Triple G Express, Inc., Northlake Moving and Storage, Inc..Attorney James Stuart Baehr added to party Louisiana Motor Transport Association, Incorporated(pty:pla), Attorney James Stuart Baehr added to party A & B Group, Inc.(pty:pla), Attorney James Stuart Baehr added to party Northlake Moving and Storage, Inc.(pty:pla), Attorney James Stuart Baehr added to party Triple G Express, Inc.(pty:pla).(Baehr, James) (Entered: 03/07/2024) |
| 03/07/2024 | 10 (p.110) | Statement of Corporate Disclosure by Louisiana Motor Transport Association, Incorporated (Baehr, James) (Entered: 03/07/2024) |
| 03/07/2024 | 11 (p.112) | Statement of Corporate Disclosure by A & B Group, Inc. (Baehr, James) (Entered: 03/07/2024) |
| 03/07/2024 | 12 (p.114) | Statement of Corporate Disclosure by Northlake Moving and Storage, Inc. (Baehr, James) (Entered: 03/07/2024) |
| 03/07/2024 | 13 (p.116) | Statement of Corporate Disclosure by Triple G Express, Inc. (Baehr, James) (Entered: 03/07/2024) |
| 03/07/2024 | 14 (p.118) | EXPARTE/CONSENT Emergency MOTION for Temporary Restraining Order by A & B Group, Inc., Frisard's Transporation, L.L.C., Louisiana Motor Transport Association, Incorporated, Northlake Moving and Storage, Inc., Triple G Express, Inc.. (Attachments: # 1 (p.7) Ex. 1 Declaration of Cully Frisard (Frisard's), # 2 Ex. 2 Declaration of Renee Amar (LMTA), # 3 (p.47) Ex. 3 Declaration of Burton Baty (A&B), # 4 (p.49) Ex. 4 Declaration of Larry Terrell (Northlake), # 5 Ex. 5 Declaration of Randy Guillot (Triple G), # 6 (p.75) Memorandum in Support, # 7 (p.83) Ex. 1 to Memorandum Certificate of Service, # 8 (p.85) Proposed Order )(Baehr, James) Modified on 3/8/2024 (my). (Entered: 03/07/2024) |
| 03/07/2024 | 15 (p.173) | MOTION for Preliminary Injunction by A & B Group, Inc., Frisard's Transporation, L.L.C., Louisiana Motor Transport Association, Incorporated, Northlake Moving and Storage, Inc., Triple G Express, Inc.. Motion(s) will be submitted on 3/27/2024. (Attachments: # 1 (p.7) Memorandum in Support, # 2 Notice of Submission, # 3 (p.47) Request for Oral Argument pursuant to LR 78.1)(Baehr, James) Modified on |

| | | |
|---|---|---|
| | | 3/8/2024 (my). (Entered: 03/07/2024) |
| 03/07/2024 | 16 (p.207) | RESPONSE to Motion filed by United States Department of Labor, United States Department of Labor, Wage and Hour Division re 14 (p.118) Emergency MOTION for Temporary Restraining Order . (Olson, Lisa) (Entered: 03/07/2024) |
| 03/07/2024 | 17 (p.213) | Request/Statement of Oral Argument by A & B Group, Inc., Frisard's Transporation, L.L.C., Louisiana Motor Transport Association, Incorporated, Northlake Moving and Storage, Inc., Triple G Express, Inc. regarding 15 (p.173) MOTION for Preliminary Injunction . (my) (Entered: 03/08/2024) |
| 03/08/2024 | 18 | Correction of Docket Entry by Clerk re 15 (p.173) MOTION for Preliminary Injunction **Filing attorney attached a Request/Statement for Oral Argument to this motion instead of filing it as a separate entry. Clerk took corrective action by separating the request and docketing it as a separate entry. All future requests for oral argument must be filed separately. ALSO Attachments have duplicate descriptions. For attachments, select either a category OR enter a description, but not both since this results in duplicate docket text. Clerk took corrective action.** (my) (Entered: 03/08/2024) |
| 03/08/2024 | 19 (p.215) | Minute Order. Proceedings held before Judge Eldon E. Fallon: Telephone Status Conference held on 3/8/2024: DENYING 14 (p.118) Motion for Temporary Restraining Order; DENYING 15 (p.173) Motion for Preliminary Injunction. (Court Reporter Toni Tusa.) (my) (Entered: 03/11/2024) |
| 03/12/2024 | 20 (p.296) | TRANSCRIPT of Telephone Status Conference held on March 8, 2024, before Judge Eldon E. Fallon. Court Reporter Toni Doyle Tusa, Telephone number 504-388-7778. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Parties have 21 days from the filing of this transcript to file with the Court a Redaction Request. Release of Transcript Restriction set for 6/10/2024. (Tusa, Toni) (Entered: 03/12/2024) |
| 03/22/2024 | 21 (p.216) | SUMMONS Returned Executed; United States Department of Labor served on 3/5/2024, answer due 5/6/2024; United States Department of Labor, Wage and Hour Division served on 3/5/2024, answer due 5/6/2024. (Attachments: # 1 (p.7) Affidavit, # 2 Affidavit)(Baehr, James) (Entered: 03/22/2024) |
| 04/08/2024 | 22 (p.225) | NOTICE OF APPEAL by All Plaintiffs re 19 (p.215) Minute Entry. (Filing fee $ 605, receipt number ALAEDC-10474563.) (Baehr, James) Modified text on 4/8/2024 (my). (Entered: 04/08/2024) |
| 04/15/2024 | 23 (p.227) | EXPARTE/CONSENT MOTION for Extension of Time to Answer re 9 (p.89) Amended Complaint, by United States Department of Labor, United States Department of Labor, Wage and Hour Division. (Attachments: # 1 (p.7) Proposed Order)(Olson, Lisa) Modified on 4/15/2024 (my). (Entered: 04/15/2024) |
| 04/15/2024 | 24 (p.230) | ORDER TRANSFERRING CASE. Case transferred to Magistrate Judge Eva J. Dossier. Magistrate Judge Michael North no longer assigned to case. Signed by Chief Judge Nannette Jolivette Brown on 04/12/2024.(my) (Entered: 04/15/2024) |
| 04/16/2024 | 25 (p.291) | ORDER granting 23 (p.227) Motion for Extension of Time to Answer 9 (p.89) Amended Complaint,, as to United States Department of Labor answer due 5/6/2024; United States Department of Labor, Wage and Hour Division answer due 5/6/2024. Signed by Judge Eldon E. Fallon on 4/16/2024. (my) (Entered: 04/16/2024) |

| 04/30/2024 | 26 (p.292) | EXPARTE/CONSENT MOTION for Extension of Time to Answer re 9 (p.89) Amended Complaint,, by United States Department of Labor, United States Department of Labor, Wage and Hour Division. (Attachments: # 1 (p.7) Proposed Order)(Olson, Lisa) (Entered: 04/30/2024) |
| --- | --- | --- |
| 05/01/2024 | 27 (p.295) | ORDER granting 26 (p.292) Motion for Extension of Time to Answer re 9 (p.89) Amended Complaint, as to United States Department of Labor answer due 5/20/2024; United States Department of Labor, Wage and Hour Division answer due 5/20/2024. Signed by Judge Eldon E. Fallon on 5/1/2024. (cs) (Entered: 05/01/2024) |

FRISARD'S TRANSPORTATION, L.L.C. v. UNITED STATES DEPARTMENT OF LABOR ET AL
(2:24-cv-00347-EEF-EJD)

**TAB 2:**
**NOTICE OF APPEAL**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

FRISARD'S TRANSPORTATION L.L.C., ET AL.,

     Plaintiffs,

v.

UNITED STATES DEPARTMENT OF LABOR, ET AL..,

     Defendants.

No. 2:24-cv-00347

Judge Eldon E. Fallon

## NOTICE OF APPEAL

Plaintiffs Frisard's Transportation, L.L.C., Louisiana Motor Transport Association, Incorporated, A & B Group, Inc., Northlake Moving And Storage, Inc., and Triple G. Express, Inc., by and through their undersigned counsel, hereby respectfully appeal to the United States Court of Appeals for the Fifth Circuit from the order denying Plaintiffs' Motions for Preliminary Injunction and Temporary Restraining order (Docket Nos. 14, 15) entered on March 8, 2024 (Docket No. 19).

Dated: April 8, 2024

                       Respectfully Submitted,

                       By:   /s/ James Baehr

                       James Baehr (LSBA 35431)
                       Sarah Harbison (LSBA 31948)
                       PELICAN CENTER FOR JUSTICE
                       PELICAN INSTITUTE FOR PUBLIC POLICY
                       400 Poydras Street, Suite 900
                       New Orleans, LA 70130

24-30223.225

Telephone: (504) 475-8407
james@pelicaninstitute.org
sarah@pelicaninstitute.org

M.E. Buck Dougherty III* TN BPR #022474
Trial Attorney designation LR 11.2
Reilly Stephens*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
(312) 637-2280 - telephone
bdougherty@libertyjusticecenter.org
rstephens@libertyjusticecenter.org
* *Pro hac vice*
*Attorneys for Plaintiff Frisard's*
*Transportation L.L.C*

*admitted (or pending) Pro Hac Vice

## Certificate of Service

I certify that the foregoing Plaintiff's Notice of Appeal was filed April 8, 2024,

using the Court's CM/ECF system, which will provide notice of the filing to all

counsel.

/s/ James Baehr
James Baehr

24-30223.226

**TAB 3:**
**ORDER**

MINUTE ENTRY
FALLON, J.
MARCH 8, 2024

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FRISARD'S TRANSPORTATION, L.L.C. ET AL | | CIVIL ACTION |
| VERSUS | | NO. 24-347 |
| UNITED STATES DEPARTMENT OF LABOR ET AL | | SECTION "L" (5) |

A telephone status conference was held on this date from the Chambers of the Honorable Eldon E. Fallon. Buck Dougherty and Reilly Stephens participated on behalf of Plaintiffs. Lisa Olson, Peter Mansfield, and Renee Goudeau participated on behalf of Defendants. The parties discussed their positions regarding Plaintiffs' Emergency Motion for a Temporary Restraining Order, R. Doc. 14, and their Motion for a Preliminary Injunction, R. Doc. 15. The Court ruled on the motions. Court Reporter Toni Tusa transcribed the conference and parties can request a transcript at 504-589-7778. For the reasons stated orally in the conference;

**IT IS HEREBY ORDERED** that the Motion for a Temporary Restraining Order, R. Doc. 14, and the Motion for a Preliminary Injunction, R. Doc. 15, be **DENIED**.

