No. 24-30223

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————————

FRISARD'S TRANSPORTATION, L.L.C.; LOUISIANA MOTOR
TRANSPORT ASSOCIATION, INCORPORATED; A & B GROUP,
INCORPORATED; TRIPLE G EXPRESS, INCORPORATED;
NORTHLAKE MOVING AND STORAGE, INCORPORATED.,

*Plaintiffs - Appellants,*

v.

UNITED STATES DEPARTMENT OF LABOR; JULIE A. SU, ACTING
SECRETARY, U.S. DEPARTMENT OF LABOR; JESSICA LOOMAN,
IN HER OFFICIAL CAPACITY AS ADMINISTRATOR OF THE WAGE
AND HOUR DIVISION; UNITED STATES DEPARTMENT OF
LABOR, WAGE AND HOUR DIVISION,

*Defendants - Appellees.*

———————————————————

On Appeal from the United States District Court
for the Eastern District of Louisiana

———————————————————

**BRIEF *AMICI CURIAE* OF AMERICANS FOR FAIR
TREATMENT, MANHATTAN INSTITUTE, AND INSTITUTE FOR
THE AMERICAN WORKER IN SUPPORT OF PLAINTIFFS-
APPELLANTS AND REVERSAL**

———————————————————

Ilya Shapiro
MANHATTAN INSTITUTE
52 Vanderbilt Ave.
New York, New York 10071
212.599.7000

David R. Dorey
*Counsel of Record*
LIFF, WALSH & SIMMONS
181 Harry S. Truman Parkway
Suite 200
Annapolis, Maryland 21401
410.266.9500

*Counsel for* Amici Curiae

## <u>DISCLOSURE STATEMENT</u>

Pursuant to <u>Federal Rule of Appellate Procedure 29(a)(4)(A)</u>, counsel for *amici* certifies that each (1) is not a corporation, (2) does not have a parent corporation, (3) and no publicly held company holds ten percent or more of the stock or ownership interest of it.

*Amici* Americans for Fair Treatment ("AFFT"), the Manhattan Institute ("MI"), and the Institute for the American Worker ("I4AW") are nonprofit corporations exempt from income tax under Section 501(c)(3) of the Internal Revenue Code, <u>26 U.S.C. § 501(c)(3)</u>.

## <u>SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES</u>

Pursuant to Fifth Circuit Rule 29.2, counsel for *amici* certifies that, in addition to the interested parties identified by Petitioners in their opening brief, the following listed persons and entities have an interest in the outcome of this case.  These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

### *Amici Curiae*

Americans for Fair Treatment

Manhattan Institute

Institute for the American Worker

### **Counsel for *Amici Curiae***

David R. Dorey

LIFF, WALSH & SIMMONS

Ilya Shapiro

MANHATTAN INSTITUTE

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ...................................................................i

SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES ............ii

INTEREST AND IDENTITY OF *AMICI CURIAE* .................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................2

    I.    The Department Failed to Consider Serious Reliance by the Regulated Community on the 2021 Rule ....................................4

    Ii.    The Department Failed to Consider Options within the Ambit of the 2021 Rule ........................................................................9

CONCLUSION ....................................................................................16

# TABLE OF AUTHORITIES

## Cases

*Castillo v. Givens*, <u>704 F.2d 181</u> (5th Cir. 1983)......................................13

*Chamber of Com. v. SEC*, <u>412 F.3d 133</u> (D.C. Cir. 2005) .........................8

*Coal. for Workforce Innovation v. Walsh*, No. 1:21-CV-130, <u>2022 U.S.</u>
<u>Dist. LEXIS 68401</u> (E.D. Tex. Mar. 14, 2022) .2, 5, 6, 10, 11, 12, 13, 15

*DHS v. Regents of the Univ. of Cal.*, <u>591 U.S. 1</u> (2020) ............ 4, 9, 11, 13

*Encino Motorcars, LLC v. Navarro*, <u>579 U.S. 211</u> (2016).......................14

