No. 24-30223

# United States Court of Appeals
# for the Fifth Circuit

――――――――――――――

FRISARD'S TRANSPORTATION, L.L.C.; LOUISIANA MOTOR TRANSPORT ASSOCIATION, INCORPORATED; A & B GROUP, INCORPORATED; TRIPLE G EXPRESS, INCORPORATED; and NORTHLAKE MOVING AND STORAGE, INCORPORATED,

*Plaintiffs-Appellants*,

v.

UNITED STATES DEPARTMENT OF LABOR; JULIE A. SU, ACTING SECRETARY, U.S. DEPARTMENT OF LABOR; JESSICA LOOMAN, IN HER OFFICIAL CAPACITY AS ADMINISTRATOR OF THE WAGE AND HOUR DIVISION; and UNITED STATES DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION,

*Defendants-Appellees*.

――――――――――――――

On Appeal from the United States District Court for the Eastern District of Louisiana | No. 2:24-cv-00347 | Hon. Eldon E. Fallon

## BRIEF FOR BUSINESS TRADE ASSOCIATIONS
## AS *AMICI CURIAE* IN SUPPORT OF APPELLANTS

MAURICE BASKIN
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, N.W.
Washington, D.C. 20006
(202) 772-2526
mbaskin@littler.com

*Counsel for Amici Curiae*

EUGENE SCALIA
  *Counsel of Record*
JASON J. MENDRO
ANDREW G.I. KILBERG
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
escalia@gibsondunn.com

*Counsel for Amicus Curiae*
*Financial Services Institute, Inc.*

*(Additional counsel listed on inside cover)*

Stephanie A. Maloney
Jordan L. Von Bokern
U.S. CHAMBER LITIGATION CENTER
1615 H Street, N.W.
Washington, D.C.  20062
(202) 463-5337
smaloney@uschamber.com

*Counsel for Amicus Curiae*
*Chamber of Commerce of the*
*United States of America*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

No. 24-30223

FRISARD'S TRANSPORTATION, L.L.C.; LOUISIANA MOTOR TRANSPORT
ASSOCIATION, INCORPORATED; A & B GROUP, INCORPORATED; TRIPLE G
EXPRESS, INCORPORATED; and NORTHLAKE MOVING AND STORAGE, INCORPORATED,

*Plaintiffs-Appellants*,

v.

UNITED STATES DEPARTMENT OF LABOR; JULIE A. SU, ACTING SECRETARY,
U.S. DEPARTMENT OF LABOR; JESSICA LOOMAN, IN HER OFFICIAL CAPACITY
AS ADMINISTRATOR OF THE WAGE AND HOUR DIVISION; and UNITED STATES
DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION,

*Defendants-Appellees*.

———————————————

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

Further, pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record certifies that there are no corporations that are parents of *amici curiae* or that own stock in *amici curiae*.

i

1.  **Frisard's Transportation, L.L.C.; Louisiana Motor Transport Association, Incorporated; A & B Group, Incorporated; Triple G Express, Incorporated; and Northlake Moving and Storage, Incorporated,** Plaintiffs-Appellants, represented by:

> James Stuart Baehr
> Sarah Harbison
> PELICAN INSTITUTE FOR PUBLIC POLICY
>
> M.E. Buck Dougherty III
> Reilly Stephens
> LIBERTY JUSTICE CENTER

2.  **United States Department of Labor; Julie A. Su, Acting Secretary, U.S. Department of Labor; Jessica Looman, in her official capacity as Administrator of the Wage and Hour Division; and United States Department of Labor, Wage and Hour Division,** Defendants-Appellees, represented by:

> Joseph Forrest Busa
> Alisa Beth Klein
> Lisa A. Olson
> Michael S. Raab
> U.S. DEPARTMENT OF JUSTICE

3.  **Chamber Of Commerce of the United States of America; Coalition for Workforce Innovation; Associated Builders and**

**Contractors of Southeast Texas, Inc.; Associated Builders and Contractors, Inc.; Financial Services Institute, Inc.; National Federation of Independent Business, Inc.; National Retail Federation; and American Trucking Associations,**

*Amici Curiae*, represented by:

> Maurice Baskin
> LITTLER MENDELSON, P.C.
> *Counsel for Amici Curiae*
>
> Eugene Scalia
> Jason J. Mendro
> Andrew G.I. Kilberg
> GIBSON, DUNN & CRUTCHER LLP
> *Counsel for Amicus Curiae Financial Services Institute, Inc.*
>
> Stephanie A. Maloney
> Jordan L. Von Bokern
> U.S. CHAMBER LITIGATION CENTER
> *Counsel for Amicus Curiae Chamber of Commerce of the United States of America*

Each of *amici curiae* the Chamber of Commerce of the United States of America; Coalition for Workforce Innovation; Associated Builders and Contractors of Southeast Texas, Inc.; Associated Builders and Contractors, Inc.; Financial Services Institute, Inc.; National Federation of Independent Business, Inc.; National Retail Federation; and American Trucking Associations, is a nonprofit, tax-exempt organization with no parent

iii

corporation.  No publicly held company has 10% or greater ownership in any of these organizations.

