# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————————

FRISARD'S TRANSPORTATION, L.L.C; LOUISIANA MOTOR TRANSPORT
ASSOCIATION, INCORPORATED; A & B GROUP, INCORPORATED;
TRIPLE G EXPRESS, INCORPORATED; NORTHLAKE MOVING AND
STORAGE, INCORPORATED,

Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF LABOR; JULIE A. SU, Acting Secretary,
U.S. Department of Labor; JESSICA LOOMAN, in her official capacity as
Administrator of the Wage and Hour Division; UNITED STATES DEPARTMENT
OF LABOR, WAGE AND HOUR DIVISION,

Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the Eastern District of Louisiana

———————————

## BRIEF FOR APPELLEES

———————————

*Of Counsel:*

SEEMA NANDA
  *Solicitor of Labor*
  *U.S. Department of Labor*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

DUANE A. EVANS
  *United States Attorney*

MICHAEL S. RAAB
JENNIFER L. UTRECHT
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7710*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-9039*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as defendants-appellees are all governmental parties.  5th Cir. R. 28.2.1.

## STATEMENT REGARDING ORAL ARGUMENT

This appeal concerns the district court's denial of plaintiffs' request for a preliminary injunction, which was filed on Thursday, March 7, 2024. That same day, plaintiffs also filed a motion for a temporary restraining order, claiming that injunctive relief was urgently needed before Monday, March 11, 2024. The following day, the district court held a telephonic hearing on plaintiffs' motion for expedited relief. In the hearing, the district court issued oral findings of fact concluding that plaintiffs had not met their burden to show irreparable harm. Accordingly, the district court denied both the motion for a temporary restraining order and the motion for a preliminary injunction. That decision was correct and did not amount to an abuse of discretion. The government stands ready to present oral argument if this Court thinks it would be useful.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF JURISDICTION ................................................................ 2

STATEMENT OF THE ISSUE ........................................................................ 2

STATEMENT OF THE CASE ......................................................................... 2

I.    Statutory Background ............................................................................... 2

      A.    The Fair Labor Standards Act ..................................................... 2

      B.    The Supreme Court's "Economic Reality" Analysis for
            Determining Employee or Independent Contractor Classification .......... 4

II.   The Department of Labor's Regulations and Guidance ....................................... 8

      A.    The Department of Labor's Prior Guidance ............................... 8

      B.    The 2021 Independent Contractor Rule ...................................... 8

      C.    The 2024 Rule ............................................................................ 10

III.  Factual and Procedural Background .................................................... 13

SUMMARY OF ARGUMENT ...................................................................... 15

STANDARD OF REVIEW ............................................................................ 21

ARGUMENT .................................................................................................. 22

I.    The District Court Did Not Abuse Its Discretion in Denying Plaintiffs'
      Eleventh-Hour Request for a Preliminary Injunction ......................................... 23

      A.    The District Court Properly Concluded that Plaintiffs Did Not
            Meet Their Burden to Clearly Show Irreparable Harm ............................ 23

      B.    Plaintiffs' Delay in Seeking Injunctive Relief Further Undercuts
            Their Unsubstantiated Claim of Irreparable Harm ................................. 31

       C.      Plaintiffs Have Not Demonstrated that the District Court Abused Its Discretion ............................................................................................... 33

II.    The Remaining Preliminary Injunction Factors Are Not Properly Before This Court ............................................................................................................. 37

CONCLUSION .............................................................................................................. 40

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Abdullah v. Paxton,*
  65 F.4th 204 (5th Cir.), *cert. denied*, 144 S. Ct. 188 (2023) ................................23, 28, 34

*Acosta v. Off Duty Police Servs., Inc.,*
  915 F.3d 1050 (6th Cir. 2019) ................................. 25

*Acosta v. Paragon Contractors Corp.,*
  884 F.3d 1225 (10th Cir. 2018) ................................. 25

*Anderson v. City of Bessemer City,*
  470 U.S. 564 (1985) ................................. 19, 35

*Anderson v. Jackson,*
  556 F.3d 351 (5th Cir. 2009) ................................. 17, 18, 21, 23, 33, 35, 38

*Barber v. Bryant,*
  860 F.3d 345 (5th Cir. 2017) ................................. 28

*Bartels v. Birmingham,*
  332 U.S. 126 (1947) ................................. 5, 7

*Boire v. Pilot Freight Carriers, Inc.,*
  515 F.2d 1185 (5th Cir. 1975) ................................. 18, 32

*Brock v. Mr. W Fireworks, Inc.,*
  814 F.2d 1042 (5th Cir. 1987) ................................. 3, 24

*Brock v. Superior Care, Inc.,*
  840 F.2d 1054 (2d Cir. 1988) ................................. 25

*Canal Auth. v. Callaway,*
  489 F.2d 567 (5th Cir. 1974) ................................. 21

*Castillo v. Givens,*
  704 F.2d 181 (5th Cir. 1983) ................................. 4

*Citibank, N.A. v. Citytrust,*
 756 F.2d 273 (2d Cir. 1985) ................................................................. 18, 31

*City of Los Angeles v. Lyons,*
 461 U.S. 95 (1983) .........................................................................17, 23, 27

*Clapper v. Amnesty Int'l USA,*
 568 U.S. 398 (2021) ................................................................................. 23

*Coalition for Workforce Innovation v. Su,*
 No. 22-40316, 2024 WL 2108472 (5th Cir. Feb. 19, 2024) ........................ 10

*Coalition for Workforce Innovation v. Walsh,*
 No. 1:21-cv-130, 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022), *vacated per curiam,*
 No. 22-40316, 2024 WL 2108472 (5th Cir. Feb. 19, 2024) ...................10, 30

*Cooper v. Harris,*
 581 U.S. 285 (2017) ...........................................................................19, 35

*Cruson v. Jackson Nat'l Life Ins. Co.,*
 954 F.3d 240 (5th Cir. 2020) ................................................................... 20

*Earl v. Boeing Co.,*
 21 F.4th 895 (5th Cir. 2021) .................................................................... 28

*Gill v. Whitford,*
 585 U.S. 48 (2018) ................................................................................... 14

*Goldberg v. Whitaker House Co-op., Inc.,*
 366 U.S. 28 (1961) .................................................................................4, 6

*Golden v. Zwickler,*
 394 U.S. 103 (1969) ...........................................................................23, 27

*Google, Inc. v. Hood,*
 822 F.3d 212 (5th Cir. 2016) ................................................................... 22

*Gordon v. Holder,*
 632 F.3d 722 (D.C. Cir. 2011) ............................................................18, 32

*Hickley v. Arkla Indus., Inc.,*
    699 F.2d 748 (5th Cir. 1983) ..............................................24-25

*Hobbs v. Petroplex Pipe & Constr., Inc.,*
    946 F.3d 824 (5th Cir. 2020) ................................................ 7, 12

*Holland Am. Ins. Co. v. Succession of Roy,*
    777 F.2d 992 (5th Cir. 1985) .................................................... 21

*Hopkins v. Cornerstone Am.,*
    545 F.3d 338 (5th Cir. 2008) .................................................... 24

*Louisiana v. Biden,*
    55 F.4th 1017 (5th Cir. 2022) .................................................. 28

*Madsen v. Women's Health Ctr., Inc.,*
    512 U.S. 753 (1994) .................................................................. 14

*Martin v. Selker Bros., Inc.,*
    949 F.2d 1286 (3d Cir. 1991) .................................................. 25

*Massachusetts v. Mellon,*
    262 U.S. 447 (1923) .................................................................. 23

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.,*
    760 F.2d 618 (5th Cir. 1985) ..............................................22, 38

*Morrison v. International Programs Consortium, Inc.,*
    253 F.3d 5 (D.C. Cir. 2001) ..................................................... 25

*Nationwide Mut. Ins. Co. v. Darden,*
    503 U.S. 318 (1992) .............................................................. 3, 4

*Natural Res. Def. Council v. Pena,*
    147 F.3d 1012 (D.C. Cir. 1998) ............................................... 33

*NLRB v. Hearst Publ'ns, Inc.,*
    322 U.S. 111 (1944) .................................................................... 5

*NLRB v. United Ins. Co. of Am.,*
    390 U.S. 254 (1968) .................................................................... 6