JS10(00:33)

**TAB 4:**
**TRANSCRIPT OF HEARING**

1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF LOUISIANA

3

4
    FRISARD'S TRANSPORTATION,     *      24-CV-347
5   LLC, et al.                   *
                                  *
6   versus                        *      Section L
                                  *
7   UNITED STATES DEPARTMENT       *
    OF LABOR, et al.              *      March 8, 2024
8                                 *
    * * * * * * * * * * * * * * * *
9

10

11            TELEPHONE STATUS CONFERENCE BEFORE
              THE HONORABLE ELDON E. FALLON
12            UNITED STATES DISTRICT JUDGE

13  Appearances:

14
    For the Plaintiffs:          Liberty Justice Center
15                               BY:  M.E. BUCK DOUGHERTY III, ESQ.
                                      REILLY STEPHENS, ESQ.
16                               440 Wells Street, Suite 200
                                 Chicago, Illinois 60654
17

18  For the Defendants:          U.S. Attorney's Office
                                 BY:  PETER MANSFIELD, ESQ.
19                                    RENEE GOUDEAU, ESQ.
                                 650 Poydras Street, Suite 1600
20                               New Orleans, Louisiana 70130

21
    For the Defendants:          U.S. Department of Justice
22                               BY:  LISA A. OLSON, ESQ.
                                 20 Massachusetts Avenue NW
23                               Washington, DC 20530