*Louisiana v. DOE*, <u>90 F.4th 461</u> (5th Cir. 2024).....................4, 12, 13, 14

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
<u>463 U.S. 29</u> (1983) ...............................................................................9

*N.C. Growers' Ass'n v. UFW*, <u>702 F.3d 755</u> (4th Cir. 2012) .....................6

*Texas v. Biden*, <u>20 F.4th 928</u> (5th Cir. 2021) .................................3, 4, 14

*Wages & White Lion Invs. v. FDA*, <u>16 F.4th 1130</u> (5th Cir. 2021) .......8, 9

*Wages & White Lion Invs. v. FDA*, <u>90 F.4th 357</u> (5th Cir. 2024) .........7, 8

## Statutes

<u>29 U.S.C. § 216</u> ..........................................................................................5

## Regulations

<u>86 Fed. Reg. 1168</u> (Jan. 7, 2021) ...................................... 2, 10, 11, 14

<u>86 Fed. Reg. 14027</u> (Mar. 12, 2021) ............................................... 10

<u>89 Fed. Reg. 1638</u> (Jan. 10, 2024) ........ 2, 5, 6, 7, 8,  9, 10, 12, 13, 14, 15

## <u>INTEREST AND IDENTITY OF *AMICI CURIAE*</u>[1]

AFFT is a national nonprofit organization that offers a free membership program to American workers and helps them understand and exercise their rights in the workplace.

MI is a nonprofit public policy research foundation whose mission is to develop and disseminate new ideas that foster economic choice and individual responsibility.  To that end, it has historically sponsored scholarship supporting the rule of law and opposing government overreach.

I4AW is a nonprofit organization that educates policymakers and stakeholders on labor policy issues and advocates for free market principles.

*Amici* have an interest in opposing the regulatory overreach—and its real world consequences for the workforce—that happens when administrative agencies violate the Administrative Procedure Act ("APA"), as the Department of Labor ("the Department") did here.

---

[1] No counsel for any party has authored this brief in whole or in part, and no entity or person, aside from *amici curiae* and their counsel, made any monetary contribution intended to fund the preparation or submission of this brief.  All parties have consented to the filing of this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Appellants are likely to succeed on the merits of their claim that the Department's promulgation of the rule *Employee or Independent Contractor Classification Under the Fair Labor Standards Act* ("2024 Rule")[2] and contemporaneous rescission of the rule *Independent Contractor Status Under the Fair Labor Standards Act* ("2021 Rule")[3] were arbitrary and capricious in violation of the APA. The 2021 Rule sought to and did provide clarity and certainty to the regulated community about who is and isn't an employee; the 2024 Rule reverted to a nebulous non-exclusive test that removes that clarity, revives regulatory uncertainty, imposes hundreds of millions of dollars of unfunded costs, and subjects the regulated community to what is often arbitrary enforcement *ex post*.

Just like when it first tried to delay and then rescind the 2021 Rule around the last change of presidential administrations,[4] the Department

---

[2] 89 Fed. Reg. 1638 (Jan. 10, 2024) (codified at C.F.R. pts. 780, 788, 795).

[3] 86 Fed. Reg. 1168 (Jan. 7, 2021) (previously codified at C.F.R. pts. 780, 788, 795).

[4] A district court in this Circuit held that these actions were arbitrary and capricious in violation of the APA. *Coal. for Workforce Innovation v. Walsh*, No. 1:21-CV-130, 2022 U.S. Dist. LEXIS 68401, at *48–49 (E.D.

once again failed to adequately consider serious reliance interests and less disruptive alternatives than its binary choice to rescind in whole the 2021 Rule and replace it with the 2024 Rule. That's because the Department summarily disclaimed the regulated community's substantial reliance on the 2021 Rule and failed to consider options within the ambit of that Rule without providing a reasoned explanation.