Dated:  June 24, 2024                    Respectfully Submitted,

                                         */s/ Eugene Scalia*
                                         EUGENE SCALIA
                                            *Counsel of Record for Amici Curiae*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT...............................................................i

TABLE OF AUTHORITIES .......................................................... vi

INTEREST OF *AMICI CURIAE* ............................................... 1

SUMMARY OF THE ARGUMENT ............................................. 6

ARGUMENT .............................................................................. 10

I.    DOL's Rescission of the 2021 Rule Is Arbitrary, Capricious,
      and Otherwise Contrary to Law. ...................................... 10

      A.    Rescission of the 2021 Rule Will Produce Confusion
            and Uncertainty. ..................................................... 10

      B.    Rescission of the 2021 Rule Was Based on a
            Misinterpretation of Caselaw. ................................. 12

II.   The 2024 Rule's New Test Misinterprets and Misapplies the
      FLSA. ............................................................................... 16

III.  The 2024 Rule's Inadequate Cost-Benefit Analysis Is
      Arbitrary and Capricious and Violates the APA. ............ 25

      A.    DOL Failed to Consider Significant Costs of the 2024
            Rule. ........................................................................ 25

      B.    DOL Unreasonably Exaggerated the 2024 Rule's
            Benefits. ................................................................... 31

CONCLUSION ......................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aeronautical Repair Station Ass'n, Inc. v. FAA,*
    494 F.3d 161 (D.C. Cir. 2007) ............................................................. 30

*Bartels v. Birmingham,*
    332 U.S. 126 (1947) ........................................................................ 18

*Bus. Roundtable v. SEC,*
    647 F.3d 1144 (D.C. Cir. 2011) ......................................................... 29

*Calumet Shreveport Refin., LLC v. EPA,*
    86 F.4th 1121 (5th Cir. 2023) ............................................................ 16

*Carlson v. Postal Regul. Comm'n,*
    938 F.3d 337 (D.C. Cir. 2019) ........................................................... 30

*Chamber of Com. v. DOL,*
    885 F.3d 360 (5th Cir. 2018) .............................................................. 15

*Christopher v. SmithKline Beecham Corp.,*
    567 U.S. 142 (2012) ........................................................................ 12

*CWI v. Walsh,*
    No. 1:21-cv-130, 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022) ........ 4, 8

*DHS v. Regents,*
    591 U.S. 1 (2020) ...................................................................... 12, 14

*Dist. Hosp. Partners, L.P. v. Burwell,*
    786 F.3d 46 (D.C. Cir. 2015) ............................................................. 32

*Encino Motorcars, LLC v. Navarro (Encino II),*
    584 U.S. 79 (2018) .............................................................. 15, 16, 17

*In re FCC 11-161,*
    753 F.3d 1015 (10th Cir. 2014) .......................................................... 10

# TABLE OF AUTHORITIES

*(continued)*                                                      **Page(s)**

*Goldberg v. Whitaker House Co-op, Inc.*,
　366 U.S. 28 (1961) .................................................................. 17

*Hernandez v. Plastipak Packaging, Inc.*,
　15 F.4th 1321 (11th Cir. 2021) ........................................... 16

*Kisor v. Wilkie*,
　139 S. Ct. 2400 (2019) ............................................................ 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
　572 U.S. 118 (2014) .............................................................. 11

*McFeeley v. Jackson St. Ent., LLC*,
　825 F.3d 235 (4th Cir. 2016) ......................................... 26, 27

*Mexican Gulf Fishing Co. v. Dep't of Com.*,
　60 F. 4th 956 (5th Cir. 2023) ............................................. 25

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
　463 U.S. 29 (1983) ........................................................... 14, 28

*Nat'l Fuel Gas Supply Corp. v. FERC*,
　468 F.3d 831 (D.C. Cir. 2006) ........................................ 10, 16

*New Prime Inc. v. Oliveira*,
　586 U.S. 105 (2019) .............................................................. 23

*Parrish v. Premier Directional Drilling, L.P.*,
　917 F.3d 369 (5th Cir. 2019) .............................................. 21

*Razak v. Uber Techs., Inc.*,
　951 F.3d 137 (3d Cir. 2020) ............................................... 15

*Rutherford Food Corp. v. McComb*,
　331 U.S. 722 (1947) ........................................................... 19, 20

*Sec'y of Labor v. Lauritzen*,
　835 F.2d 1529 (7th Cir. 1987) ............................................ 20

# TABLE OF AUTHORITIES
*(continued)*                                    **Page(s)**

*United States v. Silk*,
331 U.S. 704 (1947) .................................................. 12, 13, 18, 22, 23, 25

*Walling v. Portland Terminal Co.*,
330 U.S. 148 (1947) ........................................................................ 27

**Statutes**

5 U.S.C. § 604 ................................................................................ 30

5 U.S.C. § 604(a)(3) ........................................................................ 30

5 U.S.C. § 611(a)(1) ........................................................................ 30

5 U.S.C. § 706(2)(A) ........................................................................ 16

29 U.S.C. § 211(c) ........................................................................... 29

**Regulations**

29 C.F.R. § 795.105(c) ..................................................................... 11

29 C.F.R. § 795.105(d)(1)(i) ............................................................ 23

29 C.F.R. § 795.105(d)(2)(iii) .......................................................... 20

29 C.F.R. § 795.110(b)(2) ................................................................ 24

29 C.F.R. § 795.110(b)(3) ................................................................ 24

29 C.F.R. § 795.110(b)(4) ........................................................... 21, 23, 24

29 C.F.R. § 795.110(b)(5) ................................................................ 19

29 C.F.R. § 795.110(b)(6) ................................................................ 24

29 C.F.R. § 825.500(c) ..................................................................... 29

86 Fed. Reg. 1168 (Jan 7, 2021) .................................... 6, 7, 11, 12, 13, 14,
                                                    17, 18, 20, 21, 23, 25

# TABLE OF AUTHORITIES
*(continued)*                                                     <u>**Page(s)**</u>

89 Fed. Reg. 1638 (Jan. 10, 2024) ........................ 8, 10, 11, 12, 13, 15, 16,
17, 18, 19, 20, 21, 23, 24,
25, 26, 27, 28, 29, 30, 31

## INTEREST OF *AMICI CURIAE*[1]

*Amici* are trade organizations that represent and advocate for a diverse array of interests across a range of industries in the American economy, including independent workers who prize the flexibility and freedom of non-traditional work arrangements.

**The Chamber of Commerce of the United States of America** is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the Nation's business community.

---

[1] No counsel for a party authored this brief in whole or in part, and no counsel or party contributed money intended to fund its preparation or submission. No person other than *amici*, their members, or their counsel contributed money intended to fund the preparation or submission of this brief. All parties consented to the filing of this brief.