*Parrish v. Premier Directional Drilling, L.P.*,
917 F.3d 369 (5th Cir. 2019) ......................................................... 3, 7, 24

*Quince Orchard Valley Citizens Ass'n v. Hodel*,
872 F.2d 75 (4th Cir. 1989) ................................................................ 33

*Rutherford Food Corp. v. McComb*,
331 U.S. 722 (1947) ................................................................ 3, 4, 5, 6

*Scantland v. Jeffry Knight, Inc.*,
721 F.3d 1308 (11th Cir. 2013) ........................................................... 25

*Secretary of Labor, U.S. Dep't of Labor v. Lauritzen*,
835 F.2d 1529 (7th Cir. 1987) ............................................................ 25

*Sierra Club, Lone Star Chapter v. Federal Deposit Ins. Corp.*,
992 F.2d 545 (5th Cir. 1993) ........................................................ 20, 38

*Stringer v. Town of Jonesboro*,
986 F.3d 502 (5th Cir. 2021) ..................................................... 2, 20, 37

*Stringer v. Whitley*,
942 F.3d 715 (5th Cir. 2019) .............................................................. 23

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ...................................................................... 23

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ...................................................................... 23

*United States v. Silk*,
331 U.S. 704 (1947) ..................................................................... 5, 6

*United States v. U.S. Gypsum Co.*,
333 U.S. 364 (1948) ...................................................................... 19

*Usery v. Pilgrim Equip. Co.*,
527 F.2d 1308 (5th Cir. 1976) ......................................................... 3, 12

*Walling v. Portland Terminal Co.*,
330 U.S. 148 (1947) ....................................................................... 4

*White v. Carlucci*,
  862 F.2d 1209 (5th Cir. 1989) ...........................................................21, 22, 38

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008).........................................................17, 22, 23, 28, 29, 36

**Statutes:**

Fair Labor Standards Act of 1938,
  29 U.S.C. § 201 *et seq.*..................................................................................... 2
  29 U.S.C. § 202(a) ............................................................................................ 3
  29 U.S.C. § 203(d) ............................................................................................ 3
  29 U.S.C. § 203(e)(1) ........................................................................................ 3
  29 U.S.C. § 203(g) ............................................................................................ 3
  29 U.S.C. § 206(a) ............................................................................................ 3
  29 U.S.C. § 207(a) ............................................................................................ 3
  29 U.S.C. § 211(c) ............................................................................................ 3

Labor Management Relations Act, 1947 (Taft-Hartley Act),
  Pub. L. No. 80-101, tit. I, § 101, 61 Stat. 136, 137-38................................... 6

Pub. L. No. 80-642, § 2(a), 62 Stat. 438, 438 (1948) ...................................... 6

28 U.S.C. § 1292(a)(1) ....................................................................................... 2

28 U.S.C. § 1331 ................................................................................................ 2

**Regulations:**

29 C.F.R. pt. 795............................................................................................. 11
  29 C.F.R. § 795.100 ................................................................................... 12, 26
  29 C.F.R. § 795.105(b)............................................................................... 11, 26
  29 C.F.R. § 795.110(a) .................................................................................... 11
  29 C.F.R. § 795.110(a)(1) .......................................................................... 12, 26
  29 C.F.R. § 795.110(a)(2) ............................................................................... 26
  29 C.F.R. § 795.110(b).................................................................................... 26
  29 C.F.R. § 795.110(b)(1)-(6)......................................................................... 11
  29 C.F.R. § 795.115.................................................................................... 12, 26

**Other Authorities:**

86 Fed. Reg. 1168 (Jan. 7, 2021) ...................................................... 8, 9

86 Fed. Reg. 12,535 (Mar. 4, 2021)................................................. 9, 30

86 Fed. Reg. 24,303 (May 6, 2021) .................................................. 9, 30

87 Fed. Reg. 62,218 (Oct. 13, 2022) .................................................. 10

89 Fed. Reg. 1638 (Jan. 10, 2024) ................................ 1, 5, 6, 7, 8, 9, 11, 12, 13,
16, 19, 24, 25, 26, 29, 30, 34, 36

11A Charles A. Wright et al., *Federal Practice and Procedure* (2d ed. 1995)................. 17, 29

11A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed.),
Westlaw (database updated June 2024) ........................................................ 32

## INTRODUCTION

This appeal arises out of plaintiffs' eleventh-hour request that the district court preliminarily enjoin a regulation that went into effect on March 11, 2024. *See* 89 Fed. Reg. 1638 (Jan. 10, 2024) (2024 Rule). After the close of business on Thursday, March 7, 2024, plaintiffs filed a motion for a temporary restraining order and a motion for a preliminary injunction, requesting that the district court provide relief before the 2024 Rule went into effect the following Monday. Despite plaintiffs' asserted urgency, however, plaintiffs provided no evidence that they would likely be harmed in any tangible, non-conjectural manner before a decision on the merits could issue. Accordingly, during a hearing held the following day, the district court found that plaintiffs had failed to carry their burden to demonstrate irreparable harm, and it properly denied both motions on that basis.

Plaintiffs' opening brief does not demonstrate any clear error in the district court's factual findings and does not show that the district court otherwise abused its discretion in denying their motion for a preliminary injunction. Even if this Court disagrees, there is no basis for plaintiffs' request that this Court consider the merits of plaintiffs' challenge to the 2024 Rule in this interlocutory posture. Indeed, because plaintiffs asked that the district court consider their request for injunctive relief on a highly expedited basis, the court found that plaintiffs had not demonstrated irreparable harm and denied plaintiffs' motions before the government had an opportunity to respond to the motion for a preliminary injunction in accordance with

the court's local rules. Thus, if this Court does not affirm the district court's denial, the appropriate course of action is a remand for the motion to be fully briefed before the district court in the first instance. *Stringer v. Town of Jonesboro*, 986 F.3d 502, 509 (5th Cir. 2021) ("As we have repeatedly observed, we are a court of review, not first view." (quotation marks omitted)).

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331. As discussed below, however, plaintiffs have not demonstrated standing to support their request for preliminary injunctive relief. *See infra* pp. 22-31. The district court denied plaintiffs' motion for a preliminary injunction on March 8, 2024. ROA.215. Plaintiffs filed a timely notice of appeal on April 8, 2024. ROA.225-26. This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUE

Whether the district court clearly erred in finding that plaintiffs failed to carry their burden to clearly demonstrate that the 2024 Rule would cause them irreparable harm before a decision on the merits could be rendered.

## STATEMENT OF THE CASE

### I.     Statutory Background

#### A.     The Fair Labor Standards Act

Congress enacted the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.*, to eliminate "labor conditions detrimental to the maintenance of the

minimum standard of living necessary for health, efficiency, and general well-being of workers." *Id.* § 202(a); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019); *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043 (5th Cir. 1987); *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1310-11 (5th Cir. 1976). To that end, the FLSA requires covered employers to pay nonexempt employees at least the federal minimum wage for each hour worked and at least 1.5 times the employee's regular rate for hours worked in excess of 40 hours a workweek. 29 U.S.C. §§ 206(a), 207(a). The FLSA also mandates that employers keep certain records regarding employees. 29 U.S.C. § 211(c).

As relevant here, the FLSA generally defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" is, in turn, defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). The FLSA further defines "[e]mploy" as including "to suffer or permit to work." *Id.* § 203(g). The Supreme Court has stated that this definition is "striking[ly]" broad, and that it "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947)).

## B. The Supreme Court's "Economic Reality" Analysis for Determining Employee or Independent Contractor Classification

The Supreme Court has recognized that "independent contractors" fall outside the FLSA's broad understanding of employment. *See, e.g., Rutherford Food Corp.*, 331 U.S. at 729 (noting that "[t]here may be independent contractors . . . who would alone be responsible for the wages and hours of their own employees" and who personally fall outside the scope of an employee under the FLSA). At the same time, the Supreme Court has held that the FLSA's broad definition of employment encompasses "many persons and working relationships, which prior to th[e FLSA], were not deemed to fall within an employer-employee category" under the common law. *Id.* at 728-29 (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51 (1947)); *see also Nationwide Mut. Ins.*, 503 U.S. at 326. The Supreme Court has accordingly recognized that the question whether a worker is an employee or an independent contractor under the FLSA must look beyond the traditional common law test of employer control. *E.g., Rutherford Food Corp.*, 331 U.S. at 728-29; *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961); *Nationwide Mut. Ins.*, 503 U.S. at 325-26; *see also Castillo v. Givens*, 704 F.2d 181, 189 (5th Cir. 1983) ("[T]he common-law control test is not conclusive," and "[t]he statutory coverage is not limited to those persons whose services are subject to the direction and control of their employer, but rather to those who, as a matter of economic reality, are dependent upon the business to which they render service." (quotation marks omitted)).