24

25

```
1   Official Court Reporter:       Toni Doyle Tusa, CCR, FCRR
                                   500 Poydras Street, Room B-275
2                                  New Orleans, Louisiana 70130
                                   (504) 589-7778
3

4

5   Proceedings recorded by mechanical stenography using
    computer-aided transcription software.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

10:28

## PROCEEDINGS

### (March 8, 2024)

THE COURT:  Good morning everyone.  This is Judge Fallon.

Who is on the line for the plaintiffs?

MR. STEPHENS:  This is Reilly Stephens, Your Honor, on the line for the plaintiffs.

THE COURT:  And for the defendants?

MS. OLSON:  Your Honor, this is Lisa Olson with the Department of Justice.

Peter, I will allow you to introduce yourself.

MR. MANSFIELD:  Thanks, Lisa.

Peter Mansfield and Renee Goudeau, U.S. Attorney's Office, Eastern District of Louisiana.

THE COURT:  The plaintiffs are four Louisiana-based businesses in the trucking industry and one organization that advocates for them in Baton Rouge as well as Washington.

The plaintiffs in this case have moved the Court for a temporary restraining order or a preliminary injunction to postpone the effective date of the United States Department of Labor's new independent contractor classification rule, "Employee or Independent Contractor Classification under the Fair Labor Standards Act."

Let me hear from the parties at this time, from the plaintiffs first.  Why do you want that, sir?

10:35

1    **MR. STEPHENS:**  Yes.  Sure, Your Honor.  We filed our
2    motion, and I think that we have said most of what we would
3    have to say in the papers.  I think the emphasis is that this
4    is a major national rule that is having a negative effect on my
5    clients.  So we would ask the Court provide relief from this
6    major regulatory change while the case proceeds ahead of the
7    effective date of March 11.
8         **MR. DOUGHERTY:**  Your Honor, this is Buck Dougherty,
9    attorney with the Liberty Justice Center.  That was my
10   colleague, Reilly Stephens.
11        **MR. STEPHENS:**  Mr. Dougherty will take the lead here.
12   I wasn't sure if he was going to be able to make the hearing.
13        **MR. DOUGHERTY:**  I apologize.  I just got the notice,
14   Your Honor.  I am still waiting to get my certificate of good
15   standing from Tennessee, but we are on the pleadings.  I will
16   be filing that *pro hac* information soon.
17             As Mr. Stephens said, the new 2024 rule goes
18   into effect Monday, March 11, and so the emergency temporary
19   restraining order is being filed to postpone the effective date
20   of the rule.  As Mr. Stephens said, the declarations kind of
21   speak for themselves.  Our clients will be injured
22   financially -- substantially -- with no guarantee of
23   recovering.  We believe the case law and the controlling
24   precedent in the Fifth Circuit shows that there's irreparable
25   harm.  Certainly the 2021 rule is the status quo, and we are

10:37

1    simply seeking to preserve that status quo under Rule 65, to

2    maintain that rule, the 2021 rule, the old rule.

3              Certainly we filed a motion for preliminary

4    injunction, noticed that for March 27.  We would ask that the

5    restraining order be in effect until the Court makes its

6    decision and determination on the preliminary injunction.  We

7    believe the facts as set forth in the declaration and the rule,

8    the new rule, the DOL acted arbitrarily and capriciously by not

9    collecting data, monitoring data on the 2021 rule, which has

10   been in effect for three years.  Based on this information,

11   Your Honor, and the record before the Court, we believe that

12   preserving the status quo and entering the TRO is warranted in

13   this situation.

14         **THE COURT:**  Usually in these situations the

15   government posts their intentions.  They have hearings and a

16   back-and-forth.  They get information from the public or

17   interested parties, and there's an opportunity at that level to

18   focus more attention on it.  What happened in this case?

19         **MR. DOUGHERTY:**  That's right, Your Honor.  There was

20   notice and comment.  The rule itself, 2024, the new rule, I

21   believe referenced over 55,000 comments, so a number of

22   comments were received.  Some were positive; some were

23   negative.

24              In terms of the Administrative Procedure Act,

25   certainly an agency can change course and policies if it wants

24-30223.300

10:38

1    to; but when it does it in those situations, it has to be a
2    reasoned decision-making.  We don't believe that was the case
3    here, and so this is a final rule.  It was published in the
4    *Federal Register* January 10, 2024.  We filed suit.  Of course,
5    Frisard's was the first plaintiff, and we have added four
6    additional parties as of yesterday.
7                  It is a final rule.  It goes into effect on
8    March 11, and we don't believe that the agency acted reasonably
9    by completely disregarding -- and they said this, that we cite
10   in the memorandum of law, they did not review any kind of data
11   on the 2021 rule and its effect, and they believed they didn't
12   have to review any data.  Our position is that's wrong, and
13   there must be some type of reasoned analysis if an agency is
14   going to change policy.
15                  So the 2021 rule, still in effect, there was
16   prior litigation, Your Honor, and of course we cite that.  It
17   was in the Eastern District of Texas where they tried to
18   withdraw the rule, the old rule, but that was just according --
19   Texas said they couldn't do that.  It was a final judgment, so
20   the rule has been in effect for three years.
21                  In accordance with the declarations that we
22   filed, our clients have relied on that 2021 rule for
23   three years in terms of how they classify their workers,
24   independent contractors versus employees.  So completely
25   changing course and not factoring in the reliance interests --

10:40

1  you know, our clients certainly have relied on that for

2  three years now.  That is going to completely upend their

3  business operations.  The APA statute that we cite to, as well,

4  also provides relief for postponing a rule from going into

5  effect.

6          So Your Honor is correct there was notice and

7  comment.  We don't allege that that was a defect in the new

8  rule, and it generated over 55,000 comments according to the

9  rule.  It was still arbitrary and capricious that they did not

10 actually look at the old rule before rescinding it with this

11 new rule, and so that would be the basis for the relief.

12         **THE COURT:**  Let me hear from the government at this

13 time.

14         **MS. OLSON:**  Thank you, Your Honor.  Lisa Olson here.

15 I would like to put this, first of all, into context.

16         Since the 1940s -- well, let me first start out

17 this rule, this 2024 rule that's being challenged in this case,

18 is simply the embodiment of judicial precedent that has existed

19 for the last 70 years since the Supreme Court issued a series

20 of cases in the 1940s setting forth the analysis that should be

21 used to determine whether a worker is an employee or an

22 independent contractor.  Employees are entitled to certain

23 benefits, minimum wage and overtime under the Fair Labor

24 Standards Act.

25         Since the 1940s and until the present, the

1    Supreme Court and the Fifth Circuit have adopted, endorsed, and
2    exercised the analysis that is now formally embodied in the
3    2024 rule.  In 2021, at the end of the last administration, the
4    rule was changed to place an emphasis on certain factors which
5    altered this judicially established analysis, and that rule
6    went into effect for three years.  Now the rule is being
7    changed to reinstate what was in effect before 2021 for the
8    prior 70 years.
9            As we said in our response, a notice of proposed
10   rulemaking was issued in October 2022.  The proposed rule was
11   published in October 2023.  So the plaintiffs would have been
12   aware of the potential for this rule for years and certainly
13   months.  The rule was finally published in January, on
14   January 10, 2024, so they then had 61 days to challenge this
15   2024 rule.
16           As you know, they filed their complaint last
17   night.  I was notified by them two weeks ago that they intended
18   to seek a preliminary injunction.  I asked them the next
19   morning when they, roughly, intended to seek it, and I heard
20   nothing back until yesterday at about 5:30 p.m. or late
21   afternoon, when we got an amended complaint which significantly
22   changes the original complaint that the plaintiff filed on
23   February 8.  Last night they also filed a motion for a TRO and
24   then followed by a motion for a preliminary injunction.
25           So all of this is last minute, but what is

1   outstanding about this complaint -- which as I say was filed

2   last night, but was preceded by a complaint filed on

3   February 8 -- is that there is no allegation that anything is

4   going to happen on Monday when this rule goes into effect.

5   These businesses have been in effect for many years prior to

6   2021 from what I gleaned from my bleary-eyed review of the

7   papers last night.  If their workers were independent

8   contractors prior to 2021, then they will continue to be

9   independent contractors.

10              There's no allegation in the complaint that any

11  of the workers changed their status as a result of the 2021

12  rule, so this is a manufactured emergency.  The 2024 regulation

13  that has been published is simply intended to align with prior

14  precedent.  It is not making any radical changes.  It is

15  reinstating what has existed for decades.  The plaintiffs do

16  not indicate that they have altered their business model or

17  will alter their business model.  They simply allege a very

18  speculative potential harm.

19              Furthermore, this rule, this 2024 rule which is

20  to go into effect Monday, is simply guidance.  It explains how

21  the Department of Labor would undertake the analysis of whether

22  a worker is an employee or an independent contractor, so it is

23  simply an interpretive guidance.  What would have to precede

24  any change in any worker's status due to Department of Labor

25  enforcement is that there would first have to be an

10:46

1    investigation and then there would have to be an enforcement
2    proceeding.
3                    Believe me, I can assure you 100 percent that
4    between now and Monday or now and the next two or three weeks,
5    during which we ask for a reasonable time to respond to the
6    plaintiffs' filings, no enforcement proceeding or investigation
7    or final determination on any of plaintiffs' employees is going
8    to occur.  The plaintiffs have not alleged harm, they haven't
9    alleged that they changed anything in their business model, and
10   they have not met the standards for a TRO or, for that matter,
11   a preliminary injunction.
12                   As I said, they amended their complaint
13   yesterday.  We are not in a position to discuss the merits at
14   length at this point because the two points they just raised
15   were newly raised, but I can assure the Court in its 200-page
16   single-spaced response to this over 55,000 comments that the
17   agency received since October 2023, it absolutely reviewed the
18   2021 rule and exhaustively discussed why it is contrary to
19   decades of judicial precedent.
20                   I would also like to add that the litigation in
21   Texas, the decision in that case was vacated by the
22   Fifth Circuit recently.  The case has been remanded.  It did
23   not concern the merits of this case.  It concerned whether the
24   act of withdrawing the 2021 rule was valid.  That decision by
25   that court in Texas has been vacated because of the issuance of

1  this new rule.

2           We believe this is a manufactured emergency.

3  There is no excuse nor have plaintiffs offered any excuse for

4  this sort of gamesmanship, and their gambit should not be

5  rewarded with a temporary restraining order that they have

6  failed to justify.

7           **THE COURT:**  Let me hear a response to that.

8           **MR. DOUGHERTY:**  Well, first off, it sounds like the

9  government pretty much agrees that a temporary restraining

10  order would be appropriate because they said they are not going

11  to do anything and that preserving the status quo formally

12  would be the right thing to do until the Court has had an ample

13  opportunity to review briefing on the preliminary injunction.

14  I think that's sort of what I heard.

15           Going to the procedural aspects, the rule in

16  2024 does two things.  It brings into effect on Monday a new

17  way to classify independent contractors and it ushers out the

18  door the old rule, the 2021 rule.  It rescinds it.  Right now

19  and tomorrow and Sunday, the 2021 rule is still in effect until

20  it is rescinded on Monday.  That would be the appropriate

21  reason to issue a temporary restraining order, to preserve that

22  status quo.

23           In terms of procedurally, one plaintiff,

24  Frisard's Transportation, filed on February 8, which was

25  approximately -- well, actually less than 30 days after the

10:50

1    rule was published.  Yesterday the complaint was amended to add