## **ARGUMENT**

When a federal agency has a rule on the books and wants to change course, it is obligated to consider not just the "binary choice whether to retain or terminate" that rule. *Texas v. Biden*, 20 F.4th 928, 992 (5th Cir. 2021). Instead it must consider "legitimate reliance" on its current rule and "less disruptive alternatives" to rescinding it altogether—to include policy choices "within the ambit" of the existing rule. *Id.* at 989, 992. The Department violated these bedrock principles of administrative law when it doubled down on its prior failed attempt to rescind the 2021 Rule. In withdrawing the 2021 Rule entirely and replacing it with the 2024 Rule, the Department once again did not adequately consider the

---

Tex. Mar. 14, 2022) ("*CWI*"), *vacated as moot Coal. for Workforce Innovation v. Su*, No. 22-40316, ECF No. 82-2 (5th Cir. Feb. 19, 2024).

regulated community's legitimate reliance on the 2021 Rule—and the regulatory certainty it brought to the previously muddled but exceptionally important question of who is and is not an employee in this country—or less disruptive alternatives within the ambit of that rule. Failure to address reliance "alone is fatal." *Id.* at 989. So too is a "sole" and "alone" failure to consider alternatives in the ambit of existing policy. *Louisiana v. DOE*, 90 F.4th 461, 476 (5th Cir. 2024). Together, there should be little question.

Appellants are likely to succeed on the merits of their claim that the Department's actions in repealing the 2021 Rule and replacing it with the 2024 Rule were arbitrary and capricious in violation of the APA.

## I.    The Department Failed to Consider Serious Reliance by the Regulated Community on the 2021 Rule

In promulgating the 2024 Rule, the Department failed to consider whether the 2021 Rule had engendered serious reliance interests among the regulated community. "When an agency changes course . . . it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (quotation omitted); *id.* ("It would be arbitrary and capricious to ignore such matters.") (quotation omitted).

4

The 2024 Rule gave wholly short shrift to "arguments about stakeholder reliance"—the Department's entire analysis spanned two short paragraphs among 102 pages of single-spaced Federal Register text—by dismissing them as "unpersuasive." 89 Fed. Reg. at 1660. The Department's sole argument in support is that because it previously attempted to delay ("delay rule") and withdraw the 2021 Rule (both acts a district court held were arbitrary and capricious[5]), then announced in a blog post that it intended to undertake the rulemaking process that led to the 2024 Rule, that the regulated community was "on notice" that the Department had "concerns" about the 2021 Rule. *Id.* at 1660 and n.172.

That's a non sequitur. "Notice" about the Department's "concerns" hardly means the regulated community did not rely on the 2021 Rule to make choices about who should and should not be classified as employees. On the contrary, the community had no choice but to do so or risk violating the FLSA and facing steep penalties. 29 U.S.C. § 216. Indeed, the Department has confirmed that it undertook enforcement actions under the 2021 Rule. 89 Fed. Reg. at 1638 n.3.

---

[5] *CWI*, at *49.

The Department well knows that serious reliance is an issue—and has even admitted it. In defending litigation over its decision to not provide the public with a 30-day comment period on its proposal to delay implementation of the 2021 Rule, the Department said the 2021 Rule had to be delayed before it took effect because otherwise "the regulated community may have unnecessarily expended resources to modify their operations in light of" that Rule. *Coal. for Workforce Innovation v. Walsh*, No. 1:21-CV-130, 2022 U.S. Dist. LEXIS 68401, at *22–23 (E.D. Tex. Mar. 14, 2022) ("*CWI*"); *see also* 89 Fed. Reg. at 1660 (quoting comment on the 2024 Rule: "*The regulatory whiplash here is real, and costly, and should not be taken so lightly by DOL.*") (emphasis added); 89 Fed. Reg. at 1733–34 (the Department's admission that "Year 1" "regulatory familiarization costs" of the 2024 Rule would be $407,982,744).