**The Coalition for Workforce Innovation (CWI)** brings together diverse stakeholders representing worker advocates, small business start-ups, entrepreneurs, technology companies, and traditional businesses. CWI supports efforts to modernize federal work policy, including by adopting a clear, modern definitions of independent contractor status to ensure that opportunities for independent workers are not restricted.

**Associated Builders and Contractors, Inc. (ABC)** is a national construction industry trade association representing more than 23,000 members. Founded on the merit shop philosophy, ABC and its 67 Chapters help members develop people, win work, and deliver that work safely, ethically, and profitably for the betterment of the communities in which ABC and its members work. ABC's members include all specialties within the construction industry. Independent contractors are essential to many aspects of the construction industry.

**Associated Builders and Contractors of Southeast Texas, Inc.** is a trade association of 157 construction contractors and related firms operating in Southeast Texas and around the country. It is a separately incorporated affiliate of the national construction industry

2

trade association ABC.  Independent contractors are essential to many aspects of the construction industry.

**Financial Services Institute, Inc. (FSI)** is a trade association that represents independent financial advisors and independent financial services firms, which have been an important and active part of the lives of American investors for more than 40 years.  FSI's member independent financial services firms provide business support to independent financial advisors in addition to supervising their business practice.  Due to the unique business models, FSI member firms and their affiliated financial advisors depend on the flexibility of independent contractor classification.

**National Federation of Independent Business, Inc. (NFIB)** is a nonprofit association representing small and independent businesses. NFIB protects and advances the ability of Americans to own, operate, and grow their businesses and ensures that the government hears the voice of small business as they formulate public policies.  Small businesses seek the services of an efficient mix of employees and independent contractors to help grow their business, create jobs, control costs, and furnish goods and services at competitive prices.

3

**National Retail Federation (NRF)** is the world's largest retail trade association, and passionately advocates for retail to thrive. For over a century, NRF has been a voice for every retailer and every retail job, educating, inspiring, and communicating the powerful impact retail has on local communities and global economies. Retailers maintain a wide range of relationships with independent contractors.

**American Trucking Associations (ATA)** is the voice of the trucking industry that America depends on most to move our Nation's freight. ATA is a federation that has represented the industry for almost 90 years. Workforce issues are critical for ATA and its members, and independent contractors are a vital part of that workforce.

\* \* \*

*Amici* supported the independent contractor rule issued by the Department of Labor ("DOL") in 2021 because it provided welcome clarity for both workers and businesses. When DOL later attempted to delay and withdraw the 2021 Rule, *amici* filed suit and secured a ruling vacating those actions as arbitrary and capricious and otherwise violative of the Administrative Procedure Act (APA). *CWI v. Walsh*, No. 1:21-cv-130, 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022), *vacated as moot*

*on other grounds*, No. 22-40316 (5th Cir. Feb. 19, 2024). DOL abandoned its appeal of that decision after it promulgated the new 2024 Rule at issue in this case—which again attempts to withdraw the 2021 Rule, and now to replace it with an unprecedented, unlawful standard that contravenes governing precedent and rests on badly flawed reasoning. After vacating the district court's first decision as moot in light of these developments, this Court remanded *amici*'s suit to the district court, where *amici* have filed a motion for summary judgment seeking vacatur of the 2024 Rule based on its serious legal deficiencies. Dkt. 52, *CWI v. Su*, No. 1:21-cv-130 (E.D. Tex. filed Apr. 17, 2024). Briefing on that motion is nearly complete.

The challenge to the 2024 Rule presented by Plaintiffs-Appellants in this case is important to *amici* and their members because they have a pending challenge to the same Rule in a court within this Circuit, and because they rely every day on worker classification standards under existing precedent and the 2021 Rule. *Amici* offer this brief to elaborate on why Plaintiffs-Appellants are substantially likely to prevail on the merits of their challenge to DOL's rescission of the 2021 Rule and its replacement with the 2024 Rule. Both those actions are arbitrary,

capricious, and otherwise contrary to law in numerous respects that disserve the Nation's economy and DOL's own stated goals.

## SUMMARY OF THE ARGUMENT

This case is one of several ongoing suits challenging DOL's unlawful attempt to repeal and replace its own recently promulgated 2021 Rule addressing the proper classification of workers under the Federal Labor Standards Act (FLSA), a matter of nationwide economic importance.

In 2021, after notice and extensive comments by interested parties, DOL adopted a rule with a clear and understandable test to help regulated parties determine who is an employee rather than an independent contractor for purposes of the FLSA. 86 Fed. Reg. 1168 (Jan 7, 2021). Drawing on decades of controlling Supreme Court precedent delineating a five-factor "economic reality" test to interpret this statute, the 2021 Rule identified two "'core' factors—the nature and degree of the worker's control over the work and the worker's opportunity for profit or loss"—that "typically carry greater weight in the analysis" because they "drive at the heart of what is meant by being in business for oneself." *Id.* at 1176, 1196. DOL demonstrated through its exhaustive review of

appellate court decisions that when the "control" and "opportunity for profit or loss" factors both pointed toward the same classification for a worker, courts invariably found that to be the correct classification. Accordingly, DOL explained in 2021 that giving primacy to these factors greatly simplified and clarified the application of the five factors historically consulted by the courts, thus increasing compliance and decreasing compliance costs while remaining true to the FLSA's text. The 2021 Rule also clarified that parties' "actual practice"—that is, the *economic reality* of a working relationship—"is more relevant than what may be contractually or theoretically possible" for purposes of worker classification. *Id.* at 1203. Through these and other provisions, DOL explained that the 2021 Rule's "clear articulation will lead to increased precision and predictability in the economic reality test's application, which will in turn benefit workers and businesses and encourage innovation and flexibility in the economy." *Id.* at 1168.