4

Instead, beginning in the 1940s, the Supreme Court developed a broad, multifactor test for distinguishing between employees and independent contractors that looks to whether, as a matter of economic reality, the worker is economically dependent on the employer for work (and thus is an employee) or is in business for themself (and thus is an independent contractor). *See* 89 Fed. Reg. at 1641-42 (describing this history); *NLRB v. Hearst Publ'ns, Inc.*, 322 U.S. 111, 126-29 (1944) (analyzing similar language in the National Labor Relations Act and holding that the broad definition of employee "leaves no doubt that its applicability is to be determined broadly, in doubtful situations, by underlying economic facts rather than technically and exclusively by previously established legal classifications"); *United States v. Silk*, 331 U.S. 704, 713, 715-18 (1947) (analyzing similar language in the Social Security Act and holding that the broad definition of employee requires analysis of a worker's "economic reality"); *Rutherford Food Corp.*, 331 U.S. at 728-29 (analyzing the economic reality of the workers' relationship and holding that workers who performed work in an employer's production line were not independent contractors under the FLSA); *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947) (holding that employee status under the Social Security Act "was not to be determined solely by the idea of control" under the common law, but rather, by looking to whether "as a

matter of economic reality" the worker is "dependent upon the business to which they render service").[1]

The Supreme Court's decisions identify several non-exhaustive factors that should guide the analysis of whether a worker is, as a matter of economic reality, dependent on a potential employer for work, with no one factor or factors having predetermined weight. *See* 89 Fed. Reg. at 1638, 1641-44. Specifically, in *Silk*, the Supreme Court identified five factors as "important" for distinguishing between employees and independent contractors: "degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation[,] and skill required in the claimed independent operation." *Silk*, 331 U.S. at 716. The Court further explained that "[n]o one [factor] is controlling nor is the list complete." *Id.* And the Court went on to note that the workers in that case were "from one standpoint an integral part of the businesses" of the employer, supporting a conclusion that some of the workers in that case were employees. *Id.* Similarly, in *Rutherford*, decided the same day as *Silk*, the

---

[1] Following this series of decisions, Congress amended the definition of employment in the Social Security Act and the National Labor Relations Act to clarify that traditional common-law agency principles should be used to determine whether a worker has the status of an independent contractor under those statutes. *See* Labor Management Relations Act, 1947 (Taft-Hartley Act), Pub. L. No. 80-101, tit. I, § 101, 61 Stat. 136, 137-38; Social Security Act of 1948, Pub. L. No. 80-642, § 2(a), 62 Stat. 438, 438; *NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 256 (1968). Congress did not similarly amend the definition of employment in the FLSA. *See Whitaker House Co-Op.*, 366 U.S. at 32 (affirming that "economic reality" rather than "technical" common-law concepts remained the test under the FLSA (quoting *Silk*, 331 U.S. at 713)).

Court affirmed a federal court of appeals decision that analyzed an employment relationship based on economic realities. *See* 331 U.S. at 727. Again, the Court rejected an approach based on "isolated factors" and considered the "circumstances of the whole activity." *Id.* at 730. After considering several of the *Silk* factors, the Court held that the workers in question were best characterized as employees of the establishment. *Id.* at 729; *see also Bartels*, 332 U.S. at 130.

Consistent with the Supreme Court's guidance, all federal courts of appeals apply an "economic reality" analysis for determining whether someone is an employee or an independent contractor under the FLSA. 89 Fed. Reg. at 1642 & nn.52-53 (listing cases). Although the courts vary slightly in their articulation of the factors that guide this inquiry, they have historically and uniformly engaged in a multifactor analysis, looking to the factors first articulated in *Silk* as useful guideposts, while acknowledging that those factors are not exclusive and should not be applied mechanically. *Id.* at 1642; *see, e.g.*, *Parrish*, 917 F.3d at 379-80 (holding that the *Silk* factors "guide" the inquiry of whether "employees, as a matter of 'economic reality,' are 'economically dependent' on the business to which they supply their labor and services," and that it is "'impossible to assign to each of these factors a specific and invariably applied weight'"); *Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 836 (5th Cir. 2020) (considering, in addition to the *Silk* factors, "the extent to which the pipe welders' work was 'an integral part' of [the employer's] business").

## II.     The Department of Labor's Regulations and Guidance

### A.     The Department of Labor's Prior Guidance

Consistent with the Supreme Court's opinions in *Rutherford* and *Silk*, the Department of Labor has long applied a multifactor economic reality test when considering whether a worker is an employee or an independent contractor under the FLSA.  For example, in 1949, the Department's Wage and Hour Division issued an opinion letter that "distill[ed] six 'primary factors which the Court considered significant' in *Rutherford* and *Silk*," emphasizing that under those decisions, "no single factor is controlling" in determining whether an employment relationship exists under the FLSA.  89 Fed. Reg. at 1643.  Subsequent opinion letters and interpretive guidance issued in the decades that followed provided similar recitations of this multifactor analysis.  *Id.* at 1642-44.

### B.     The 2021 Independent Contractor Rule

**1.**  On January 7, 2021, the Department promulgated a regulation with an effective date of March 8, 2021, that added a new part to Title 29 of the Code of Federal Regulations (Part 795), setting forth a new generally applicable interpretation regarding how to classify workers as employees or independent contractors under the FLSA.  86 Fed. Reg. 1168 (Jan. 7, 2021) (2021 Rule).  The 2021 Rule reiterated the longstanding principle that a worker is an employee under the FLSA if, as a matter of economic reality, the worker is economically dependent on the employer for work.  *Id.* at 1168.  However, the 2021 Rule made several changes to how that analysis was

applied in ways that deviated from the governing case law and the Department's longstanding practice. 89 Fed. Reg. at 1638-45; *see also* 86 Fed. Reg. at 1168 (acknowledging that the 2021 Rule's articulation of the economic reality test differs from that used by "most courts").

For example, the 2021 Rule designated two considerations as "core factors" that should always carry greater weight in the economic reality analysis: (i) the nature and degree of control over the employee's work and (ii) the worker's opportunity for profit or loss. 89 Fed. Reg. at 1644; 86 Fed. Reg. at 1246-47. The 2021 Rule stated that three other potentially relevant factors—the amount of skill required, the degree of permanence of the working relationship, and whether the work is part of an integrated unit of production—were "less probative and, in some cases, may not be probative at all" of economic dependence, and that they were "highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors." 86 Fed. Reg. at 1246-47. The 2021 Rule also excluded from consideration whether the work performed was central or important to the employer's business. *Id.*

**2.** In March 2021, the Department published a rule to delay the effective date of the 2021 Rule, and later published a rule to withdraw it. *See* 86 Fed. Reg. 12,535 (Mar. 4, 2021) (the Delay Rule); 86 Fed. Reg. 24,303 (May 6, 2021) (the Withdrawal Rule). In explaining its decision to withdraw the 2021 Rule, the Department stated that the rule was inconsistent with the FLSA's text and purpose as interpreted by courts and would have a confusing and disruptive effect due to its departure from

longstanding judicial precedent. 86 Fed. Reg. at 24,303; *see also* 89 Fed. Reg. at 1647 ("[L]eaving the [2021 Rule] in place would have a confusing and disruptive effect on workers and businesses alike" because the rule "included provisions that are in tension with longstanding case law, such as designating two 'core factors' as most probative and predetermining that they carry greater weight in the analysis[.]").