2    four new parties, so there was no waiting at all.  In fact,

3    there's been, I believe -- even though we may disagree on the

4    merits of the arguments, I don't think you can look at the

5    papers that were filed yesterday and say anything was

6    gamesmanship or anything was something that's manufactured.

7            Those are real facts backed up by real

8    declarations, backed up by organizations who are going to have

9    their business upended because of the new 2024 rule.  I would

10   disagree with the government that facts have been alleged that

11   these plaintiffs are going to occur substantial financial

12   injury with no opportunity or no guarantee of recovery which

13   supports irreparable injury.

14           Nothing has been done to wait or to delay.  In

15   fact, the harm takes place on Monday morning, or probably at

16   12:01, I guess, Monday because that's when the new rule goes

17   into effect.  If the government's attorney is already conceding

18   in a telephone conference with the Court that they are not

19   going to enforce it, they are not going to do anything, well,

20   that's fine.  It would seem appropriate to go ahead and agree

21   to a TRO until this Court has had an opportunity to review all

22   of the briefing -- and certainly we don't disagree these are

23   complex issues -- to review the briefing on the preliminary

24   injunction.

25           One point, though, this is the same Department

10:51

1  of Labor that issued the 2024 rule that also issued the 2021

2  rule.  They said the same thing in the 2021 rule, that this was

3  going to embody long-standing judicial precedent and so forth.

4  There may be a disagreement within the administrations, the

5  outgoing and the incoming, over policy, but DOL said the 2021

6  rule was implemented to do exactly what it's now changing

7  course 180 degrees with the 2024 rule.

8           It seems appropriate -- we certainly supported

9  the motion for an emergency TRO to preserve the status quo, and

10  we simply ask that the Court postpone the effective date, which

11  is Monday, March 11, until it has had an opportunity to review

12  the preliminary injunction and have briefing.  We noticed this

13  for March 27 in accordance with the Local Rules.

14           If the government wants to consent to a TRO or

15  postponing the effective date -- obviously the relief we

16  request in the preliminary injunction is to set the rule aside.

17  We are not asking that at the TRO stage.  We are just saying

18  postpone the effective day.

19           DOL has said one thing in the 2021 rule and it's

20  saying the same thing in the 2024 rule, but providing a

21  completely different framework.  In terms of judicial economy

22  and in terms of preserving the status quo, this case is perfect

23  for a temporary restraining order to simply postpone the

24  effective date.

25           **MS. OLSON:**  Your Honor --

10:53

1      **THE COURT:**  I will give the government a chance to

2    respond to that.  Go ahead.  Let me hear from the government.

3      **MS. OLSON:**  Thank you.  It is the plaintiffs' burden,

4    not our burden, to show that they are being harmed.  I defy

5    them to point to any single place in any of their filings which

6    shows that this rule will have a tangible, concrete effect on

7    them.  There is nothing more than the assertion of the

8    possibility of harm.

9      If that is so now, if it is true that their

10   independent contractor status might change now, then it was

11   probably true for the last 70 years.  If they are correctly

12   classified now, that is not going to change.  That was my

13   point, not that the government is not going to take any action,

14   but that they are not going to suffer any concrete harm because

15   this rule is simply aligned with decades of Fifth Circuit and

16   Supreme Court precedent.

17      Again, it is not our burden to show that.  They

18   are asking for extraordinary, drastic relief here, and it is

19   their burden to show harm.  They have failed to allege it, and

20   they have provided no evidence to show it.  He said there's

21   nothing new in this complaint.  They filed a complaint last

22   night which raises new claims.  They have had months, weeks to

23   do that.  They have gotten rid of old claims.  They have added

24   four new parties.

25      There's no excuse for this last-minute

10:55

1   manufactured emergency, and that alone is grounds for denying

2   the temporary restraining order.  They have sat on their rights

3   for two months and have not demonstrated that they are going to

4   suffer any harm that warrants this sort of extraordinary

5   relief.

6            **MR. DOUGHERTY:**  Your Honor, I do have a case in front

7   of me.  I would like to at least point to those because there

8   are clear facts in here.  Again, rights haven't been sat on

9   because the injury takes effect when the new rule goes into

10   effect on Monday.  That's what's imminent.  It's imminent

11   because it's going to be on Monday.

12            I'm pulling that ECF 14-1, and we have

13   five declarations.  This was the elite plaintiff, Frisard's,

14   document 14-1 on page 4.

15            Paragraph 10:  "Frisard's will incur substantial

16   financial injury with no guarantee of eventual recovery as a

17   result of the 2024 rule."

18            Paragraph 11:  "For example, the 2024 rule

19   threatens to upend Frisard's business operations, increasing

20   costs, depriving truckers of the opportunity to operate

21   independently within their own business, and potentially

22   driving many" of those independent contractors that they

23   contract with out of business and into different lines of

24   business other than Frisard's business "depriving it of needed

25   manpower to deliver cargo wherever its clients need it

10:56

1    delivered."

2              All five declaration say that.  Also, in the

3    same 14-1, it says in paragraph 4:  "Frisard's has relied on

4    the 2021 rule since its effective date of March 8, 2021, when

5    classifying its independent contracting labor."

6              So there are reliance interests three years to

7    the day -- today is March 8, 2024, of course.  There have been

8    reliance interests for three years, and that is how these

9    businesses have determined and classified their workers into

10   independent contractors versus employees for three years.

11             Those are significant reliance interests that

12   the Fifth Circuit said are to be taken into account, and when

13   an agency does not take that into account -- and as we noted in

14   the briefing, the agency just kind of flippantly said the

15   information is unpersuasive that there would be significant

16   reliance interests.  Well, these employers who employ

17   independent contractors, it's a significant core part of their

18   business.  They relied on the 2021 old rule for three years in

19   terms of classifying.  Starting on Monday, they are going to

20   incur substantial financial injury with no guarantee of

21   recovery.

22             So those are declarations, and I don't think

23   it's appropriate to say that facts have not been alleged when

24   you have declarations as specific and nonconclusory in fact.

25         **MS. OLSON:**  Your Honor, if I may.

10:58

1    **THE COURT:**  Go ahead.

2    **MS. OLSON:**  First of all, out of the plaintiffs' own

3    mouth, they make bare assertions of threats of harm.  That's

4    the word he used.  Potential harm, possible harm, this is not

5    concrete injury, and I think it's deceptive to say that they

6    have relied on the classification for three years.

7        What they have failed to allege is that they

8    changed their classification over the last three years and that

9    they are going to have to change it again.  There is no

10   allegation to that effect.  It is just deceptive to say that

11   they have relied on it for three years in classifying.  The

12   odds are very high that the classifications they have enjoyed

13   for the last three years are the same classifications that

14   existed prior to the 2021 rule and that will continue to exist

15   on Monday.

16       The second point I would like to make, if I may,

17   please, is an administration is entitled to change course as

18   long as it reasonably considers the comments that are made and

19   offers a reasonable explanation for its decisions.  The

20   preamble to this rule is nothing if not exhaustive,

21   comprehensive, and thoroughly reasoned and thought out.

22       Most importantly, it is based on judicial

23   precedent for the last 70 years.  The administration determined

24   that the 2021 rule was a digression from that precedent and

25   decided to reinstate the law that was in effect, used by courts

11:00

1    universally and unanimously throughout the country for the last

2    70 years.  No court, to the Department of Labor's knowledge,

3    has used or endorsed the 2021 analysis to date.

4              That's all I wanted to say.  Thank you.

5         **THE COURT:**  Any response to that?

6         **MR. DOUGHERTY:**  Well, our whole point is they

7    literally said that there was no reason to do any kind of

8    gathering of data before they rescind the 2021 rule, and that's

9    clearly not the law as we noted in the briefing.

10             The government's attorney just mentioned

11   something about odds are entirely unlikely.  Well, that's a

12   declaration from four businesses and one organization who

13   advocates on behalf of the trucking association.  I didn't see

14   any supporting counter declaration in their response.

15             If the government has declarations to counter

16   that, that somehow our clients had not relied on independent

17   contracting, they are certainly welcome to put forward that,

18   but those are declarations and that's what they swore to.  We

19   believe we certainly met the standard to have this Court issue

20   a TRO to preserve the status quo because as of Monday the 2021

21   rule will go away.  We believe that's the appropriate thing to

22   do at this point.  Certainly there's some complex issues that

23   can be sorted out through briefing and counter briefing on the

24   preliminary injunction, but at least preserving the status quo

25   is the appropriate thing to do in the short term.

11:01

1          **MS. OLSON:**  Your Honor --

2          **THE COURT:**  Go ahead.

3          **MS. OLSON:**  -- a brief response.  One last thing.

4                He brought up gathering of data more than once.

5     They filed their amended complaint and this TRO motion after

6     business hours yesterday, made significant changes to the

7     complaint that was previously filed, and we certainly wouldn't

8     have had a chance to get declarations even if we needed them.

9                The important thing is that they have not

10    alleged any tangible harm.  It's all threats of harm

11    potentially upending their business.  The assertion that

12    there's been no gathering of data, this is almost certainly

13    taken out of context, because the Department of Labor

14    exhaustively considered all of the information presented to it

15    in over 55,000 comments and responded to address all the points

16    raised in those comments.

17               They are attempting to argue the merits here.

18    We aren't prepared to argue the merits, but I can assure the

19    Court that that point is addressed somewhere in these comments.

20    I would surmise that what I was saying was taken out of

21    context.  I think the operable fact here is they simply have

22    not alleged concrete harm, and it is their burden to do that.

23    I think a TRO is unwarranted.  They have not met the standard

24    for it.

25               **THE COURT:**  Okay.  I understand the position of both

1    parties.  They have articulated their positions well.

2              Let me begin by reminding everyone that a TRO or

3    a preliminary injunction is an extraordinary and drastic remedy

4    and not to be granted routinely, but only when the movant, in

5    this case the plaintiff, by an appropriate showing carries the

6    burden of persuasion.

7              The movant must satisfy each of the traditional

8    criteria in order to be entitled to a preliminary injunction or

9    a TRO.  First is the irreparable injury.  Second, of course, is

10   the standard likelihood of success on the merits.  Third is a

11   favorable balance of hardships.  Fourth is no adverse effect on

12   the public interests.

13             In this case it appears to me that the question

14   of immediate harm hasn't been shown, its potential maybe, but

15   this is not -- while it's a change in the rule, it seems to be

16   a resurrection of a position that had been in effect for some

17   70 or 80 years.  The likelihood of success is at least

18   questionable, if not able to be sustained.

19             So because there's no immediate threat of harm

20   or immediate harm, if there is harm, there's adequate

21   opportunity for the person who is harmed to show specifically

22   what the harm is and how the individual has been harmed.  I

23   think that the plaintiff in this case fails to establish at

24   least one, if not two or three, of the requirements to get a

25   preliminary injunction and/or TRO.  For all of those reasons, I

1    will deny the motion.

2            Thank you very much, both of you.  I appreciate