Thus the Department is well aware that its rules in the worker classification space engender *immediate* and significant reliance—so much so that the Department thought that reliance interest was harmful enough to give it good cause to dispense with an ordinary notice and comment period on the delay rule. *See N.C. Growers' Ass'n v. UFW*, 702 F.3d 755, 770 (4th Cir. 2012) (appropriate shortened comment periods

are "generally characterized by the presence of exigent circumstances in which agency action was required in a mere matter of days."). For the Department, the reliance is real when it's needed to defend its actions; but otherwise it's "unpersuasive" and capable of summary dismissal. Such dismissal is not the "detailed justification" required when a prior policy "has engendered serious reliance interests that must be taken into account." *Wages & White Lion Invs. v. FDA*, 90 F.4th 357, 381 (5th Cir. 2024) (en banc). "It would be arbitrary or capricious to ignore such matters." *Id.*

Compounding its error of dismissing serious reliance interests without "detailed justification," the Department received comments on the 2024 Rule that asked it to "wait for more time to gather data" so it could "monitor the effects" of the 2021 Rule before acting. 89 Fed. Reg. at 1660. The Department "disagree[d]" with these comments, speculating instead that "*potential* confusion and disruption" (not actual) of the 2021 Rule "outweighed any potential benefit" of even looking at what the data show. *Id.* (emphasis added). The Department said it could ignore the data because of its "extensive experience in interpreting and enforcing the FLSA . . . ." *Id.* And it quoted a case from the D.C. Circuit

for the proposition that it need not use "empirical data" but can just conduct a "general analysis based on *informed conjecture*." *Id.* at 1660 n.173 (emphasis added) (quoting *Chamber of Com. v. SEC*, 412 F.3d 133, 142 (D.C. Cir. 2005)).

Such "informed conjecture" in the context of a "surprise switcheroo" is exactly what a panel of this Court rejected in *Wages & White Lion*:

> An agency's "experience and expertise" presumably enable the agency to provide the required explanation, but they do not substitute for the explanation, any more than an expert witness's credentials substitute for the substantive requirements applicable to the expert's testimony under Federal Rule of Evidence 702. The requirement of explanation presumes the expertise and experience of the agency and still demands an adequate explanation in the particular matter.

16 F.4th 1130, 1137 (5th Cir. 2021); *see also Wages & White Lion Invs.*, 90 F.4th at 386 (administrative law "prohibits administrative agencies from saying one thing, pulling a surprise switcheroo, and ignoring the reasonable reliance interests engendered by its previous statements.")

This doesn't mean the Department could not have "determined, in the particular context before it, that other interests and policy concerns outweigh any reliance interests. Making that difficult decision was the

agency's job, but the agency failed to do it." *Regents*, 591 U.S. at 32. "But, because [the Department] was 'not writing on a blank slate,' it was required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Id.* at 33. The Department instead disregarded the regulated community's reliance interests, did no work to determine if they were significant (despite admitting that the 2024 Rule would cost $408 million in "familiarization costs" in its first year, 89 Fed. Reg. at 1733–34), and thus failed to weigh those interests against the policy it wanted to adopt. "This reinforces that the [2024 Rule] was likely arbitrary, capricious, or otherwise unlawful." *Wages & White Lion Invs.*, 16 F.4th at 1139.

## II. The Department Failed to Consider Options Within the Ambit of the 2021 Rule

In deciding what would become the 2024 Rule, the Department was obligated to consider options "within the ambit of the existing policy"— the 2021 Rule. *Regents*, 591 U.S. at 30 ("*State Farm* teaches that when an agency rescinds a prior policy its reasoned analysis must consider the 'alternatives' that are 'within the ambit of the existing policy.'") (cleaned up) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,

463 U.S. 29, 51 (1983)).    In the preamble to the 2024 Rule, the Department discussed in one short paragraph that it "considered proposing to only partially rescind the 2021 IC Rule" and "retain some aspects of it."  89 Fed. Reg. at 1661.  The sole option the Department actually considered was "simply removing the problematic 'core factors' analysis from the 2021 IC Rule and retaining the five factors described in that rule."  *Id.* (cleaned up).  The Department "rejected this approach" because it believed the 2021 Rule was "in tension with judicial precedent and longstanding Department guidance . . . ."  *Id.*  This does not suffice to meet the Department's burden for rescinding the 2021 Rule in whole.[6]