Just months later, however, and without identifying any change in fact or law justifying such an about-face, DOL repudiated its prior statements and embarked on a dogged campaign to repeal the 2021 Rule—a classic example of, in Justice Kavanaugh's words, the regulatory

"shock to the system" that is delivered "when a new administration comes in." Tr. of Oral Arg. at 96, *Relentless, Inc. v. Dep't of Com.*, No. 22-1219 (Jan. 17, 2024); *accord Kisor v. Wilkie*, 139 S. Ct. 2400, 2418 (2019) (criticizing the "disruption of expectations ... when an agency substitutes one view" that "'conflict[s] with a prior' one"). In 2022, a district court in this Circuit vacated DOL's first, hasty attempt to delay and withdraw the 2021 Rule, granting *amici*'s motion for summary judgment and holding that DOL violated the APA by denying the public a meaningful opportunity to comment on those actions, and by arbitrarily and capriciously failing to consider potential alternatives. *CWI*, 2022 WL 1073346, at *3-20.

Undeterred, DOL tried again. It issued a new 2024 Rule that again withdraws the 2021 Rule, and now replaces the predictable core-factor framework with a formless, six-factor-plus totality-of-the-circumstances test that has never been applied by *any* court, provides woefully little guidance to regulated parties, and is incapable of consistent application. 89 Fed. Reg. 1638 (Jan. 10, 2024). The 2024 Rule suffers all the same flaws as DOL's previous attempt to withdraw the 2021 Rule—and more.

DOL's actions are arbitrary and capricious and contrary to law for three primary reasons. *First*, in rescinding the 2021 Rule and its core-factor framework and replacing them with the 2024 Rule's novel and unbounded inquiry, DOL repeatedly and baselessly contradicted itself and relevant caselaw, and hindered rather than furthered its stated goals of regulatory certainty and clarity. *Second*, the 2024 Rule misapplies controlling precedent interpreting the FLSA, departing substantially from the economic-reality factors articulated by the Supreme Court, twisting previously settled understandings, and improperly converting the analysis into a one-way ratchet that arbitrarily favors findings of employee over independent-contractor status. *Third*, DOL's cost-benefit analysis was grossly inadequate and arbitrarily ignores significant costs the 2024 Rule will impose on independent contractors and businesses, while exaggerating the Rule's benefits, all in violation of the APA.

For these and other reasons, Plaintiffs-Appellants are substantially likely to prevail on the merits of their challenge to the 2024 Rule.

# ARGUMENT

## I.    DOL's Rescission of the 2021 Rule Is Arbitrary, Capricious, and Otherwise Contrary to Law.

DOL offered two principal grounds for rescission of the 2021 Rule. First, it asserted that its "[o]bjective" is to provide a "consistent approach" that will "reduce[] confusion" and "provide clarity on the concept of economic dependence."  89 Fed. Reg. at 1648-49, 1653-56, 1661, 1739. Second, it claimed the 2021 Rule "depart[ed] from case law." *Id.* at 1639. Both justifications fail APA scrutiny, and either of those failures is sufficient to hold the 2024 Rule unlawful and set it aside. *Nat'l Fuel Gas Supply Corp. v. FERC*, 468 F.3d 831, 839-40 (D.C. Cir. 2006) (Kavanaugh, J.).

### A.    Rescission of the 2021 Rule Will Produce Confusion and Uncertainty.

Rescission of the 2021 Rule is arbitrary and capricious because it "will undermine [DOL's] own objective" of increasing clarity and reducing confusion. *In re FCC 11-161*, 753 F.3d 1015, 1143 (10th Cir. 2014).  As DOL itself determined scarcely more than three years ago, the 2021 Rule brought much-needed structure and clarity to worker classification by instructing that if the two "'core' factors—the nature and degree of the

10

worker's control over the work and the worker's opportunity for profit or loss"—"both point towards the same classification, whether employee or independent contractor, there is a substantial likelihood that is the individual's accurate classification," and the remaining factors "are highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors."  86 Fed. Reg. at 1168, 1246 (29 C.F.R. § 795.105(c)).  This core-factor framework "improve[d] the certainty and predictability of the economic reality test" for the benefit of workers and businesses.  *Id.* at 1168, 1196.

Common sense dictates that a test that prioritizes two core factors—and that yields results consistent with the holdings of decades of cases—is simpler, clearer, and less confusing than the 2024 Rule's freewheeling "totality-of-the-circumstances analysis in which the economic reality factors are not assigned a predetermined weight."  89 Fed. Reg. at 1640.  "[E]xperience has shown that … open-ended balancing tests … can yield unpredictable and at times arbitrary results."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014).  Such "vague and open-ended regulations," which agencies like DOL "can later interpret as they see fit," deprive a regulated party of fair warning

of what the law requires. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158 (2012). The 2021 Rule brought much-needed clarity and simplicity, thereby facilitating and furthering compliance.

### B. Rescission of the 2021 Rule Was Based on a Misinterpretation of Caselaw.

DOL also justified rescission by claiming the 2021 Rule "depart[ed] from case law." 89 Fed. Reg. at 1639. But where an agency asserts that its action is legally compelled, and that legal premise turns out to be incorrect, the action must be set aside. *See DHS v. Regents*, 591 U.S. 1, 24-27 (2020).

The agency is wrong here. The 2021 Rule rooted its worker classification framework in the "economic reality" test of *Silk* while harmonizing the oft-conflicting methods used by different circuits to apply this test, thoroughly analyzing decades of appellate decisions in the process. *See* 86 Fed. Reg. 1170, 1240 (discussing circuits' inconsistent exposition and application of multi-factor test). In the 2024 Rule, DOL rejected its own prior analysis as contrary to Supreme Court precedent and decades of case law, but neither argument holds water.