Both the Delay Rule and the Withdrawal Rule were challenged in *Coalition for Workforce Innovation v. Walsh* (*CWI*), No. 1:21-cv-130, 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022), *vacated per curiam*, No. 22-40316, 2024 WL 2108472 (5th Cir. Feb. 19, 2024). The district court in *CWI* held that the Delay and Withdrawal Rules violated certain provisions of the Administrative Procedure Act and vacated both, concluding that the 2021 Rule became effective on March 8, 2021. *See id.* This Court vacated that decision as moot after the Department promulgated the 2024 Rule challenged in the current appeal. *See Coalition for Workforce Innovation v. Su*, No. 22-40316, 2024 WL 2108472 (5th Cir. Feb. 19, 2024) (per curiam). That case was then remanded to permit those plaintiffs to file an amended complaint.

### C.    The 2024 Rule

On October 13, 2022, the Department published a new proposed rule for public comment. *See* 87 Fed. Reg. 62,218 (Oct. 13, 2022). After receiving and considering more than 55,000 comments, on January 10, 2024, the Department promulgated the rule challenged here, which became effective on March 11, 2024.

The 2024 Rule has two operative parts. First, the 2024 Rule rescinds the 2021 Rule. As the Department explained in the preamble, the 2021 Rule "depart[ed] from decades of case law describing and applying the multifactor economic reality test as a totality-of-the-circumstances test." 89 Fed. Reg. at 1647. In contrast to the breadth of judicial decisions directing that no one factor or set of factors should be given a predetermined weight, the 2021 Rule elevated two "core factors" as most probative and predetermined their weight in the analysis. *Id.* The 2021 Rule also "narrowed the economic reality test by limiting the facts that may be considered as part of the test"—facts which courts of appeals and the Department previously considered relevant in determining whether a worker is truly in business for themself or is instead economically dependent on the employer for work. *Id.*; *see also id.* at 1649-58 (describing problems with the 2021 Rule).

Second, the 2024 Rule replaces the 2021 Rule with interpretive guidance that is "more consistent with existing judicial precedent and the Department's longstanding guidance" prior to the 2021 Rule. 89 Fed. Reg. at 1647; *see* 29 C.F.R. pt. 795. In contrast to the 2021 Rule's creation of elevated "core factors," the 2024 Rule returns to a totality-of-the-circumstances analysis in which no factor or set of factors has any predetermined weight. 29 C.F.R. §§ 795.105(b), 795.110(a). And the 2024 Rule identifies six non-exhaustive factors that have been previously considered relevant by the courts that serve as "tools or guides" in the economic-reality analysis: (i) the worker's opportunity for profit or loss depending on managerial skill, (ii) investments

by the worker and the potential employer, (iii) the degree of permanence of the work relationship, (iv) the nature and degree of control, (v) the extent to which the work performed is an integral part of the potential employer's business,[2] and (vi) the worker's skill and initiative. *Id.* § 795.110(a)(1), (b)(1)-(6). The preamble to the 2024 Rule also provides a detailed discussion of how to apply each factor. *See* 89 Fed. Reg. at 1671-1725.

In addressing the need for rulemaking, the Department explained that the subregulatory guidance issued prior to the 2021 Rule "provided appropriate guidance to the regulated community." 89 Fed. Reg. at 1659. It concluded, however, that publishing a detailed regulation that transparently and clearly set forth how the Department will analyze worker classifications in an accessible format would be "helpful to workers and businesses alike." *Id.* at 1659-60, 1724. The rule makes clear, however, that it contains only "general interpretations" that are "intended to serve as a 'practical guide to employers and employees' as to how the Department will seek to apply the Act" in the performance of its duties, such as when called upon to classify workers for the purpose of investigations of FLSA violations and enforcement

---

[2] This Court typically does not list the "integral" factor when it enumerates the factors that guide the economic reality analysis. *See, e.g.*, *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976). However, recognizing that the list of enumerated factors is not exhaustive, this Court has previously considered the extent to which a worker's function is integral to a business as relevant to the question of whether, as a matter of economic reality, a worker is an employee or an independent contractor. *E.g.*, *Petroplex*, 946 F.3d at 836 (considering "the extent to which pipe welders' work was 'an integral part' of Petroplex's business").

12

actions.  29 C.F.R. § 795.100.  In addition, the Department made clear that the decision to promulgate a new regulation is separate and severable from the decision to rescind the 2021 Rule.  *Id.* § 795.115; 89 Fed. Reg. at 1724-25 ("The Department continues to believe that rescission of the [2021 Rule] is proper . . . and its intent accordingly is for the rescission to remain operative even if this final rule's regulations replacing the [2021 Rule] are invalidated for any reason.").

## III.    Factual and Procedural Background

Plaintiff Frisard's Transportation LLC filed its original complaint on February 8, 2024.  ROA.7.  One month later, on Thursday, March 7, 2024, Frisard's filed an amended complaint adding several new plaintiffs and seeking declaratory and injunctive relief, claiming that the 2024 Rule is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the Administrative Procedure Act.  ROA.89-109.  After the close of business that same evening, plaintiffs filed motions for a temporary restraining order and a preliminary injunction, ROA.118-69; ROA.171-202, urging that injunctive relief was needed on a highly expedited basis before the rule went into effect on Monday, March 11, 2024, *see* ROA.118.

The government filed a short response later that evening.  ROA.207-11.  The government noted that, although plaintiffs urged that injunctive relief was necessary before the 2024 Rule went into effect, plaintiffs inexplicably waited until the eleventh hour to seek such relief, providing the district court only a single business day to

consider their motions' sweeping request for a universal injunction. ROA.207-08. And the government argued that, despite plaintiffs' claimed urgency, plaintiffs did not provide *any* evidence of concrete injury arising from the rule, much less that some potential harm was so sufficiently imminent and irreparable that it warranted preliminary injunctive relief on an expedited and universal basis. ROA.209. To the contrary, plaintiffs' motions and declarations depended solely on speculation about the rule's potential economic effects. The government therefore requested that the court deny both plaintiffs' motion for a temporary restraining order and their motion for a preliminary injunction for lack of irreparable harm. ROA.209. In the alternative, the government requested that the court deny the motion for a temporary restraining order and set a briefing schedule on the motion for preliminary injunction to be resolved in the ordinary course. ROA.209.[3]

---

[3] The government also argued that plaintiffs' request that the district court grant universal injunctive relief on an emergency basis was improper and that, if the district court was inclined to grant any emergency relief, the relief should be no broader than necessary to remedy any harm demonstrated by the plaintiffs. ROA.210 (first citing *Gill v. Whitford*, 585 U.S. 48, 73 (2018); and then citing *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994)). That was particularly true given that universal relief would intrude upon the authority of other districts, including districts outside of this circuit, that had pending challenges to the 2024 Rule. ROA.211 (first citing *Warren v. U.S. Dep't of Labor*, No. 2:24-cv-007 (N.D. Ga. filed Jan. 16, 2024); then citing *Littman v. Dep't of Labor*, No. 3:24-cv-00194 (M.D. Tenn. filed Feb. 21, 2024); and then citing *Coalition for Workforce Innovation v. Su*, No. 1:21-cv-130 (E.D. Tex. amended complaint filed Mar. 5, 2024)); *see also Colt & Joe Trucking LLC v. U.S. Dep't of Labor*, No. 1:23-cv-00391 (D.N.M. filed Apr. 25, 2024).