3    your participation.

4            (Proceedings adjourned.)

5                    * * *

6                **CERTIFICATE**

7            I, Toni Doyle Tusa, CCR, FCRR, Official Court

8    Reporter for the United States District Court, Eastern District

9    of Louisiana, certify that the foregoing is a true and correct

10   transcript, to the best of my ability and understanding, from

11   the record of proceedings in the above-entitled matter.

12

13

14                    */s/ Toni Doyle Tusa*
                     Toni Doyle Tusa, CCR, FCRR
15                   Official Court Reporter

16

17

18

19

20

21

22

23

24

25

**TAB 5:**
**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PRELIMINARY INJUNCTION**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FRISARD'S TRANSPORTATION, L.L.C.; LOUISIANA MOTOR TRANSPORT ASSOCIATION, INCORPORATED; A & B GROUP, INC.; NORTHLAKE MOVING AND STORAGE, INC.; TRIPLE G. EXPRESS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF LABOR; JULIE SU, *in her official capacity as Acting Secretary of Labor*; JESSICA LOOMAN, *in her official capacity as Administrator of the Wage and Hour Division*; UNITED STATES DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION, <br><br> Defendants. | **Case No. 2:24-cv-00347** <br><br> Section L <br><br> District Judge Fallon <br><br> Magistrate Judge North |

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>

James Baehr (LSBA 35431)
Sarah Harbison (LSBA 31948)
PELICAN CENTER FOR JUSTICE
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone: (504) 475-8407

M.E. Buck Dougherty III TN BPR #022474
Reilly Stephens
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
Telephone: (312) 637-2280

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 5

STATEMENT OF FACTS ....................................................................................... 6

  A. DOL's 2021 Rule .......................................................................................... 6

  B. DOL's 2024 Rule .......................................................................................... 7

  C. Plaintiffs and Their Injuries ...................................................................... 8

LEGAL STANDARD ............................................................................................. 14

ARGUMENT .......................................................................................................... 15

  I. This Court should issue a Preliminary Injunction and set aside the 2024 Rule. ............................................................................................................... 15

    A. Plaintiffs are likely to succeed on the merits of their claims because DOL promulgated the 2024 Rule in violation of the Administrative Procedure Act. ............................................................................................ 16

      1. The 2024 Rule is arbitrary and capricious. ...................................... 18

        a. DOL failed to consider alternatives within the ambit of the existing 2021 Rule, like monitoring its effects, claiming it is not "obligated to wait for more time to gather data before rescinding" it. ..................................................................................... 19

        b. DOL failed to consider employers' reliance interests on 2021 Rule. ............................................................................................... 22

      2. The 2024 Rule is in excess of DOL's statutory authority. ..................... 23

    B. Plaintiffs would be irreparably harmed absent a Preliminary Injunction. .................................................................................................... 24

    C. The balance of equities favors issuing a Preliminary Injunction. ............. 24

  II. The Court may also grant similar equitable relief pursuant to 5 U.S.C. § 706(2)(A). ........................................................................................... 25

CONCLUSION ....................................................................................................... 25

24-30223.179

# TABLE OF AUTHORITIES

## Cases

*10 Ring Precision, Inc. v. Jones*, 722 F.3d 711 (5th Cir. 2013) .................................. 18

*Alabama Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 210 L. Ed. 2d 856 (2021) ........ 24

*Azar v. Allina Health Servs.*, 139 S. Ct. 1804 (2019)................................................... 16

*Byrum v. Landreth*, 566 F.3d 442 (5th Cir. 2009). .................................................... 15

*Castillo v. Givens*, 704 F.2d 181 (5th Cir. 1983)................................................... 6, 22

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)............... 17

*Coal. for Workforce Innovation v. Walsh*, No. 1:21-CV-130,
    2022 U.S. Dist. LEXIS 68401 (E.D. Tex. Mar. 14, 2022)........................................ 7

*DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) ................... 16, 19, 21, 23

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016).......................................... 17

*Env't Integrity Project v. EPA*, 425 F.3d 992 (D.C. Cir. 2005) ................................. 16

*Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009)......... 17

*Fed. Commc'ns Comm'n v. Prometheus Radio Project, U.S.*,
    141 S. Ct. 1150 (2021). .......................................................................................... 18

*Gregory v. Miller*, Civil Action No. 04-3017, 2007 U.S. Dist. LEXIS 19974
    (E.D. La. Mar. 21, 2007)........................................................................................ 15

*Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011) ....................................................... 15

*Michigan v. EPA*, 576 U.S. 743 (2015)......................................................... 17, 21, 23

*Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023).......................................................... 15

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ................................................................................................ 16

*Nat'l. Cable & Telecomms. Ass'n. v. Brand X Internet Servs.*,
    545 U.S. 967 (2005) .............................................................................................. 17

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................................ 15

*NLRB v. Town & Country Elec., Inc.*, 516 U.S. 85 (1995)......................................... 23

24-30223.180

*R.J. Reynolds Vapor Co. v. FDA,* 65 F.4th 182 (5th Cir. 2023) ................................. 16

*Sierra Club v. U.S. Envtl. Prot. Agency,* 939 F.3d 649 (5th Cir. 2019) ............... 18, 20

*Texas v. Biden,* 10 F.4th 538 (5th Cir. 2021) ............................................................ 24

*Texas v. Biden,* 20 F.4th 928, 988 (5th Cir. 2021) ................................................... 18

*Texas v. EPA,* 829 F.3d 405 (5th Cir. 2016) ............................................................. 24

*United States v. Silk,* 331 U.S. 704, 713 (1947) ......................................................... 6

*Util. Air Regulatory Grp. v. EPA,* 134 S. Ct. 2427 (2014) ...................................... 23

*Wages & White Lion Invs. v. United States Food and Drug Admin.,*
16 F.4th 1130 (5th Cir. 2021) .................................................................................. 24

**Statutes**

5 U.S.C. § 702 ............................................................................................................... 16

5 U.S.C. § 704 ............................................................................................................... 16

5 U.S.C. § 705 ............................................................................................................... 25

5 U.S.C. § 706 ............................................................................................................... 18

**Rules**

Fed. R. Civ. P. 65 .......................................................................................................... 5

LR 5.2 ............................................................................................................................. 5

**Other Authorities**

86 FR 1168 ........................................................................................................... 6, 20, 22

89 FR 1638 .............................................................................................................. passim

24-30223.181

## INTRODUCTION

Plaintiffs submit this Memorandum of Law in support of their Motion for Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. They seek to set aside the U.S. Department of Labor's new independent contractor classification rule—"Employee or Independent Contractor Classification Under the Fair Labor Standards Act," which takes effect on March 11, 2024.[1] *See* 89 FR 1638.

The Plaintiffs are four Louisiana-based businesses in the trucking industry and one organization that advocates for them in Baton Rouge and Washington, D.C. on laws and regulations that affect the industry. Plaintiffs rely on independent owner-operator trucking labor as a core component of their businesses. The rule the Plaintiffs challenge rescinds a 2021 Rule that they have relied on for three years when classifying their independent-contracting labor. But the 2024 Rule, unlike the lawful 2021 Rule, was promulgated in violation of the Administrative Procedure Act. As a result of the 2024 Rule, Plaintiffs will incur substantial financial injury with no guarantee of eventual recovery unless the Court sets it aside.

*First*, the 2024 Rule is arbitrary and capricious. Defendants failed to consider alternatives within the ambit of the existing 2021 Rule, like monitoring its effects, claiming they are not "obligated to wait for more time to gather data before rescinding" it. And they failed to consider employers' reliance interests on the 2021 Rule.

---

[1] Plaintiffs have also filed an Emergency Motion for Temporary Restraining Order today to postpone the effective date of the 2024 Rule. *See* ECF No. 14.

5

*Second*, the 2024 Rule is in excess of the Defendants' statutory authority under the Fair Labor Standards Act.

## STATEMENT OF FACTS

### A. DOL's 2021 Rule

In January 2021, the U.S. Department of Labor and its Wage and Hour Division (collectively the "DOL") issued a classification rule establishing when a worker qualifies as either an employee or independent contractor. *See* 86 FR 1168. The 2021 Rule reconciled decades of inconsistency and set forth a formal interpretation of the traditional standards established in *United States v. Silk*, 331 U.S. 704 (1947), to provide clarity to employers when classifying employees and independent contractors. *See* First Amended Complaint ("Am. Compl."), ECF No. 9 at ¶ 30.

Specifically, the 2021 Rule found, similarly to the Fifth Circuit Court of Appeals in *Castillo v. Givens*, 704 F.2d 181 (5th Cir. 1983), that in practice two factors in particular predominate in determining whether a person should be considered an employee or an independent contractor: (1) the nature and degree of the worker's control over work; and (2) the worker's opportunity for profit or loss. ECF No. 9 at ¶ 31. And under the 2021 Rule, if these two key factors give a clear answer, that is the end of the analysis. *Id.* at ¶ 32. And if the two key two factors point in disparate directions, then there are three additional factors for a court to consider: (3) the amount of skill required for the work; (4) the degree of permanence of the working relationship; and (5) whether the work is part of an integrated unit of production. *Id.* at ¶ 33.

24-30223.183

A district court held that the 2021 Rule "became effective as of March 8, 2021, the rule's original effective date, and remains in effect." *See Coal. for Workforce Innovation v. Walsh*, No. 1:21-CV-130, 2022 U.S. Dist. LEXIS 68401, *49 (E.D. Tex. Mar. 14, 2022).

## B. DOL's 2024 Rule

On January 10, 2024, the DOL issued and published in the Federal Register a new final rule, effective March 11, 2024, which rescinds the 2021 Rule and provides yet another interpretation of the distinction between employees and independent contractors under the Fair Labor Standards Act ("FLSA"). *See* 89 FR 1638-39.

The 2024 Rule provides a "totality of the circumstances" analysis, invoking six nonexclusive factors that a court could look to when determining employee status: (1) workers' opportunity for profit or loss depending on managerial skill; (2) investments made by worker and employer; (3) degree of permanence of the work relationship; (4) nature and degree of businesses' control over the worker; (5) the extent to which work performed is an integral part of the potential employer's business; and (6) whether the worker uses specialized skills in performing the work. *Id*. at 1640.

In promulgating the 2024 Rule, the DOL stated that it is not "obligated to wait for more time to gather data before rescinding the 2021 IC Rule and promulgating a new rule." *Id*. at 1660. The DOL further acknowledged that it is "mindful of the impact that changes in the Department's guidance may end up having on the regulated community" by rescinding and replacing the 2021 Rule. *Id*. But then it said that stakeholder reliance interest on the 2021 Rule is "unpersuasive." *Id*.

7

## C. Plaintiffs and Their Injuries

### *Frisard's Transportation, L.L.C.*

Since 2014, Plaintiff Frisard's Transportation, L.L.C. ("Frisard's") has been a family-owned trucking company specializing in transporting finished goods to stock the shelves of supermarkets and other retail stores, among other cargo, that relies on independent contracting labor as a core necessity of its business. *See* Cully Frisard Declaration ("Frisard Decl."), ECF No. 14-1 at ¶ 3.