As to the latter (that rescinding the 2021 Rule in whole was "in tension" with "longstanding Department guidance"), that's a long way of saying that the 2021 Rule was different from the Department's prior

---

[6] The Department also said that it considered adopting an ABC Test or a common law test.  89 Fed. Reg. at 1660–61.  Neither of those tests are in the ambit of the 2021 Rule.  And the Department said it considered scrapping the 2021 Rule in favor of "subregulatory guidance."  89 Fed. Reg. 1661.  That's also not in the ambit of the 2021 Rule and is no different from rescinding it and replacing it with the 2024 Rule.  It's also what the Department arbitrarily and capriciously tried to do in 2021.  86 Fed. Reg. 14027, 14035 (Mar. 12, 2021) ("The Department is not proposing any regulatory guidance to replace the guidance that the [2021] Rule would have introduced . . . ."); *see CWI*, at *33.

guidance.   That's true.   The 2021 Rule was designed for that very reason—to streamline and provide clarity to the clear-as-mud economic realities test.   *See CWI*, at *39 ("Simply put, due to the courts' varied approaches to applying the economic realities test, there has been confusion among businesses and workers as to whether an employment relationship exists. The [2021] Rule was promulgated as a response to this uncertainty and sought to provide clarity to the economic realities test.").   But the Department's new *volte face* preference for what it did before—which lacked coherence and failed to provide a uniform rule for the country—is not a reason to jettison the 2021 Rule in whole nor is it within that Rule's ambit of demystifying independent contract status for the regulated community.   *See Regents*, <u>591 U.S. at 5</u> ("[D]eferred action was within the ambit of the existing policy; indeed, it was the *centerpiece of the policy*.   In failing to consider the option to retain deferred action, [DHS] failed to supply the requisite reasoned analysis.") (cleaned up, emphasis added).

The former reason (that the Rule is in "tension with judicial precedent") is mistaken and contradicts the 2021 Rule's findings.   *E.g.*, <u>86 Fed. Reg. at 1168</u> ("This economic realities test and its component

factors have not always been sufficiently explained or consistently articulated by the courts or of the Department . . . ."). The Department now believes the 2024 Rule's six-factor non-exclusive test is the only way and that the 2021 Rule is "Not Supported by Judicial Precedent." 89 Fed. Reg. at 1649. But that's not true. *See CWI*, at *34 ("Both the Independent Contractor and Withdrawal Rules confirmed that, presently, the economic realities test varies between courts."); *see also id.* ("Although courts consistently note that the factors for the economic realities test are non-exhaustive, some courts have differed in their application of the test. Specifically, depending on the jurisdiction, courts may apply a five-or six-factor economic realities test to determine whether a worker is an employee or independent contractor."); *id.* ("Simply put, due to the courts' varied approaches to applying the economic realities test, there has been confusion among businesses and workers as to whether an employment relationship exists."). And in any event it violates this Court's precedent: "[I]n rescinding a prior action, an agency cannot simply brand it illegal and move on." *Louisiana*, 90 F.4th at 475. "Even when an agency determines that its previous decision was illegal, it *still* must go on to

consider alternatives to simply revoking the prior action. *Id.* at 476 (emphasis in original).

Nor was there any perceived forcing event, such as an intervening circuit court decision, holding that the 2021 Rule was an impermissible interpretation of the FLSA and thus casting doubt on that Rule. *CWI*, at *44 ("Although the Withdrawal Rule concluded that the Independent Contractor Rule did not provide clarity to the economic realities test, nothing 'cast doubt' on the need for a more unified standard for independent-contractor analysis.") (quoting *Regents*, 591 U.S. at 29); *see also* 89 Fed. Reg. at 1660 (quoting comment on the 2024 Rule: "[CPIE] urges DOL to defer action until courts have had an opportunity to apply the 2021 IC Rule.").