First, DOL's new position misinterprets Supreme Court precedent. The agency suggested that the 2021 Rule runs "contrary to" precedent

because the "Supreme Court has emphasized that employment status … turns upon 'the circumstances of the whole activity,' rather than 'isolated factors.'" 89 Fed. Reg. at 1644, 1651. But the 2021 Rule does not turn on "isolated" factors, and as DOL explained when promulgating that rule, "[i]n the very case that announced the economic reality factors, the Supreme Court listed five factors that are 'important for decision' but did not treat them equally." 86 Fed. Reg. at 1197-98. The Court "instead emphasized the most probative factors"—specifically, "'the control exercised [and] the opportunity for profit'"—"while deemphasizing less probative ones in that case." *Id.* at 1198 (alteration in original) (quoting *United States v. Silk*, 331 U.S. 704, 719 (1947)). The 2021 Rule's focus on these core factors is entirely consistent with the Court's application of the economic reality test.

Second, DOL also relied on a superficial understanding of how "most courts" have described the economic-reality test. *E.g.*, 89 Fed. Reg. at 1652, 1665, 1669, 1676, 1707 (repeatedly relying on "most courts"). Decades of lower court precedent support the 2021 Rule, not the agency's recent flip-flop on the law. *See supra* at 12. These cases demonstrate how the economic-reality test shakes out in practice, and support the

13

focus on two core factors.  86 Fed. Reg. at 1196.  In crafting the 2021 Rule, DOL studied every relevant appellate decision since 1975 and found that in every case where the "opportunity for profit" and "control" factors pointed to the same classification, courts concluded that was the correct classification.  *Id.* at 1196-97.  This study represented an enormous undertaking and key insight by the Department and its staff.  The agency repudiated it when issuing the 2024 Rule not by finding that its prior assessment of the caselaw was inaccurate, but by prioritizing those cases' description of the legal standard instead of the *holdings* the courts ultimately reached.  In deprecating a legal test that was simpler to apply and invariably produced the right legal answer, DOL arbitrarily ignored "an important aspect of the problem," namely, the value of a simplified statement of law that facilitates and furthers compliance.  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  DOL erred, too, in assuming it was "*bound*" by statements in the caselaw that did not actually control, since it thereby failed to "appreciate the full scope of [its] discretion."  *Regents*, 591 U.S. at 25-27.

DOL compounded these errors by deploying flawed and inconsistent reasoning, dismissing out-of-hand, for example, cases

identified by commenters that emphasized control as a preeminent factor in the economic-reality inquiry. *See* 89 Fed. Reg. at 1650-51 & n.124. DOL claimed that some of the cases are only "relevant to a different statute," *id.*, but those were in fact FLSA cases. DOL dismissed other cases as relevant only to "a joint employment analysis," not to independent contractor status. *Id.* But those cases address the same ultimate questions: whether workers are the defendant's "employees" under the FLSA. *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 142-43 (3d Cir. 2020). For that reason, DOL itself repeatedly cited joint-employment cases and guidance in support of the 2024 Rule. *See* 89 Fed. Reg. at 1693 n.365, 1694 n.371, 1698-99 nn.401, 408. Such "internal inconsistency [is] characteristic of arbitrary and unreasonable agency action." *Chamber of Com. v. DOL*, 885 F.3d 360, 382 (5th Cir. 2018).

Ultimately, DOL fell back on the purported remedial purpose of the FLSA to justify its rescission of the 2021 Rule. 89 Fed. Reg. 1668 n.221. But the Supreme Court expressly rejected "this principle as a useful guidepost for interpreting the FLSA" and instructed that there is "no license" to give the statute "anything but a fair reading." *Encino Motorcars, LLC v. Navarro* (*Encino II*), 584 U.S. 79, 88-89 (2018). DOL

contended that *Encino II* applies only to FLSA "exemptions" and not the "definitions" at issue here. 89 Fed. Reg. at 1668 n.221. Nothing in *Encino II* suggests that the case is so limited, however, and courts have not found it so. *See*, *e.g.*, *Hernandez v. Plastipak Packaging, Inc.*, 15 F.4th 1321, 1329 (11th Cir. 2021) (recognizing that *Encino II* applies to the FLSA in full). It is particularly misguided, in fact, to invoke a statute's remedial purpose when addressing the antecedent question whether a worker is an employee and, thus, even within the category of persons Congress sought to protect. By flouting *Encino II*, DOL committed a clear error of law and arbitrarily and capriciously relies upon factors that should not be considered. This error requires vacatur of the rulemaking. *See Nat'l Fuel*, 468 F.3d at 839-40.

## II. The 2024 Rule's New Test Misinterprets and Misapplies the FLSA.

The 2024 Rule abandons the two core factors of the 2021 Rule and adopts instead a novel, multifactor standard that has never been applied by any court. This new rule rests on unreasoned decisionmaking and on misunderstandings of the law, including Supreme Court precedent, and thus violates the APA. 5 U.S.C. § 706(2)(A); *see Calumet Shreveport Refin., LLC v. EPA*, 86 F.4th 1121, 1137-38 (5th Cir. 2023). It defies

DOL's stated goal of regulatory certainty and predictability, promising instead confusion for workers and companies alike, increased litigation, and decreased independent work opportunities. On all levels, the new rule fails to fulfill DOL's obligations under the FLSA and APA.

As a threshold matter, DOL is "constrain[ed]" to follow Supreme Court precedent interpreting the FLSA. 89 Fed. Reg. at 1739. The 2024 Rule conflicts with Supreme Court precedent by relying on the remedial purpose of the FLSA in an improper attempt to expand the category of workers classified as employees. *See supra* at 15-16 (citing *Encino II*, 584 U.S. at 88-89). Likewise, DOL's abandonment of "actual practice" as the touchstone of FLSA worker classification analysis is also contrary to Supreme Court precedent. As the 2021 Rule explained, the focus on actual practice is not a matter subject to DOL's discretion, but a longstanding "principle … derived from the Supreme Court's holding that 'economic reality' rather than 'technical concepts' is to be the test of employment under the FLSA." 86 Fed. Reg. at 1203 (quoting *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)). In support of this conclusion, the 2021 Rule analyzed the key Supreme Court precedents at

17

length, including *Silk* and *Bartels v. Birmingham*, 332 U.S. 126 (1947).
86 Fed. Reg. at 1203.