The following day, on March 8, 2024, the district court held a telephonic hearing on plaintiffs' motions. ROA.296-316. During the hearing, the judge found that plaintiffs had not shown any "immediate threat of harm or immediate harm," and that the 2024 Rule "seems to be a resurrection of a position that had been in effect for some 70 or 80 years." ROA.315. The court further stated that, because plaintiffs had not shown any "immediate threat of harm or immediate harm," if there was any harm, plaintiffs would have "adequate opportunity" going forward "to show specifically what the harm is and how the individual has been harmed." ROA.315. Because the court found that plaintiffs had failed to carry their burden to clearly demonstrate irreparable harm, the court denied plaintiffs' motions. ROA.215. Plaintiffs now appeal the district court's denial of their motion for a preliminary injunction.[4]

## SUMMARY OF ARGUMENT

**I.** This appeal arises out of plaintiffs' eleventh-hour request for a temporary restraining order and preliminary injunction of a regulation that went into effect on March 11, 2024. The regulation in question is an interpretive guidance document that explains how the Department of Labor will analyze whether workers are, as a matter of economic reality, in business for themselves (and are thus independent contractors)

---

[4] After the plaintiffs noticed their appeal, the government filed a motion to dismiss for lack of standing and, in the alternative, a motion for summary judgment. Dkt. No. 32 (May 21, 2024). After the plaintiffs filed a response, Dkt. No. 41 (July 2, 2024), the district court *sua sponte* stayed further proceedings pending this Court's resolution of plaintiffs' interlocutory appeal, Order, Dkt. No. 44 (July 3, 2024).

or are economically dependent on an employer for work (and thus are employees) under the FLSA. As relevant here, the rule rescinds a prior interpretive guidance published in January 2021, which articulated the economic-reality analysis in a manner the Department concluded was inconsistent with judicial precedent—including decisions of this Court. The 2024 Rule replaced that analysis with an approach to classifying workers that uses the "same analysis that courts have applied for decades," 89 Fed. Reg. at 1658, and that is consistent with the analysis that generally guided the Department in the exercise of its enforcement authority for "some 70 or 80 years" prior to the publication of the 2021 Rule, ROA.315.

After the close of business on Thursday, March 7, 2024, plaintiffs filed motions for a temporary restraining order and a preliminary injunction, urging that the district court issue injunctive relief on a highly expedited basis before the 2024 Rule went into effect the following Monday. The district court properly denied those motions for lack of irreparable harm.

First, despite their claimed urgency, plaintiffs failed to identify any tangible, non-speculative injury arising from the 2024 Rule, much less any irreparable harm that would occur (as they claimed) immediately after the rule went into effect. Instead, plaintiffs' theory of harm was based entirely on speculative concerns and conclusory claims about the rule's potential future effects on their businesses. For example, in declarations accompanying their motions, plaintiffs stated that they would incur "substantial financial injury" because the Rule "threatens" to upend their business

16

operations by "potentially" driving many independent contractors out of business. *E.g.*, ROA.144. Notably, however, plaintiffs did not provide any evidence or argument that this was the likely—as opposed to merely possible or speculative—result of the 2024 Rule. Plaintiffs' theory of harm is thus far too speculative to support standing to pursue injunctive relief, a fact which supplies an independent basis to affirm the district court's denial of plaintiffs' motion for a preliminary injunction. *E.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (standing to pursue injunctive relief requires a showing that plaintiffs are "immediately in danger of sustaining some direct injury" that is "real and immediate, not 'conjectural' or 'hypothetical'"); ROA.315 (finding that, although the plaintiffs may have shown "potential" harm, "there's no immediate threat of harm or immediate harm").

Even if plaintiffs' alleged "potential" injury was sufficient to support standing, plaintiffs failed to carry their burden to clearly show that any concrete, non-speculative harm was likely to occur before a decision could be reached on the merits. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." (alteration in original) (quoting 11A Charles A. Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995)). The district court thus properly determined that plaintiffs had failed to demonstrate irreparable harm, stating that—if any of the plaintiffs in fact faced any cognizable injury from the rule—the ordinary course of

litigation would provide them an "adequate opportunity" to show specifically "what the harm is" and "how [they] ha[ve] been harmed." ROA.315.

Plaintiffs' opening brief fails to demonstrate that the district court abused its discretion. *Anderson v. Jackson*, 556 F.3d 351, 355-56 (5th Cir. 2009) ("Only under 'extraordinary circumstances' will we reverse the denial of a preliminary injunction."). As an initial matter, plaintiffs never explain why they waited until March 7—two months after the 2024 Rule was published and a full month after the original complaint was filed—to seek injunctive relief. Plaintiffs' unexplained delay undercuts their unsubstantiated claim that they faced irreparable harm immediately after the rule went into effect on Monday, March 11, 2024. *E.g.*, *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (delay in seeking relief demonstrates there is no apparent urgency to the plaintiffs' request); *Gordon v. Holder*, 632 F.3d 722, 725 (D.C. Cir. 2011) (explaining that delay "may support a conclusion that the plaintiff cannot satisfy the irreparable harm prong"); *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (affirming denial of injunctive relief where movant, among other things, delayed three months before making a request).

Plaintiffs' opening brief asserts—in a single sentence—that irreparable harm was adequately supported by declarations accompanying their motions for injunctive relief because the declarants stated that plaintiffs "would" incur "substantial financial injury" from the rule without any further explanation or evidence to support this conclusory claim. Br. 31-32. The district court considered these declarations and

properly found them insufficient to carry plaintiffs' burden to clearly demonstrate irreparable harm. *Anderson*, 556 F.3d at 360 (explaining that a preliminary injunction "should only be granted when the movant has clearly carried the burden of persuasion"). Plaintiffs' reliance on the conclusory and unsubstantiated statements contained in these declarations does not demonstrate clear error in the district court's finding that they failed to meet their burden of persuasion. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (holding that clear error exists only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *Cooper v. Harris*, 581 U.S. 285, 293 (2017) ("A finding that is 'plausible' in light of the full record—even if another is equally or more so—must govern.").

Plaintiffs also do not demonstrate that the district court abused its discretion through their new theory that the Department "conceded" that employers would incur irreparable compliance costs in the text of the 2024 Rule. Br. 31. The passage on which plaintiffs rely merely acknowledges that some establishments will incur "familiarization costs . . . associated with reviewing the new regulation" in the rule's first year. 89 Fed. Reg. at 1733. In that passage, the Department estimated that establishments would spend, on average, not more than one hour reviewing the rule, and it attempted to quantify the cost of that time across all industries. *Id.* But plaintiffs never argued in district court that a preliminary injunction was necessary to avoid any minor costs they personally might incur reviewing the rule. And—in

19

addition to having failed to raise this theory in district court—the fact *some* establishments may incur familiarization costs does not show that *plaintiffs* will suffer irreparable harm.  To the contrary, it is likely that plaintiffs reviewed and familiarized themselves with the rule at some point prior to filing this lawsuit; any reasonable familiarization costs have thus already been incurred and can supply no basis for prospective injunctive relief.

**II.**  Because plaintiffs have not established that the district court abused its discretion in denying their motion for lack of irreparable harm, this Court should affirm.  But even if this Court were to conclude that the district court abused its discretion under the circumstances presented, plaintiffs' request that this Court affirmatively grant a preliminary injunction without the benefit of findings of fact and conclusions of law on the remaining preliminary injunction factors is misplaced.  *See, e.g.*, *Stringer v. Town of Jonesboro*, 986 F.3d 502, 509 (5th Cir. 2021) ("As we have repeatedly observed, we are a court of review, not first view." (quoting *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 249 n.7 (5th Cir. 2020)).

That is particularly true because of the procedural posture in which this appeal arises.  As noted, because plaintiffs inexplicably delayed seeking injunctive relief and requested the district court grant that relief in the form of a temporary restraining order on a highly expedited basis, the district court was called upon to address plaintiffs' claim of irreparable harm within a single business day before the rule was to take effect.  The court accordingly denied plaintiffs' motion for a preliminary

injunction before the government had an opportunity to file a response to that motion in accordance with the court's local rules. Under these circumstances, if this Court does not affirm, remand clearly "would serve [a] useful purpose." *Sierra Club, Lone Star Chapter v. Federal Deposit Ins. Corp.*, 992 F.2d 545, 551 (5th Cir. 1993) (quoting *White v. Carlucci*, 862 F.2d 1209, 1210 n.1 (5th Cir. 1989)). It would permit the district court to develop a factual and legal record—including, if necessary, through an evidentiary hearing—before rendering appropriate findings of facts and conclusions of law with the benefit of full briefing. The government thus respectfully reserves for remand all arguments regarding the remaining preliminary injunction factors, as well as any arguments regarding the appropriate scope of relief; those arguments should be properly presented to and considered by the district court in the first instance.