Frisard's is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule. *Id*. at ¶ 4. Frisard's has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent-contracting labor. *Id*. Frisard's has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill Frisard's clients' needs. *Id*. at ¶ 5.

Frisard's transports cargo throughout the southern and eastern United States, from Texas and Nebraska to Maryland and Florida, wherever its customers need cargo delivered. *Id*. at ¶ 6. Frisard's contracts with more than thirty owner-operated independent drivers who own their own trucks, decide which loads to carry or not, and who are paid a flat percentage of shipping fee for a given load, plus reimbursable expenses such as fuel which are passed on to the client. *Id*. at ¶ 7.

Frisard's utilizes only independent owner operators to make deliveries and employs no in-house drivers. *Id*. at ¶ 8. By contrast, a related but separate company, Frisard's Trucking Co., employes a staff of in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a

benefits package, and are required to work set hours and carry loads as assigned. *Id*. Frisard's use of independent owner-operators is beneficial to both Frisard's itself, which is able to operate more efficiently and reduce excess costs, and to Frisard's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. *Id*. at ¶ 9.

Frisard's will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. *Id*. at ¶ 10. For example, the 2024 Rule threatens to upend Frisard's business operations, increasing costs, depriving truckers of the opportunity to operate independently within their own business, and potentially driving many of the independent contractors Frisard's relies on out of business, or into different lines of business other than Frisard's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. *Id*. at ¶ 11.

### *Louisiana Motor Transport Association, Incorporated*

Plaintiff Louisiana Motor Transport Association, Incorporated ("LMTA") is a non-profit corporation founded in 1939, and it represents 388 Louisiana trucking and related industry companies. *See* Renee Amar Declaration ("Amar Decl."), ECF No. 14-2 at ¶ 3. LMTA's mission is to protect and promote Louisiana's trucking industry. *Id*. at ¶ 4. Its members include every type of motor carrier in Louisiana, including related and exempt, intrastate and interstate, and for-hire and private. *Id*. LMTA champions the trucking industry and advocates for its members on laws and regulations in Baton Rouge, La., and in Washington, D.C. *Id*. at ¶ 5.

9

LMTA's members are subject to the FLSA, the 2021 Rule, and the 2024 Rule, and they rely on independent contracting labor as a core necessity of their businesses. *Id*. at ¶ 6. Moreover, LMTA's members have relied on the 2021 Rule since its effective date of March 8, 2021, when classifying their independent-contracting labor. *Id*. at ¶ 7. LMTA's members' use of independent owner-operators benefits both employer members, who are able to operate more efficiently and reduce excess costs, and to members' independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. *Id*. at ¶ 8.

LMTA's members will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. *Id*. at ¶ 9. For example, the 2024 Rule threatens to upend LMTA's employer members' business operations, increase costs, and deprive independent owner-operator truckers of the opportunity to work independently within their own business. *Id*. at ¶ 10. Moreover, the 2024 Rule could potentially drive many of the independent contractors LMTA's employer members rely on out of business, or into different lines of business other than LMTA's members' businesses, depriving them of needed manpower to deliver cargo wherever their clients need it delivered. *Id*. at ¶ 11.

*A & B Group, Inc.*

Plaintiff A & B Group, Inc. ("A&B") is a trucking company in operation since 1995, specializing in delivering liquid and dry bulk long-haul services and

10

transporting cargo to all 50 U.S. states and Canada. *See* Burton Baty Declaration ("Baty Decl."), ECF No. 14-3 at ¶ 3.

A&B is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. *Id.* at ¶ 4. A&B has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor. *Id.* at ¶ 5. A&B has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs. *Id.* at ¶ 6.

A&B contracts with drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel. *Id.* at ¶ 7. A&B also employs in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned. *Id.* at ¶ 8. A&B's use of independent owner-operators is beneficial to both A&B itself, which is able to operate more efficiently and reduce excess costs, and to A&B's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. *Id.* at ¶ 9.

A&B will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. *Id.* at ¶ 10. For example, the 2024 Rule threatens to upend A&B's business operations, increasing costs, depriving truckers of the

24-30223.188

opportunity to work independently within their own business, and potentially driv-

ing many of the contractors A&B relies on out of business, or into different lines of

business other than A&B's business, depriving it of needed manpower to deliver

cargo wherever its clients need it delivered. *Id.* at ¶ 11.

*Northlake Moving and Storage, Inc.*

Plaintiff Northlake Moving and Storage, Inc. ("Northlake") is a trucking com-

pany that has operated for over 40 years, specializing in transportation and storage

of household goods, office furniture, and special products, and it transports cargo to

48 U.S states. *See* Larry Terrell Declaration ("Terrell Decl."), ECF No. 14-4 at ¶ 3.

Northlake is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule,

and it relies on independent contracting labor as a core necessity of its business. *Id.*

at ¶ 4. Northlake has relied on the 2021 Rule since its effective date of March 8,

2021, when classifying its independent contracting labor. *Id.* at ¶ 5. Northlake has

gross sales of more than $500,000 per year, frequently hauls goods across state

lines, and frequently employs independent contractors to drive trucks to fulfill its

customers' needs. *Id.* at ¶ 6.

Northlake contracts with drivers who own their own trucks, decide which loads

to carry or not, and who are paid based on an agreed-upon schedule, plus reimburs-

able expenses such as fuel. *Id.* at ¶ 7. Northlake also employs in-house drivers who

drive company-owned trucks, are typically paid on a salary or hourly wage basis,

provided a benefits package, and are required to work set hours and carry loads as

assigned. *Id.* at ¶ 8. Northlake's use of independent owner-operators is beneficial to

24-30223.189

both Northlake itself, which is able to operate more efficiently and reduce excess costs, and to Northlake's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. *Id*. at ¶ 9.

Northlake will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. *Id*. at ¶ 10. For example, the 2024 Rule threatens to upend Northlake's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors Northlake relies on out of business, or into different lines of business other than Northlake's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. *Id*. at ¶ 11.

*Triple G. Express, Inc.*

Triple G. Express, Inc. ("Triple G") is a family-owned trucking company that has operated since 1985 and is an intermodal carrier serving the Port of New Orleans Markets. *See* Randy Guillot Declaration ("Guillot Decl."), ECF No. 14-5 at ¶ 3.

Triple G transports cargo throughout the Southeastern United States, including Louisiana, Texas, Mississippi, and Alabama, wherever their clients and customers need cargo delivered. *Id*. at ¶ 4. Triple G is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. *Id*. at ¶ 5. Triple G has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor. *Id*. at ¶ 6. Triple G has gross sales of more than $500,000 per year, frequently

24-30223.190

hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs. *Id.* at ¶ 7.

Triple G contracts with 100 independent drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel. *Id.* at ¶ 8. Triple G utilizes only independent owner-operators to make deliveries and employs no in-house drivers. *Id.* at ¶ 9. Triple G's use of independent owner-operators is beneficial to both Triple G's itself, which is able to operate more efficiently and reduce excess costs, and to Triple G's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. *Id.* at ¶ 10.

Triple G will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. *Id.* at ¶ 11. For example, the 2024 Rule threatens to upend Triple G's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors Triple G relies on out of business, or into different lines of business other than Triple G's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. *Id.* at ¶ 12.

## LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure governs a court's issuance of injunctive relief, including a temporary restraining order and preliminary injunction. The legal standard for issuance of a temporary restraining order and for a

24-30223.191

preliminary injunction are the same. *See Gregory v. Miller*, Civil Action No. 04-3017, 2007 U.S. Dist. LEXIS 19974, *2 (E.D. La. Mar. 21, 2007) (Engelhardt, J.). Rule 65 is designed to protect the status quo of the parties pending trial. *See Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (holding that "where a district court has determined that a meaningful decision on the merits would be impossible without an injunction, the district court may maintain the status quo and issue a preliminary injunction").

To obtain a preliminary injunction, the moving party must satisfy four factors: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). "The government's and the public's interests merge when the government is a party." *Mock v. Garland*, 75 F.4th 563, 577 (5th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

## ARGUMENT

### I. This Court should issue a Preliminary Injunction and set aside the 2024 Rule.

This Court should grant Plaintiffs' Motion and issue a Preliminary Injunction and set aside the 2024 Rule.

A Preliminary Injunction is warranted here because Plaintiffs are likely to succeed on the merits of their Administrative Procedure Act claims; they will suffer irreparable harm by incurring substantial financial injury with no guarantee of

24-30223.192

eventual recovery as a result of the 2024 Rule; and the balance of equities favors issuing a Preliminary Injunction.

### A. Plaintiffs are likely to succeed on the merits of their claims because DOL promulgated the 2024 Rule in violation of the Administrative Procedure Act.

Under the first factor, Plaintiffs are likely to succeed on the merits of their claims because DOL promulgated the 2024 Rule in violation of the Administrative Procedure Act.

In accordance with the Administrative Procedure Act ("APA"), a person wronged by federal agency action "is entitled to judicial review thereof." 5 U.S.C. § 702. The APA further allows judicial review for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. When faced with an APA claim, an "agency must defend its actions based on the reasons it gave when it acted," and may not engage in post hoc rationalizations. *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020).

Specifically, where, as here, "an agency rescinds a prior policy[,] its reasoned analysis must consider the alternatives that are within the ambit of the existing policy." *Id.* at 1913 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)). When changing course, an agency must account for "serious reliance interests" its "longstanding policies may have engendered." *Regents,* 140 S. Ct. at 1913. Indeed, such a policy change is colloquially known as the "surprise switcheroo" doctrine. *R.J. Reynolds Vapor Co. v. FDA,* 65 F.4th 182, 189, n. 6 (5th Cir. 2023) (citing *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1810 (2019); *Env't Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005)). And failure to

24-30223.193

consider "relevant factors" will render "an agency's decreed result" unlawful. *Michigan v. EPA*, 576 U.S. 743, 750 (2015). These requirements ensure that an agency has engaged in "reasoned decisionmaking." *Id.*

To be sure, agencies are "free to change their existing policies," as long as "they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (citing *Nat'l. Cable & Telecomms. Ass'n. v. Brand X Internet Servs.*, 545 U.S. 967, 981-82 (2005)); *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). But the agency must "show that there are good reasons for the new policy." *Encino Motorcars, LLC*, 579 U.S. at 222 (citing *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)).

Here, it is undisputed that the DOL's new 2024 Rule constitutes final agency action. *See generally* 89 FR 1638. It is further undisputed that the 2024 Rule rescinds and replaces the 2021 Rule. *Id.* at 1639. Moreover, it is undisputed that the 2021 Rule has been in effect for three years and remains in effect until March 11, 2024, absent a TRO from this Court. Indeed, a district court within the Fifth Circuit previously rejected DOL's first attempt to rescind the 2021 Rule and held that it "became effective as of March 8, 2021, the rule's original effective date, and remains in effect." *See Coal. for Workforce Innovation*, 2022 U.S. Dist. LEXIS at *49.

And like the DOL's first botched attempt to rescind the 2021 Rule, its latest misguided scheme to rescind it by promulgating the 2024 Rule must also fail. As further discussed below, the Defendants violated the APA in promulgating the 2024 Rule, and it is arbitrary and capricious and in excess of DOL's statutory authority.