In fact, the 2021 Rule's elevation of two factors as likely dispositive of a person's status if they point the same way is *most consistent* with this Court's own test. *See Castillo v. Givens*, 704 F.2d 181, 190 (5th Cir. 1983) ("The determinative question is whether the person is dependent upon finding employment in the business of others. Two factors have emerged as critically significant in answering this question: (1) how specialized the nature of the work is, and (2) whether the individual is in business

for himself.").[7]  The 2024 Rule doesn't even discuss *Castillo*.  89 Fed. Reg. at 1638–1743; *compare with Texas*, 20 F.4th at 991 ("[A] more detailed justification of that sort [that prior factual findings were "mistaken, misguided, or the like"] is not just a good idea; it is legally required for a decision predicated on contradicting prior agency findings.").  "It follows that an unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice."  *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (cleaned up); *see Louisiana*, 90 F.4th at 477 ("The Repeal Rule cannot stand solely on the 2022 DOE's view that the 2020 Rules were 'invalid.'").

What options within the ambit of the 2021 Rule could and should the Department have considered?  A district court provided a roadmap for the Department when it held that its prior efforts to junk the 2021 Rule violated the APA.  The court noted that there were a "multitude of alternative policies" the Department could have adopted while "still addressing the issues" it saw with the 2021 Rule—yet preserving the 2021 Rule's goal to fix "the lack of clarity of the economic realities test

---

[7] The 2021 Rule similarly identified as core factors "the nature and degree of control over the work" and "the individual's opportunity for profit and loss."  86 Fed Reg. at 1168 (numbering omitted).

and [address] the need for regulatory certainty." *CWI*, at \*45–46. Those could have included, among many other things: (1) "implementing a version of the [2021 Rule] that did not elevate any factors as core factors"; (2) adopting "a regulation that enumerated six factors instead of five, ranked the factors, or rephrased any of the factors' wording"; or (3) adopting "the seven factors that the Department previously set forth in [a fact sheet that predated the 2021 Rule] as the applicable economic realities test[8]." *Id*. The Department ignored the court's entreaty that regulatory change was fine so long as whatever newly emerged still gave clarity on the economic realities test and provided for regulatory certainty. The 2024 Rule does neither. And that was arbitrary and capricious. *CWI*, at \*48–49 ("Therefore, by not considering more limited courses of action or alternative approaches than the total withdrawal of the Independent Contractor Rule, the DOL did not take into account important aspects of the problem before it. That omission alone makes the [Rule] arbitrary and capricious.") (cleaned up).

---

[8] *See also* 89 Fed. Reg. at 1660 (quoting comment on the 2024 Rule: "'The most obvious alternative action 'within the ambit of the existing policy' is simply to allow the 2021 IC Rule to go into effect and study its results, *rather than assume unproven consequences*.") (emphasis added).

# **CONCLUSION**

For the foregoing reasons and those discussed by the Appellants, the 2024 Rule is arbitrary and capricious in violation of the APA. Appellants are likely to succeed on the merits so the decision below should be reversed.

June 24, 2024                                  Respectfully submitted,


                                               **/s/ David R. Dorey**
Ilya Shapiro                                   David R. Dorey
MANHATTAN INSTITUTE                              *Counsel of Record*
52 Vanderbilt Ave.                             LIFF, WALSH & SIMMONS
New York, New York 10017                       181 Harry S. Truman Parkway
212.599.7000                                   Suite 200
ishapiro@manhattan.institute                   Annapolis, Maryland 21401
                                               410.266.9500
                                               ddorey@liffwalsh.com

                 *Counsel for* Amici Curiae

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because it was prepared in 14-point Century Schoolbook, a proportionally spaced typeface, using Microsoft Word. Fed. R. App. P. 29(a), 32(a)(5), 32(a)(6), 32(g)(1). This brief complies with the type-volume limitation of Rule 29(a) because it contains 2,893 words, excluding the parts exempted by Rule 32(f). Fed. R. App. P. 29(a), 32(f).


**/s/ David R. Dorey**
David R. Dorey

## **CERTIFICATE OF SERVICE**

I certify that on June 26, 2024, a true and correct copy of the foregoing brief was served via CM/ECF on all counsel of record.

**/s/ David R. Dorey**
David R. Dorey