The 2024 Rule erroneously departs from this precedent by treating
theoretical possibilities as "equally" or even "*more*[] indicative of the
economic reality than the actual practice of the parties."  89 Fed. Reg. at
1720 (emphasis added).  But an emphasis on theory makes no sense
under a test of economic "*reality*," and DOL utterly failed to contend with
the on-point Supreme Court decisions discussed in the 2021 Rule.  In
jettisoning that rule, DOL pointed to a clause in *Silk* that mentioned the
"'power of control, whether exercised or not,'" *id.* at 1718 & n.529, but
that passage of the Court's opinion was describing the Restatement of
Agency's "'technical'" control test, which *Silk* ultimately rejected, 331
U.S. at 713.

In addition to these overarching flaws, DOL erred in its analysis of
the individual factors applied under the economic-reality test, repeatedly

18

distorting and embellishing those factors so they would classify more workers as independent contractors.[2]

**A. "Integral Part" of Employer's Business.**    One of the six principal factors in the 2024 Rule inquires whether the workers in question do work that is an "integral part"—*i.e.*, a "critical, necessary, or central" part—of the putative employer's business.  89 Fed. Reg. at 1743 (new 29 C.F.R. § 795.110(b)(5)).  This factor—which the Fifth Circuit does not recognize at all—is a mistaken distortion of the Supreme Court's observation in *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947), that the workers there were part of an "integrated unit of production."  As DOL explained in adopting the 2021 Rule, inquiring whether workers act as an "integrated unit of production" can be probative of worker classification because it asks whether workers "'work alongside admitted employees'" toward "'a common objective'" in a manner that suggests they are not in business for themselves.  *Id.* at 726,

---

[2] DOL's numerous departures from pre-2021 standards show that the district court was wrong to suppose, in a statement at the hearing below, that the 2024 Rule "seems to be a resurrection of a position that had been in effect for some 70 or 80 years."  ROA.315 (Tr. 20).

729 (citation omitted); 86 Fed. Reg. at 1247 (29 C.F.R. § 795.105(d)(2)(iii)).

In asking instead whether workers perform a "critical, necessary, or central" part of the employer's business, the 2024 Rule "deviate[s] from the Supreme Court's guidance" in *Rutherford*, 86 Fed. Reg. at 1194, and gives undue weight to an ultimately meaningless inquiry. As Judge Easterbrook has observed, "[e]*verything* the employer does is 'integral' to its business—why else do it?" *Sec'y of Lab. v. Lauritzen*, 835 F.2d 1529, 1541 (7th Cir. 1987) (concurring). Asking whether someone's contributions are "essential" or "necessary" to a company fails to distinguish employees from many others who are "critical" to a company's business. Parts suppliers, distributors, and marketing consultants may be essential or important to a business, for instance, without being the company's employees.

DOL's only explanation for this about-face is unreasoned reliance on circuit court decisions that used the "integral" framing, sometimes in loose language. 89 Fed. Reg. at 1655. DOL cannot abdicate its obligation of reasoned decisionmaking by pointing to these nonbinding cases. *See supra* at 13-14.

20

**B. Control.** The 2024 Rule makes major changes to courts' traditional application of the "control" factor. For one, the 2024 Rule wrongly suggests that steps a company takes to comply with safety requirements and other regulations may indicate the control exercised by an employer. 89 Fed. Reg. at 1743. That squarely conflicts with decisions of this Court recognizing that such measures (*e.g.*, to ensure compliance with "safety training and drug testing") are "not the type of control that counsels in favor of employee status" because they indicate control by a regulator, not an employer. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 382 (5th Cir. 2019). Indeed, as the 2021 Rule correctly explained and Congress has recognized in other contexts, "these types of requirements are generally imposed by employers on both employees and independent contractors," so that "insisting on adherence to certain rules to which the worker is already legally bound would not make the worker more or less likely to be an employee." 86 Fed. Reg. at 1182-83.

DOL purported to address this flaw by providing that "control" is not indicated when a company implements measures "for the *sole* purpose of complying with a specific" regulation. 89 Fed. Reg. at 1743 (29 C.F.R. § 795.110(b)(4)) (emphasis added). That narrow exemption is

not based in reality and offers no genuine relief, instead inviting granular factual and legal inquiries that make DOL's Rule less clear and more confounding. A nationwide company, for example, might make a practice required by some but not all States a company-wide practice, for reasons of efficiency, consistency, and to ensure compliance with those state-imposed mandates. DOL's stinting exception would require parsing each State's law to determine what was strictly required, potentially deeming some workers employees and others independent contractors based on vagaries of state safety laws. Similarly, *amici*'s members often adopt measures that, while not strictly required, are the proven best means of assuring compliance or achieving health and safety goals. Regulators ordinarily favor such commonsense steps, but they would fall outside DOL's exception. DOL also did not explain *how* its compliance officers and the courts will ascertain when a company's compliance measures require a slight bit more than what is legally required—compliance measures that could implement an immense array of federal, state, and local regulations.

DOL also expanded the object of the "control" at issue—*i.e.*, the question of what a putative employer must control for an employment

relationship to be established.  The 2021 Rule pointed to control over "key aspects of the performance of the work," 86 Fed. Reg. at 1246-47 (29 C.F.R. § 795.105(d)(1)(i)), consistent with *Silk*'s understanding of control over "the manner of performing service to the industry" and over "how 'work shall be done,'" 331 U.S. at 713-14.  The 2024 Rule, on the other hand, includes control over "the performance of the work *and the economic aspects of the working relationship*."  89 Fed. Reg. at 1743 (new 29 C.F.R. § 795.110(b)(4)) (emphasis added).  This ambiguous new phrase does not appear in *Silk* or any other Supreme Court case applying the economic-reality test, and DOL lacks authority to expand the object of control beyond the binding "original meaning of the statute." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019).  And in fact, purchasers routinely determine the price they will pay for a good or service without thereby becoming the "employer" of the firm or person who provides the good or service.