## STANDARD OF REVIEW

A preliminary injunction is considered an "'extraordinary and drastic remedy'" that is not granted routinely, but only when the movant "has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quoting *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir. 1985)). To obtain a preliminary injunction, the plaintiff must show: (1) a substantial likelihood that it will prevail on the merits, (2) a substantial threat that it will suffer irreparable injury in the absence of an injunction, (3) that the threatened injury outweighs the threatened harm the injunction may do to the defendant, and (4) that granting the preliminary

injunction will not disserve the public interest. *Id.* (citing *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).

This Court reviews the district court's determination "on each of the[] [preliminary injunction] elements for clear error, its conclusions of law de novo, and the ultimate decision whether to grant relief for abuse of discretion." *Google, Inc. v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016). Because the decision to grant a preliminary injunction is "to be treated as the exception rather than the rule," *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985), this Court will "reverse the denial of a preliminary injunction only under extraordinary circumstances," *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989).

## ARGUMENT

A preliminary injunction is an "extraordinary remedy" that may not be granted unless the movant establishes (among other things) that it is "likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (quotation marks omitted). The district court here correctly found that plaintiffs had failed to make this showing. The court therefore properly denied plaintiffs' motion for a preliminary injunction without addressing the plaintiffs' likelihood of success on the merits or the other equitable factors.

## I. The District Court Did Not Abuse Its Discretion in Denying Plaintiffs' Eleventh-Hour Request for a Preliminary Injunction

### A. The District Court Properly Concluded that Plaintiffs Did Not Meet Their Burden to Clearly Show Irreparable Harm

The district court properly found that plaintiffs have not met their burden to show that a preliminary injunction is necessary to avoid a concrete, non-speculative risk of future irreparable harm. To establish standing to pursue prospective injunctive relief, a plaintiff must demonstrate that they are "immediately in danger of sustaining some direct injury" that is "'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (first quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923); and then quoting *Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969)). And where standing turns on a claim of future injury, the threatened injury must be "certainly impending" or there must be a "'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2021)); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) (a plaintiff seeking injunctive relief to avoid a "risk of future harm" must show that the risk "is sufficiently imminent and substantial"); *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019). "Allegations of only a 'possible' future injury . . . will not suffice." *Abdullah v. Paxton*, 65 F.4th 204, 208 (5th Cir.) (per curiam) (quoting *Clapper*, 568 U.S. at 409), *cert. denied*, 144 S. Ct. 188 (2023)

Even where a plaintiff has identified a future injury that is "sufficiently imminent and substantial" to support standing, *TransUnion*, 594 U.S. at 435, that injury

23

cannot supply the basis for a preliminary injunction unless the plaintiff "clearly carrie[s] the burden of persuasion," *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009), to show that the threatened injury is "irreparable" and will "likely" be incurred "before a decision on the merits can be rendered," *Winter*, 555 U.S. at 22 (quotation marks omitted).  Plaintiffs have not made that showing.

**1.**  At issue in this case is a regulation which sets forth an interpretive guidance explaining how the Department will analyze the question whether, as a matter of economic reality, a worker is dependent upon an employer for work (and thus is an employee) or is in business for themself (and thus is an independent contractor) under the FLSA.  That regulation has two operative parts.

First, the 2024 Rule rescinds a prior regulation published in January 2021, which the Department found deviated from judicial precedent and the Department's longstanding practice.  As the 2024 Rule's preamble explains, courts analyzing whether a worker is an employee or independent contractor under the FLSA have historically and uniformly conducted a multifactor, totality-of-the-circumstances analysis, with no one factor or set of factors having dispositive weight.  89 Fed. Reg. at 1638, 1641-42; *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379-80 (5th Cir. 2019) (holding that several factors "guide" the inquiry of whether "employees, as a matter of 'economic reality,' are 'economically dependent' on the business to which they supply their labor and services," that "[n]o single factor is determinative," and that it is "impossible to assign to each of these factors a specific and invariably applied

weight" (alteration in original) (first quoting *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043 (5th Cir. 1987); then quoting *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008); then quoting *Hickley v. Arkla Indus., Inc.*, 699 F.2d 748, 752 (5th Cir. 1983)).[5]  In accordance with those decisions, the Department had long employed a totality-of-the-circumstances approach to analyzing worker classifications, providing no factor or factors any predetermined weight.  89 Fed. Reg. at 1642-44 (describing history of Department's prior subregulatory guidance); *see also supra* pp. 3-8.

The 2021 Rule recognized that the appropriate question under the FLSA is whether, as a matter of economic reality, a worker is dependent on an employer for work.  However, the 2021 Rule's articulation of how to conduct that economic-reality analysis deviated from judicial precedent interpreting the FLSA and the Department's longstanding practices in significant respects.  Namely, the 2021 Rule predetermined that two "core factors" should generally carry a greater weight than the others, and it precluded consideration of certain facts that courts have previously considered

---

[5]  *See also Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055 (6th Cir. 2019) ("None of these factors is determinative on its own, and each must be considered 'with an eye toward the ultimate question—[the worker's] economic dependence on or independence from' the alleged employer." (alteration in original)); *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1235 (10th Cir. 2018) ("The overarching inquiry is based on the totality of the circumstances, and no single factor is dispositive."); *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 n.2 (11th Cir. 2013) ("The weight of each factor . . . depends on the facts of the case."); *Morrison v. International Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988) (per curiam); *Secretary of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987).

relevant to the question of economic dependence. *See* 89 Fed. Reg. at 1644-45, 1649-53. Because the 2021 Rule's predetermined and mechanical weighing of factors is at odds with how courts and the Department have, for decades, applied the economic reality analysis, the Department determined that rule should be rescinded. *Id.* at 1651.

Second, the 2024 Rule set forth a new interpretive guidance more consistent with judicial precedent and the Department's longstanding practice. *See* 29 C.F.R. § 795.100 (stating that the rule provides only "general interpretations" that will "guide" the Administrator of the Wage and Hour Division in "the performance of their duties," and that likewise can serve as meaningful guidance for employees, employers, and courts). That portion of the rule reiterates that the ultimate test is whether, as a matter of economic reality, the worker is dependent upon the employer for work. *Id.* § 795.105(b). It lists six non-exhaustive factors derived from judicial precedent as relevant to that inquiry, *id.* § 795.110(b), and states that these factors do not have any predetermined weight and should not be applied mechanically, *id.* § 795.110(a)(2). Rather, the factors serve merely as "tools or guides" to analyze whether, under the totality of the circumstances, a worker is economically dependent on the potential employer for work. *Id.* § 795.110(a)(1). The Department also made clear that the decision to promulgate a new regulation is separate and severable from the decision to rescind the 2021 Rule. *Id.* § 795.115; 89 Fed. Reg. at 1724-25.

**2.** Plaintiffs are transportation companies (and an association that represents such companies) who hire independent contractors and, in most cases, "in-house"

(presumably employee) drivers as well. In the district court, plaintiffs claimed that injunctive relief was needed on a highly expedited basis on the theory that they would be imminently and irreparably injured as soon as the 2024 Rule went into effect on March 11, 2024. Despite plaintiffs' claimed urgency, however, plaintiffs provided no evidence that they faced any "real and immediate," non-conjectural harm arising from the interpretive guidance contained in the 2024 Rule, *Lyons*, 461 U.S. at 102 (quoting *Golden*, 394 U.S. at 109), or that any such harm would likely be incurred before a decision on the merits could be rendered, *see* ROA.315 (finding that plaintiff had not shown any "immediate threat of harm or immediate harm," and "if there is harm, there's adequate opportunity for the person who is harmed to show specifically what the harm is and how the individual has been harmed").

To the contrary, plaintiffs repeatedly characterized the harm they faced as merely "potential[]" harm that might (or might not) occur at some unspecified point in the future. *E.g.,* ROA.100, 101, 102, 103-04, 105 (Compl. ¶¶ 55, 62, 70, 78, 87); ROA.153 (motion for temporary restraining order); ROA.186 (motion for preliminary injunction). The declarations they provided in support of their motions similarly consisted of speculative and conclusory claims about this potential injury. For example, the declarations each repeated the claim that plaintiffs "will incur substantial financial injury" at some unspecified point in the future, because the 2024 Rule "threatens" to upend their business operations by "potentially" driving many independent contractors out of business. ROA.128, 131, 136, 139, 144. Notably,

however, plaintiffs did not provide any evidence or argument that this was a likely—as opposed to the merely possible or speculative—consequence of the 2024 Rule. *E.g.*, *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022) ("[Irreparable] harm, however, must be more than 'speculative; there must be more than an unfounded fear on the part of the applicant.'"); *Earl v. Boeing Co.*, 21 F.4th 895, 902 n.3 (5th Cir. 2021) (Elrod, J., concurring in part and dissenting in part) ("[S]peculation about irreparable harm is not irreparable harm.").