17

**1. The 2024 Rule is arbitrary and capricious.**

As alleged in Count I of Plaintiffs' First Amended Complaint, DOL's 2024 Rule is arbitrary and capricious and violates the APA. *See* Am. Compl., ECF No. 9.

The APA forbids an agency from acting in an arbitrary and capricious manner in promulgating rules. *See* 5 U.S.C. § 706(2)(A). If an agency action is arbitrary and capricious, the court must hold that action to be unlawful and set it aside. *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021) (quoting 5 U.S.C. § 706(2)(A)). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project, U.S.*, 141 S. Ct. 1150 (2021).

Agency action is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 43 (cleaned up). A court must "ensure that the agency 'examined the relevant data and articulated a satisfactory explanation for its action.'" *Sierra Club v. U.S. Envtl. Prot. Agency*, 939 F.3d 649, 664 (5th Cir. 2019) (quoting *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 723 (5th Cir. 2013)).

It is fatal to an agency's new policy when it fails to contemplate alternatives within the ambit of the existing policy because an agency thus fails to "consider important aspects of the problem before [it]," and this "omission alone causes agency

action to be arbitrary and capricious." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43.  Moreover, while considering alternatives, an agency is further required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Regents*, 140 S. Ct. at 1915. DOL entirely failed to meet these standards.

First, DOL failed to consider alternatives within the ambit of the existing 2021 Rule, such as monitoring its effects upon regulated stakeholders like Plaintiffs, from the time it took effect three years ago. Second, DOL failed to adequately consider employers' reliance interests on the 2021 Rule—like Plaintiffs' reliance on it since March 8, 2021, when classifying their independent contracting labor.

> **a. DOL failed to consider alternatives within the ambit of the existing 2021 Rule, like monitoring its effects, claiming it is not "obligated to wait for more time to gather data before rescinding" it.**

In promulgating the 2024 Rule, DOL failed to consider alternatives within the ambit of the existing 2021 Rule, like monitoring its effects, claiming in a haphazard and dismissive fashion that it is not "obligated to wait for more time to gather data before rescinding" it.

Again, when "an agency rescinds a prior policy[,] its reasoned analysis must consider the alternatives that are within the ambit of the existing policy." *Regents*, 140 S. Ct. at 1913. But DOL stated in the 2024 Rule that it is not "obligated to wait for more time to gather data before rescinding the 2021 IC Rule and promulgating a new rule." 89 FR at 1660. In other words, according to the DOL's rudimentary and unsophisticated analysis devoid of reasoning, it apparently does not have to review

19

*any data* when it promulgates a new rule such as the 2024 Rule and rescinds an old rule like the 2021 Rule. And the 2021 Rule has been in effect for *three years* so it is not like DOL had to "wait" to gather such data. The data is available. Instead, the DOL believes it can simply take a sledgehammer to the 2021 Rule and start over from scratch. Even though courts must "ensure that the agency '*examined the relevant data* and articulated a satisfactory explanation for its action.'" *Sierra Club*, 939 F.3d at 664 (emphasis added).

Why would any reasonable federal agency not review data from the effects of a rule—like the 2021 Rule—that had been in effect for three years? It is inexplicable. And no reasonable agency would make such a glaring omission when rescinding a rule as important and significant as one establishing how businesses must classify workers. DOL promulgated the 2021 Rule "to promote certainty for stakeholders, reduce litigation, and encourage innovation in the economy." 86 FR at 1168. Consider the data DOL could have reasonably monitored with minimal effort to determine if the 2021 Rule achieved its purpose: questionnaires sent to stakeholders to conduct a survey on whether the 2021 Rule promoted certainty as it claimed; an analysis of court filings and relevant litigation both before and after promulgation of the 2021 Rule to determine if it reduced litigation; and an assessment on the number of workers being classified as employees versus independent contractors and the relevant impact on the economy and innovation.

But DOL—without gathering and reviewing any relevant data—decided to reverse course and eliminate certainty for stakeholders like the Plaintiffs, and said,

the "[2024 Rule] (and particularly rescission of the 2021 IC Rule) is needed in part because of the concern that the 2021 IC Rule's new analysis and concepts did not provide the intended clarity." 89 FR at 1654. But how plausible is the "concern" when an agency buries its head in the sand and refuses to examine relevant data?

Instead, the 2024 Rule actually reveals DOL's failure to review data on the effects of the 2021 Rule before rescinding it, which means the DOL failed to "consider important aspects of the problem before [it]," and this "omission alone causes agency action to be arbitrary and capricious." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43. Moreover, DOL's explanation for its decision that it was not obligated to monitor data on the effects of the 2021 Rule before rescinding it "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See id*. Additionally, its failure to consider "relevant factors" like data on the 2021 Rule before rescinding it renders the 2024 Rule unlawful because DOL did not engage in "reasoned decisionmaking." *See Michigan*, 576 U.S. at 750.

And while DOL claimed to have "considered four alternatives to what it proposed" (89 FR at 1660), a closer look reveals that it did not consider an alternative "within the existing ambit" of the 2021 Rule. *See Regents*, 140 S. Ct. at 1913. The DOL noted that it had previously considered and rejected two of those alternatives—issuing guidance adopting either the common law test or the ABC test[2] for

---

[2] The ABC test is weighted in favor of classifying a worker as an employee, not an independent contractor. Under the ABC test, a worker is considered an employee and not an independent contractor, unless the hiring entity satisfies three conditions. *See* https://www.labor.ca.gov/employmentstatus/abctest/.

21

determining FLSA employee or independent contractor status—in the 2021 IC Rule. 89 FR at 1660. But those are not alternatives within the existing ambit of the 2021 Rule because the common law test and ABC test were not part of the 2021 Rule. *See* 86 FR 1168. Instead, the 2021 Rule adopted the Fifth Circuit's *Castillo* opinion, under which two factors in particular predominate: (1) the nature and degree of the worker's control over work; and (2) the worker's opportunity for profit or loss. *See generally Castillo*, 704 F.2d 181. Thus, the first two "alternatives" that DOL claimed it considered were not within the existing ambit of the 2021 Rule itself.

DOL's third "alternative" was "to only partially rescind the 2021 IC Rule." 89 FR at 1661. This is also not an alternative within the existing ambit of the 2021 Rule, given that DOL conceded it did not actually monitor any data on the effects of the 2021 Rule. And DOL's fourth proposed "alternative"—rescinding the 2021 Rule entirely to provide "guidance"—is nonsensical and clearly not an alternative within the existing ambit of the 2021 Rule. 89 FR at 1661.

### b. DOL failed to consider employers' reliance interests on 2021 Rule.

DOL failed to consider employers' reliance interests on 2021 Rule. And the Declarations show that Plaintiffs have relied on the 2021 Rule since its effective date of March 8, 2021, when classifying their independent contracting trucking labor.

Although DOL acknowledged that it is "mindful of the impact that changes in the Department's guidance may end up having on the regulated community" by rescinding the 2021 Rule, it then summarily dismissed that impact and said that stakeholder reliance interest on the 2021 Rule is "unpersuasive." 89 FR at 1660.

24-30223.199

But an agency is required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns, which DOL failed to do. *See Regents*, 140 S. Ct. at 1915.

Even assuming arguendo that DOL assessed employer reliance interests from this statement above, the 2024 Rule reflects that it failed to determine whether employer reliance interests were significant. And it did not weigh employer reliance interests against competing policy concerns in the 2024 Rule. This is not "reasoned decisionmaking." *See Michigan*, 576 U.S. at 750. And concluding employer reliance interest on the 2021 Rule is "unpersuasive" without reviewing any relevant data "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43.

### 2. The 2024 Rule is in excess of DOL's statutory authority.

As alleged in Count II of Plaintiff's First Amended Complaint, DOL's 2024 Rule is in excess of its statutory authority. *See* Am. Compl., ECF No. 9.

Any regulation that is promulgated must withstand APA review to ensure it is not arbitrary, capricious, contrary to law, or in excess of statutory authority. *See* 5 U.S.C. § 706(2)(A). The Supreme Court has warned that, when an agency significantly departs from precedent in excess of its authority when interpreting a particular statute, "its interpretation [is] unreasonable." *NLRB v. Town & Country Elec., Inc.*, 516 U.S. 85, 94 (1995). Moreover, since it has taken DOL over eighty years since the FLSA's enactment to "discover" its novel six-factor "totality of the circumstances" patchwork that is the 2024 Rule, further highlights the Rule's unreasonableness. *See Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2444 (2014).

23

### B. Plaintiffs would be irreparably harmed absent a Preliminary Injunction.

Under the second factor, Plaintiffs would be irreparably harmed absent a Preliminary Injunction. They will incur substantial financial injury with no guarantee of eventual recovery, and Defendants' sovereign immunity bars recovering costs.

"[S]ubstantial financial injury" may be "sufficient to show irreparable injury," especially when there is "no guarantee of eventual recovery." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016); *Alabama Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489, 210 L. Ed. 2d 856 (2021). Further, "complying with a regulation later held invalid almost always produces irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d at 433. Moreover, Defendants' sovereign immunity bars Plaintiffs' ability to recover costs. *See Wages & White Lion Invs. v. United States Food and Drug Admin.*, 16 F.4th 1130, 1142 (5th Cir. 2021).

### C. The balance of equities favors issuing a Preliminary Injunction.

Under the merged third and fourth factors because the government is the defendant, the balance of equities favors issuing a Preliminary Injunction since DOL violated the APA when it promulgated the 2024 Rule.

It is of the highest public importance that federal agencies follow the law. *See Texas v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (per curiam). "[O]ur system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Alabama Ass'n of Realtors*, 141 S. Ct. at 2490.

## II. The Court may also grant similar equitable relief pursuant to 5 U.S.C. § 706(2)(A).

This Court may also set aside the 2024 Rule based on its inherent equitable powers pursuant to 5 U.S.C. § 706(2)(A), which states a court may "set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

## CONCLUSION

Plaintiffs respectfully request that the Court issue a Preliminary Injunction and **SET ASIDE** the 2024 Rule.

Dated: March 7, 2024          Respectfully submitted,

/s/ James Baehr
James Baehr (LSBA 35431)
Sarah Harbison (LSBA 31948)
PELICAN CENTER FOR JUSTICE
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone: (504) 475-8407
james@pelicaninstitute.org
sarah@pelicaninstitute.org

M.E. Buck Dougherty III* TN BPR #022474
*Trial Attorney* designation LR 11.2
Reilly Stephens*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
Telephone: (312) 637-2280
bdougherty@libertyjusticecenter.org
rstephens@libertyjusticecenter.org
* Pro hac vice admission to be sought by
  visiting attorneys pursuant to LR 83.2.5

*Attorneys for Plaintiffs*

24-30223.202

**TAB 6:**
**PLAINTIFFS' DECLARATIONS**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FRISARD'S TRANSPORTATION, L.L.C.; LOUISIANA MOTOR TRANSPORT ASSOCIATION, INCORPORATED; A & B GROUP, INC.; NORTHLAKE MOVING AND STORAGE, INC.; TRIPLE G. EXPRESS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF LABOR; JULIE SU, *in her official capacity as Acting Secretary of Labor*; JESSICA LOOMAN, *in her official capacity as Administrator of the Wage and Hour Division*; UNITED STATES DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION, <br><br> Defendants. | **Case No. 2:24-cv-00347** <br><br> Section L <br><br> District Judge Fallon <br><br> Magistrate Judge North |

## DECLARATION OF CULLY FRISARD ON BEHALF OF FRISARD'S TRANSPORTATION, L.L.C. IN SUPPORT OF PLAINTIFFS' MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to 28 U.S.C. § 1746, I, Cully Frisard, declare:

1. I am a United States citizen over the age of 18 years. If called upon to testify in this matter, I would do so as follows:

2. I am the CEO of Frisard's Transportation, L.L.C. ("Frisard's") and submit my Declaration on behalf of Frisard's in support of Plaintiffs' motions for temporary restraining order and preliminary injunction.