**C. Entrepreneurial Drive.**  In addition to distorting the factors applied by this Court and others to determine when workers are independent contractors, the 2024 Rule injects an entirely new consideration—the worker's "entrepreneurial drive," 89 Fed. Reg. at

1713—into four of the 2024 Rule's six factors: "investment," "control," "skill," and "permanence." *See id.* at 1742-43 (29 C.F.R. § 795.110(b)(2)-(4), (6)).  The word "entrepreneurial" (and variations thereof) is used scores of times in the preamble to the 2024 Rule and three times in the Rule's text, yet DOL failed to identify a single case as using the term.

This new terminology improperly slants independent contractor status toward workers who are particularly driven or successful.  But as in all walks of life, there are many competent but workmanlike independent contractors who may not exhibit the elevated managerial skill, or the drive to expand and grow, that one equates with a genuine entrepreneur.  Indeed, working the flexible, potentially part-time schedule available to an independent contractor is a decision frequently made by those who, for a time, purposely place other priorities ahead of their career.  *See, e.g.*, CWI Comment 5, 11, bit.ly/3RxNUyT; FSI Comment 5, 24, bit.ly/4ewpaRe; U.S. Chamber of Commerce Comment 2, 4, bit.ly/3RAzQo5.  Workers who prefer this sort of self-determination

24

may not be professionally ambitious and may not be entrepreneurs, but that does not mean they are employees.[3]

## III. The 2024 Rule's Inadequate Cost-Benefit Analysis Is Arbitrary and Capricious and Violates the APA.

An agency's failure to "consider[] the costs and benefits associated" with its action is "arbitrary and capricious." *Mexican Gulf Fishing Co. v. Dep't of Com.*, 60 F.4th 956, 973 (5th Cir. 2023). Here, DOL erred at both ends, failing to acknowledge the costs of its action and exaggerating its benefits.

### A. DOL Failed to Consider Significant Costs of the 2024 Rule.

DOL violated the APA by failing to adequately consider significant costs of the withdrawal of the 2021 Rule and its 2024 Rule replacement.

---

[3] DOL further erred in enumerating other economic-reality factors. For one, it double-counted "investment" as a separate factor from "opportunity for profit or loss," 89 Fed. Reg. at 1639, 1742, disregarding that the Supreme Court in *Silk* analyzed these factors together, 331 U.S. at 719. DOL also silently and wrongly departed from the 2021 Rule by turning the "permanence of the work relationship" factor into a one-way ratchet by which a permanent relationship definitively "weigh[s]" in favor of employee classification, but a lack thereof is "not necessarily indicative of independent contractor status." 89 Fed. Reg. at 1685-86. And DOL improperly expanded the "skill" factor to encompass "initiative," *id.* at 1711, contravening Supreme Court precedent and creating confusing redundancy between factors that the 2021 Rule correctly rejected as inconsistent with *Silk*, 86 Fed. Reg. at 1170, 1174.

DOL's discussion of the 2024 Rule's costs is less than two pages and addresses only one category of costs—those associated with "rule familiarization." 89 Fed. Reg. at 1733-34. That blinkered analysis unreasonably omits whole categories of important costs raised by commenters, including the following.

**1. Loss of, and effects on, independent contractors in the workforce.** DOL overlooked that reclassification will harm many independent contractors and may drive some out of the workforce altogether. As the Small Business Administration (SBA) explained, the cost-benefit analysis in DOL's proposed rule was "deficient" because, among other failings, DOL did not consider that many independent contractors do "not want to be employees" and "believe they will lose work because of this rule." SBA Comment 4, 6-7, bit.ly/3RB2NjJ. The 2024 Rule could force many workers currently offering services as independent contractors to work set shifts or a fixed number of hours—something that many independent contractors cannot or do not want to do. If forced to be hired as employees due to reclassification, some "[w]orkers ... might sorely miss the flexibility and freedom that independent-contractor status confers." *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 243

(4th Cir. 2016).   Extending FLSA coverage to genuine independent contractors may also lead to job cuts, hiring freezes, resignations, retirements, or automation.

In supposed response to these concerns, DOL dismissed what it deemed the "suggest[ion]" that the 2024 Rule "would infringe upon workers' or businesses' choices," because "FLSA-protected rights cannot be waived by" workers or businesses.  89 Fed. Reg. at 1670-71.  But the inability to waive the FLSA's requirements is exactly why the costs of establishing employment relationships to obtain services previously provided by independent contractors are real costs that must be considered by DOL.  By refusing to do so, DOL arbitrarily set aside commenters' concerns and its own previous findings regarding workers who were not "compelled to sell [their] services" without the FLSA's protections.  *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947).

Rather than consider those costs, DOL doubled down by counting employee status as entirely beneficial, because some workers would become entitled to new employee benefits.  89 Fed. Reg. at 1734, 1736-37.  That ignores the obvious economic truth that the overall number of workers may decrease because the 2024 Rule makes their services more

expensive for businesses (who incur new tax and employee benefit obligations) and less attractive to workers (who lose flexibility and autonomy). Indeed, DOL conceded that some companies may respond to the 2024 Rule by adopting "a downward adjustment in the worker's wage rate to offset a portion of the employer's cost associated with these new benefits." *Id.* at 1736. Yet DOL did not even attempt to analyze how many workers will face lower rates of pay, how much lower wages from a newly created position may be, or whether and how many opportunities for work will be lost from the workforce altogether.