In other words, as the district court found, plaintiffs' submissions raised only the specter of a "potential" future injury based on speculative fears about the 2024 Rule's effect on independent contractors and how hypothetical changes resulting from the rule might impact plaintiffs' businesses. ROA.315. That kind of hypothetical harm based on a "speculative view of the distant future" is insufficient to support standing to pursue injunctive relief. *Abdullah*, 65 F.4th at 208-09 ("Allegations of only a 'possible' future injury" do not suffice to establish standing.). Plaintiffs' failure to clearly demonstrate standing supplies an independent basis to affirm the district court's denial of plaintiffs' motion for a preliminary injunction. *See, e.g.*, *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) ("Because a preliminary injunction 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief,' the plaintiffs must make a 'clear showing' that they have standing to maintain the preliminary injunction." (quoting *Winter*, 555 U.S. at 22)).

In any event, plaintiffs' speculation about the possible economic effects of the rule did not satisfy their burden to make a "clear showing" that any concrete, non-speculative harm was both irreparable and likely to occur before a decision could be reached on the merits. *See Winter*, 555 U.S. at 375 ("'[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." (alteration in original) (quoting 11A Wright, et al., *supra* § 2948.1)). To the contrary, as the district court recognized, plaintiffs' conjecture that the 2024 Rule "threatens" widespread worker reclassification or business restructuring is particularly implausible given that the 2024 Rule merely "resurrect[ed]" a position that had been in effect for "70 or 80 years" prior to the 2021 Rule. ROA.315. Independent contractors (and plaintiffs themselves) operated for years prior to the 2021 Rule, apparently unharmed by the very same economic reality analysis embodied in the 2024 Rule.

Plaintiffs' speculation that the 2024 Rule will put independent contractors out of business is also unfounded in light of what the 2024 Rule actually says. As the Department explained, the 2024 Rule "is not intended to disrupt the businesses of independent contractors who are, as a matter of economic reality, in business for themselves." 89 Fed. Reg. at 1638. The rule instead provides guidance "for those businesses that engage (or wish to engage) independent contractors as well as for those who wish to work as independent contractors" as to how to determine whether a worker is in fact working as an independent contractor. *Id.* at 1640.

In addition to plaintiffs' failure to substantiate their speculation about the widespread economic consequences of the rule, plaintiffs failed to provide any evidence demonstrating that *they* will have to take any action or otherwise suffer harm to comply with the 2024 Rule. *See Winter*, 555 U.S. at 20 (holding that plaintiff must establish that "*he* is likely to suffer irreparable harm" (emphasis added)). For one thing, as noted, the 2024 Rule is derived from "the same analysis that courts have applied for decades and have been continuing to apply since the [2021 Rule] took effect." 89 Fed. Reg. at 1727. Accordingly, if plaintiffs' workers are correctly classified under existing judicial precedent, then that classification should not change because of the 2024 Rule.

In fact, plaintiffs have *never* suggested that they personally have reclassified or will likely reclassify any workers because of the 2024 Rule. Indeed, despite plaintiffs' asserted "reliance" on the 2021 Rule to classify their workers, *e.g.*, Br. 4, none of the plaintiffs—who collectively represent a multitude of transportation companies in operation since long before the 2021 Rule was published—identified a single instance in which they reclassified a worker in reliance on the 2021 Rule's analysis or made any changes to their business practices during the short period that rule was deemed to be in effect.[6] Likewise, plaintiffs have not identified a *single* worker or independent

---

[6] The 2021 Rule was published with an effective date of March 8, 2021. In separate rulemaking, the Department delayed that effective date and, later, withdrew the rule. 86 Fed. Reg. 12,535 (Mar. 4, 2021); 86 Fed. Reg. 24,303 (May 6, 2021).

*Continued on next page.*

contractor they believe would or should be reclassified as an employee under the 2024 Rule. Plaintiffs thus have provided no evidence suggesting that they have been or will likely be harmed in any tangible manner by the revocation of the 2021 Rule or its replacement with the 2024 Rule. Accordingly, the district court properly found that plaintiffs had not met their burden to show irreparable harm. As the district court explained, if any of the plaintiffs are harmed in some cognizable manner, the ordinary course of litigation will provide an "adequate opportunity for the person who is harmed to show specifically what the harm is and how the individual has been harmed." ROA.315.[7]

### B. Plaintiffs' Delay in Seeking Injunctive Relief Further Undercuts Their Unsubstantiated Claim of Irreparable Harm

Plaintiffs' lack of irreparable harm is further demonstrated by their unexplained delay in seeking injunctive relief. It is well established that delay in seeking injunctive

---

Nearly a year later, in March 2022, a federal district court issued a decision vacating the delay and withdrawal rules. *CWI*, No. 1:21-CV-130, 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022), *vacated per curiam*, No. 22-40316, 2024 WL 2108472 (5th Cir. Feb. 19, 2024). Although that court concluded that—as a technical matter—the 2021 Rule "became effective as of March 8, 2021, the rule's original effective date," *id.* at *20, it is difficult to see how—as a practical matter—plaintiffs could have "relied" on the 2021 Rule, Br. 4, at any point prior to the *CWI* decision in March 2022. In addition, this Court vacated the *CWI* decision in February 2024.

[7] Although plaintiffs claimed in district court that injunctive relief was needed on a highly expedited basis before the 2024 Rule went into effect, plaintiffs' opening brief—which was filed months after the 2024 Rule's effective date—does not even attempt to argue that, in the interim, plaintiffs have actually incurred some specific, cognizable injury.

relief can militate against the issuance of a preliminary injunction. That is because preliminary injunctions are "generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985). Absent a good explanation, delay in seeking relief demonstrates that there is no apparent urgency to the plaintiff's request. *E.g., id.*; *Gordon v. Holder*, 632 F.3d 722, 725 (D.C. Cir. 2011) (explaining that delay "may support a conclusion that the plaintiff cannot satisfy the irreparable harm prong"); *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (affirming denial of injunctive relief where movant, among other things, delayed three months before making request); *see also* 11A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed.), Westlaw (database updated June 2024).

Here, on the same day that plaintiffs filed their motion for a preliminary injunction, plaintiffs filed a motion for a temporary restraining order, claiming that the district court needed to consider their allegations of irreparable harm and universally enjoin the 2024 Rule before it went into effect one business day later on March 11, 2024. ROA.118. But if relief were so urgently needed, then plaintiffs could have— and should have—filed a request for injunctive relief well in advance of the rule's effective date to ensure that their request would be fully briefed and considered before then. Indeed, plaintiffs were fully aware of the rule's effective date when the rule issued on January 10, 2024. Plaintiffs were likewise fully aware of the rule's effective date when their original complaint was filed on February 8, 2024. Despite

this, plaintiffs inexplicably waited until the last possible moment—the evening of Thursday, March 7, 2024—to request injunctive relief, and simultaneously filed a motion for a temporary restraining order asking the court to grant that relief on a highly expedited basis.

The district court properly declined to award plaintiffs' manufactured emergency with a temporary restraining order and preliminary injunction. *See, e.g.*, *Natural Res. Def. Council v. Pena*, 147 F.3d 1012, 1026 (D.C. Cir. 1998) ("If the plaintiff has failed to prosecute its claim for injunctive relief promptly, and if it has no reasonable explanation for its delay, the district court should be reluctant to award relief."); *Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) ("Equity demands that those who would challenge the legal sufficiency of administrative decisions . . . do so with haste and dispatch."). That decision did not amount to an abuse of discretion, particularly not where, as discussed, plaintiffs supplied no evidence to support their claim that they would be irreparably harmed as soon as the 2024 Rule went into effect.