3. Since 2014, Frisard's has been a family-owned trucking company specializing in transporting finished goods to stock the shelves of supermarkets and other retail

24-30223.126

stores, among other cargo, that relies on independent contracting labor as a core necessity of its business.

4.  Frisard's is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule. Frisard's has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor.

5.  Frisard's has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill Frisard's clients' needs.

6.  Specifically, Frisard's transports cargo throughout the southern and eastern United States, from Texas and Nebraska to Maryland and Florida, wherever its customers need cargo delivered.

7.  Frisard's contracts with more than thirty owner-operated independent drivers who own their own trucks, decide which loads to carry or not, and who are paid a flat percentage of shipping fee for a given load, plus reimbursable expenses such as fuel which are passed on to the client.

8.  Frisard's utilizes only independent owner operators to make deliveries, and employs no in-house drivers. By contrast, a related but separate company, Frisard's Trucking Co., employes a staff of in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned.

9.  Frisard's use of independent owner-operators is beneficial to both Frisard's itself, which is able to operate more efficiently and reduce excess costs, and to

Frisard's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work.

10. Frisard's will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule.

11. For example, the 2024 Rule threatens to upend Frisard's business operations, increasing costs, depriving truckers of the opportunity to operate independently within their own business, and potentially driving many of the independent contractors Frisard's relies on out of business, or into different lines of business other than Frisard's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on March 5, 2024

Gramercy_____, Louisiana

Cully Frisard

24-30223.128

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FRISARD'S TRANSPORTATION, L.L.C.; LOUISIANA MOTOR TRANSPORT ASSOCIATION, INCORPORATED; A & B GROUP, INC.; NORTHLAKE MOVING AND STORAGE, INC.; TRIPLE G. EXPRESS, INC., | **Case No. 2:24-cv-00347** |
| Plaintiffs, | Section L |
| v. | District Judge Fallon |
| UNITED STATES DEPARTMENT OF LABOR; JULIE SU, *in her official capacity as Acting Secretary of Labor*; JESSICA LOOMAN, *in her official capacity as Administrator of the Wage and Hour Division*; UNITED STATES DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION, | Magistrate Judge North |
| Defendants. | |

## DECLARATION OF RENEE AMAR ON BEHALF OF LOUISIANA MOTOR TRANSPORT ASSOCIATION, INCORPORATED IN SUPPORT OF PLAINTIFFS' MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to 28 U.S.C. § 1746, I, Renee Amar, declare:

1. I am a United States citizen over the age of 18 years. If called upon to testify in this matter, I would do so as follows:

2. I am employed by Louisiana Motor Transport Association, Incorporated ("LMTA") and submit my Declaration on behalf of LMTA in support of Plaintiffs' motions for temporary restraining order and preliminary injunction.

3.  LMTA is a non-profit corporation founded in 1939, and it represents 388 Louisiana trucking and related industry companies.

4.  LMTA's mission is to protect and promote Louisiana's trucking industry. Its members include every type of motor carrier in Louisiana, including related and exempt, intrastate and interstate, and for-hire and private.

5.  LMTA champions the trucking industry and advocates for its members on laws and regulations in Baton Rouge, La., and in Washington, D.C.

6.  LMTA's members are subject to the FLSA, the 2021 Rule, and the 2024 Rule, and they rely on independent contracting labor as a core necessity of their businesses.

7.  Moreover, LMTA's members have relied on the 2021 Rule since its effective date of March 8, 2021, when classifying their independent contracting labor.

8.  LMTA's members' use of independent owner-operators benefits both employer members, who are able to operate more efficiently and reduce excess costs, and to members' independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work.

9.  LMTA's members will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule.

10. For example, the 2024 Rule threatens to upend LMTA's employer members' business operations, increase costs, and deprive independent owner-operator truckers of the opportunity to work independently within their own business.

11. Moreover, the 2024 Rule could potentially drive many of the independent contractors LMTA's employer members rely on out of business, or into different lines of business other than LMTA's members' businesses, depriving them of needed manpower to deliver cargo wherever their clients need it delivered.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on March 5, 2024

_Baton Rouge_, Louisiana

_CRAmar_

Renee Amar

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FRISARD'S TRANSPORTATION, L.L.C.; LOUISIANA MOTOR TRANSPORT ASSOCIATION, INCORPORATED; A & B GROUP, INC.; NORTHLAKE MOVING AND STORAGE, INC.; TRIPLE G. EXPRESS, INC., | **Case No. 2:24-cv-00347** |
| Plaintiffs, | Section L |
| v. | District Judge Fallon |
| UNITED STATES DEPARTMENT OF LABOR; JULIE SU, *in her official capacity as Acting Secretary of Labor*; JESSICA LOOMAN, *in her official capacity as Administrator of the Wage and Hour Division*; UNITED STATES DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION, | Magistrate Judge North |
| Defendants. | |

## DECLARATION OF BURTON BATY ON BEHALF OF A & B GROUP, INC. IN SUPPORT OF PLAINTIFFS' MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to 28 U.S.C. § 1746, I, Burton Baty, declare:

1. I am a United States citizen over the age of 18 years. If called upon to testify in this matter, I would do so as follows:

2. I am employed by A & B Group, Inc. ("A&B") and submit my Declaration on behalf of A&B in support of Plaintiffs' motions for temporary restraining order and preliminary injunction.

3. A&B is a trucking company in operation since 1995, specializing in delivering liquid and dry bulk long haul services and transporting cargo to all 50 U.S. states and Canada.

4. A&B is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business.

5. A&B has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor.

6. A&B has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs.

7. A&B contracts with drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel.

8. A&B also employs in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned.

9. A&B's use of independent owner-operators is beneficial to both A&B itself, which is able to operate more efficiently and reduce excess costs, and to A&B's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work.

10. A&B will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule.

11. For example, the 2024 Rule threatens to upend A&B's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors A&B relies on out of business, or into different lines of business other than A&B's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on March 5, 2024

_Sulphur_____, Louisiana

Burton Baty

24-30223.136

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| FRISARD'S TRANSPORTATION, L.L.C.; LOUISIANA MOTOR TRANSPORT ASSOCIATION, INCORPORATED; A & B GROUP, INC.; NORTHLAKE MOVING AND STORAGE, INC.; TRIPLE G. EXPRESS, INC., | Case No. 2:24-cv-00347 |
| Plaintiffs, | Section L |
| v. | District Judge Fallon |
| UNITED STATES DEPARTMENT OF LABOR; JULIE SU, *in her official capacity as Acting Secretary of Labor*; JESSICA LOOMAN, *in her official capacity as Administrator of the Wage and Hour Division*; UNITED STATES DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION, | Magistrate Judge North |
| Defendants. | |

<u>**DECLARATION OF LARRY TERRELL ON BEHALF OF**</u>
<u>**NORTHLAKE MOVING AND STORAGE, INC. IN SUPPORT OF PLAINTIFFS'**</u>
<u>**MOTIONS FOR TEMPORARY RESTRAINING**</u>
<u>**ORDER AND PRELIMINARY INJUNCTION**</u>

Pursuant to 28 U.S.C. § 1746, I, Larry Terrell, declare:

1. I am a United States citizen over the age of 18 years. If called upon to testify in this matter, I would do so as follows:

2. I am employed by Northlake Moving and Storage, Inc. ("Northlake") and submit my Declaration on behalf of Northlake in support of Plaintiffs' motions for temporary restraining order and preliminary injunction.

3. Northlake is a trucking company that has operated for over 40 years, specializing in transportation and storage of household goods, office furniture, and special products, and it transports cargo to 48 U.S states.

24-30223.138

4.  Northlake is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business.

5.  Northlake has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor.

6.  Northlake has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs.

7.  Northlake contracts with drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel.

8.  Northlake also employs in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned.

9.  Northlake's use of independent owner-operators is beneficial to both Northlake itself, which is able to operate more efficiently and reduce excess costs, and to Northlake's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work.

10.  Northlake will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule.

11.  For example, the 2024 Rule threatens to upend Northlake's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors Northlake relies on out of

24-30223.139

Scanned with CamScanner

business, or into different lines of business other than Northlake's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on March 5, 2024

_Covington_

_____, Louisiana

_Larry Terrell_
Larry Terrell

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FRISARD'S TRANSPORTATION, L.L.C.; LOUISIANA MOTOR TRANSPORT ASSOCIATION, INCORPORATED; A & B GROUP, INC.; NORTHLAKE MOVING AND STORAGE, INC.; TRIPLE G. EXPRESS, INC., | Case No. 2:24-cv-00347 |
| Plaintiffs, | Section L |
| v. | District Judge Fallon |
| | Magistrate Judge North |
| UNITED STATES DEPARTMENT OF LABOR; JULIE SU, *in her official capacity as Acting Secretary of Labor*; JESSICA LOOMAN, *in her official capacity as Administrator of the Wage and Hour Division*; UNITED STATES DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION, | |
| Defendants. | |

## DECLARATION OF RANDY GUILLOT ON BEHALF OF TRIPLE G. EXPRESS, INC. IN SUPPORT OF PLAINTIFFS' MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to 28 U.S.C. § 1746, I, Randy Guillot, declare:

1. I am a United States citizen over the age of 18 years. If called upon to testify in this matter, I would do so as follows:

2. I am employed by Triple G. Express, Inc. ("Triple G") and submit my Declaration on behalf of Triple G in support of Plaintiffs' motions for temporary restraining order and preliminary injunction.

3. Triple G is a family-owned trucking company that has operated since 1985, and is an intermodal carrier serving the Port of New Orleans Markets.

24-30223.142

4.  Triple G transports cargo throughout the Southeastern United States, including Louisiana, Texas, Mississippi, and Alabama, wherever their clients and customers need cargo delivered.

5.  Triple G is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business.

6.  Triple G has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor.

7.  Triple G has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs.

8.  Triple G contracts with 100 independent drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel.

9.  Triple G utilizes only independent owner-operators to make deliveries and employs no in-house drivers.

10.  Triple G's use of independent owner-operators is beneficial to both Triple G's itself, who is able to operate more efficiently and reduce excess costs, and to Triple G's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work.

11.  Triple G will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule.

12.  For example, the 2024 Rule threatens to upend Triple G's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors Triple G relies on out of business, or into different lines of business other than Triple G's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on March 5, 2024

_JEFFERSON_____, Louisiana

_Randy R. Guillot_
Randy Guillot

June 17, 2024                                    Respectfully submitted,


                                                 /s/ James S. Baehr
M.E. Buck Dougherty III*                         James S. Baehr
Reilly Stephens                                  Sarah Harbison
Liberty Justice Center                           Pelican Center for Justice
13341 W. U.S. Hwy. 290, Bldg. 2                  400 Poydras Street, # 900
Austin, Texas 78737                              New Orleans, LA 70130
Telephone (512) 481-4400                         Telephone (504) 475-8407
bdougherty@libertyjusticecenter.org              james@pelicaninstitute.org
rstephens@libertyjusticecenter.org               sarah@pelicaninstitue.org

*pending application to the Fifth Circuit

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Plaintiff-Appellant's Record Excerpts using the court's CM/ECF system which will automatically generate and send by email a Notice of Docket Activity to registered attorneys currently participating in this case, constituting service on those attorneys.

s/ *James Baehr*

Dated: June 17, 2024                    James Baehr

# CERTIFICATE OF COMPLIANCE

I hereby certify that these Record Excerpts comply with the requirements set forth in complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 30.

Dated: June 17, 2024

s/ *James Baehr*

James Baehr