**2. Harms to businesses and the economy.** DOL similarly ignored harms to businesses and the economy. DOL asserted blithely that covering "health insurance and other benefits," as well as paying "higher taxes," would merely be "transfers," and that the only actual costs to businesses under the Rule will be familiarization costs in the Rule's first year. 89 Fed. Reg. at 1734. In truth, the costs to businesses go well beyond reading the 2024 Rule, as numerous commenters explained, and DOL's repeated failure to consider these important issues raised by commenters is arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

28

DOL's treatment of recordkeeping costs is a striking example. The FLSA requires employers to keep various records relating to "wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211(c); *see also* 29 C.F.R. § 825.500(c). If workers performing services as independent contractors must become employees, businesses will need to keep additional records to demonstrate compliance and avoid litigation. But DOL explicitly disclaimed such costs, based solely on the assertion that the 2024 Rule "does not create any new reporting or recordkeeping requirements." 89 Fed. Reg. at 1740-41. That misses the point: the 2024 Rule will extend the FLSA's preexisting requirements to more businesses and workers. The D.C. Circuit has characterized a similar failure to consider a rule's consequences, merely because the consequences were not an explicit requirement of the rule, as "unutterably mindless." *Bus. Roundtable v. SEC*, 647 F.3d 1144, 1156 (D.C. Cir. 2011) (vacating rule). So too here.

DOL also dismissed SBA's concerns that DOL "significantly underestimates the economic impacts of this rule to small businesses and independent contractors," which would "be detrimental and disruptive to millions of small businesses that rely upon independent contractors as

part of their workforce." SBA Comment 1, 6, 10. It acknowledges that SBA and others "contended that the Department has severely underestimated the economic impacts of this rule on small businesses and independent contractors." 89 Fed. Reg. at 1739. But DOL failed to respond to certain concerns, and responded to others in a manner that dismisses the magnitude of the problem. *E.g.*, *id.* at 1740 (defending estimate of 30 minutes for independent contractors, and one hour for other establishments, to read the Rule's hundreds of pages). This refusal to meaningfully consider significant comments violates the APA. *See, e.g.*, *Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 344 (D.C. Cir. 2019) (vacating agency action for failure to reasonably address comments).[4]

---

[4] DOL also violated its obligations under the Regulatory Flexibility Act (RFA), which requires agencies to publish regulatory flexibility analyses assessing their rules' impact on small businesses. 5 U.S.C. § 604. The RFA specifically commands agencies to respond to comments submitted by the SBA and authorizes private parties to enforce that requirement. *Id.* §§ 604(a)(3), 611(a)(1). An agency violates the RFA where, as here, it fails to comply with the "precise, specific steps [it] must take" under the Act. *Aeronautical Repair Station Ass'n, Inc. v. FAA*, 494 F.3d 161, 178 (D.C. Cir. 2007).

## B.    DOL Unreasonably Exaggerated the 2024 Rule's Benefits.

DOL overstated the 2024 Rule's purported benefits.  Among other things, it mistakenly assumed that independent contractors will benefit from the 2024 Rule through receipt of overtime pay, when in fact many independent contractors wrongly classified as employees under the Rule will qualify for an exemption from the FLSA's overtime requirements or otherwise will not be entitled to FLSA benefits.  *See* 89 Fed. Reg. at 1737.  Additionally, DOL erroneously claimed that a benefit of the 2024 Rule will be "[i]ncreased [c]onsistency" in classifying workers.  *Id.* at 1734.  To the contrary, for the reasons detailed above, the 2024 Rule will only have the opposite effect, promoting inconsistency and uncertainty.  *Supra* at 10-12.

Finally, DOL's analysis of purported benefits arbitrarily discards its previous finding that independent contractors earn more than employees on average.  89 Fed. Reg. at 1738 & n.645 (deeming it "inappropriate to conclude independent contractors generally earn a higher hourly wage than employees," departing from the analysis in "the 2021 IC Rule").  DOL's analysis relied on its assertion that independent contractors and employees earn similar hourly payment, arriving at this

31

conclusion through a statistical analysis that it claimed "controll[ed] for observable differences." *Id.* But DOL did not explain its process for controlling for "observable differences," nor did it provide the average pay rates of independent contractors and wage rates for employees after controlling for such differences. *Id.* And in fact, the primary study on which DOL purported to rely also concluded "that primary independent contractors earned more per hour than traditional employees." *Id.* DOL rejected that conclusion because of "the imprecision of the estimates." *Id.* But data does not need to be "perfect" for an agency to incorporate it into its decision making, and DOL's "refusal to use more recent data" is arbitrary and capricious. *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 61-62 (D.C. Cir. 2015).

## CONCLUSION

The Court should reverse.

Dated:  June 24, 2024

Respectfully Submitted,

 /s/ Maurice Baskin

MAURICE BASKIN
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, N.W.
Washington, D.C.  20006
(202) 772-2526
mbaskin@littler.com

*Counsel for Amici Curiae*

Stephanie A. Maloney
Jordan L. Von Bokern
U.S. CHAMBER LITIGATION CENTER
1615 H Street, N.W.
Washington, D.C.  20062
(202) 463-5337
smaloney@uschamber.com

*Counsel for Amicus Curiae*
*Chamber of Commerce of the*
*United States of America*

 /s/ Eugene Scalia

EUGENE SCALIA
  *Counsel of Record*
JASON J. MENDRO
ANDREW G.I. KILBERG
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
escalia@gibsondunn.com

*Counsel for Amicus Curiae*
*Financial Services Institute, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2024, I caused the foregoing brief to be electronically filed with the United States Court of Appeals for the Fifth Circuit by using the Court's CM/ECF system.

Dated:  June 24, 2024                    Respectfully Submitted,

                                         */s/ Eugene Scalia*
                                         EUGENE SCALIA
                                           *Counsel of Record for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because, excluding the parts exempted under Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, it contains 6,177 words.

I certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point New Century Schoolbook LT.

I further certify that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; and (2) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

Dated:  June 24, 2024            Respectfully Submitted,

                                 */s/ Eugene Scalia*
                                 EUGENE SCALIA
                                  *Counsel of Record for Amici Curiae*