### C.    Plaintiffs Have Not Demonstrated that the District Court Abused Its Discretion

Although irreparable harm was the sole question decided by the district court, plaintiffs' brief on appeal dedicates only a few short paragraphs (Br. 31-32) to that issue. Plaintiffs' brief arguments do not demonstrate that the district court abused its

discretion. *Anderson*, 556 F.3d at 355-56 ("Only under 'extraordinary circumstances' will we reverse the denial of a preliminary injunction.").

In a single sentence of their opening brief, plaintiffs reassert the claim that they will be irreparably harmed absent a preliminary injunction "because the 2024 Rule will cause them substantial financial injury with no guarantee of eventual recovery." Br. 31. Notably, however, plaintiffs' brief does not identify any specific record evidence to support that claim. It does not, for example, particularly identify these alleged financial injuries or explain how they are the likely (rather than merely the possible or speculative) result of the rule. *See Abdullah*, 65 F.4th at 208 ("Allegations of only a 'possible' future injury . . . will not suffice."). And plaintiffs certainly do not identify any evidence tending to show that these unspecified financial injuries are likely to be incurred before a decision on the merits can be reached.

Indeed, the *only* record evidence that plaintiffs cite in their opening brief is the fact that they filed purportedly "unopposed" declarations which cursorily stated that plaintiffs "would incur" substantial financial injuries because of the rule. Br. 31-32. As discussed above, however, that claim is based on plaintiffs' unsubstantiated conjecture about the potential economic effects of the rule. *See supra* pp. 22-31. Plaintiffs have never claimed that they have *actually* incurred (or will likely incur) any monetary injury complying with some new legal requirement contained in the rule. Nor could plaintiffs plausibly make such a claim, given that they challenge an

interpretive guidance that uses "the same analysis that courts have applied for decades." 89 Fed. Reg. at 1658.

Furthermore, plaintiffs' assertion that their declarations were "unopposed" simply because the government did not provide any declarations of its own (Br. 5, 31) ignores the relevant burden of proof. To obtain a preliminary injunction, plaintiffs must "clearly carr[y] the burden of persuasion" on standing and irreparable harm. *Anderson*, 556 F.3d at 360. And the only question on appeal is whether the district court's finding that plaintiffs had not met this burden is "'plausible' in light of the full record." *Cooper v. Harris*, 581 U.S. 285, 293 (2017) ("A finding that is 'plausible' in light of the full record—even if another is equally or more so—must govern."); *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (holding that clear error exists only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (quotation marks omitted)). Plaintiffs' bare citation to speculative and unsubstantiated statements in declarations that the district court found insufficient to carry plaintiffs' burden does not establish that the district court abused its discretion. *Anderson*, 556 F.3d at 355-56 ("Only under 'extraordinary circumstances' will we reverse the denial of a preliminary injunction.").

Plaintiffs do not support their contrary argument through their new theory— one not raised in their motion for a preliminary injunction or accompanying declarations—that the Department allegedly "conceded" that establishments would incur irreparable harm in the form of compliance costs. Br. 31. In support of this,

plaintiffs cite a portion of the preamble to the 2024 Rule acknowledging that *some* employers would incur "familiarization costs . . . associated with reviewing the new regulation" in its first year. 89 Fed. Reg. at 1733. In that passage, the Department estimated that establishments would spend "on average about 1 hour to review the rule," and it attempted to quantify the total cost of that time across all industries. *Id.* The Department also stated, however, that many establishments will spend "little or no time reviewing the rule," particularly given that the analysis outlined in the rule "aligns with existing judicial precedent . . . with which much of the regulated community is already familiar." *Id.*

Plaintiffs' reliance on this passage does not establish that the district court abused its discretion. For one thing, plaintiffs never advanced this theory of harm in district court. Neither plaintiffs' motions for injunctive relief nor their accompanying declarations mention familiarization costs, nor have plaintiffs ever argued that a preliminary injunction should issue so that they do not have to incur familiarization costs.

Moreover, the Department's acknowledgement that *some* establishments may incur one-time familiarization costs does not show that *plaintiffs* face irreparable harm. Irreparable harm is a plaintiff-focused inquiry; the question is whether plaintiffs—not some other, unspecified establishment—is being threatened by some imminent and irreparable injury. *See Winter*, 555 U.S. at 20 (holding that plaintiff must establish that "*he* is likely to suffer irreparable harm" (emphasis added)). Plaintiffs cannot make that

showing simply by citing the Department's acknowledgement that some—but not all—establishments will incur familiarization costs.  *See* 89 Fed. Reg. at 1733.  Indeed, it stands to reason that plaintiffs reviewed the rule at some point prior to filing this lawsuit; any potential familiarization costs have already been incurred and can supply no basis for prospective injunctive relief.

## II.    The Remaining Preliminary Injunction Factors Are Not Properly Before This Court

As discussed above, plaintiffs have failed to identify clear error in the district court's factual findings regarding irreparable harm, and they have not shown that the district court's decision to deny their eleventh-hour request for a preliminary injunction constituted an abuse of discretion.  To the extent this Court disagrees, however, the appropriate course of action is to remand to the district court for full briefing and consideration of the remaining preliminary injunction factors.  *See, e.g.*, *Stringer v. Town of Jonesboro*, 986 F.3d 502, 509 (5th Cir. 2021) ("As we have repeatedly observed, we are a court of review, not first view." (quotation marks omitted)).

Indeed, because plaintiffs inexplicably delayed seeking injunctive relief until one business day before they claimed such relief was necessary, the district court denied plaintiffs' motions seeking injunctive relief for lack of irreparable harm before the government had an opportunity to file an opposition to plaintiffs' motion for a preliminary injunction in accordance with the court's local rules.  *See, e.g.*, ROA.314 (government counsel stating during the hearing that plaintiffs had not shown

irreparable harm, which supplied a basis to deny the motions for a temporary restraining order and a preliminary injunction, but that counsel was not "prepared to argue the merits" because plaintiffs "filed their amended complaint and this [temporary restraining order] motion after business hours yesterday"). In light of this procedural history, plaintiffs' request that this Court address the merits or balance the relevant equities in the first instance is unsound.

Particularly egregious is plaintiffs' request that this Court *itself* issue a universal preliminary injunction without the benefit of an appropriately developed factual and legal record. As this Court has recognized, the decision to grant a preliminary injunction is "to be treated as the exception rather than the rule," *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985), and this Court reverses a district court's denial of a preliminary injunction "[o]nly under 'extraordinary circumstances,'" *Anderson*, 556 F.3d at 355-56. Because of this, as plaintiffs appear to acknowledge (Br. 33), remand is the appropriate course of action in all but the rarest of circumstances where it is exceptionally clear that remand "would serve no useful purpose," *Sierra Club, Lone Star Chapter v. Federal Deposit Ins. Corp.*, 992 F.2d 545, 551 (5th Cir. 1993) (quoting *White v. Carlucci*, 862 F.2d 1209, 1210 n.1 (5th Cir. 1989)).

Here, if this Court does not affirm, remand clearly would "serve [a] useful purpose." *Sierra Club*, 992 F.2d at 551 (quoting *White*, 862 F.2d at 1210 n.1). It would permit the government the opportunity to file an opposition to plaintiffs' motion for

a preliminary injunction in accordance with the court's local rules, and likewise, permit the district court to appropriately develop a factual and legal record—including, if necessary, through an evidentiary hearing—before rendering a decision on the remaining preliminary injunction factors in the first instance. The government therefore respectfully reserves for potential remand all arguments regarding the remaining preliminary injunction factors, as well as all arguments regarding the appropriate scope of relief, which should properly be presented to the district court in the first instance. The government expects that, if a remand is necessary, the district court will be able to proceed expeditiously.

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

*Of Counsel:*

DUANE A. EVANS
*United States Attorney*

SEEMA NANDA
*Solicitor of Labor*
*U.S. Department of Labor*

MICHAEL S. RAAB

*s/ Jennifer L. Utrecht*

JENNIFER L. UTRECHT
*Attorneys, Appellate Staff*
*Civil Division, Room 7710*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-9039*
*Jennifer.l.utrecht@usdoj.gov*

August 2024

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.


*s/ Jennifer L. Utrecht*
Jennifer L. Utrecht

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,165 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Jennifer L. Utrecht*
Jennifer L. Utrecht