No. 24-30223

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

FRISARD'S TRANSPORTATION, L.L.C.; LOUISIANA MOTOR TRANSPORT ASSOCIATION, INCORPORATED; A & B GROUP, INCORPORATED; TRIPLE G EXPRESS, INCORPORATED; NORTHLAKE MOVING AND STORAGE, INCORPORATED,

*Plaintiffs-Appellants*,

v.

UNITED STATES DEPARTMENT OF LABOR; JULIE A. SU, ACTING SECRETARY, U.S. DEPARTMENT OF LABOR; JESSICA LOOMIN, IN HER OFFICIAL CAPACITY AS ADMINISTRATOR OF THE WAGE AND HOUR DIVIVION; UNITED STATES DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:24-cv-00347-L   Hon. Eldon E. Fallon

## BRIEF OF AMICI CURIAE NATIONAL EMPLOYMENT LAW PROJECT AND PUBLIC CITIZEN IN SUPPORT OF DEFENDANTS-APPELLEES

Adam R. Pulver
Michael T. Kirkpatrick
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

August 23, 2024                    Counsel for Amici Curiae

# AMICI CURIAE'S SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS PURSUANT TO FIFTH CIRCUIT RULE 29.2

---

No. 24-30223

---

FRISARD'S TRANSPORTATION, L.L.C.; LOUISIANA MOTOR TRANSPORT ASSOCIATION, INCORPORATED; A & B GROUP, INCORPORATED; TRIPLE G EXPRESS, INCORPORATED; NORTHLAKE MOVING AND STORAGE, INCORPORATED,

*Plaintiffs-Appellants*,

v.

UNITED STATES DEPARTMENT OF LABOR; JULIE A. SU, ACTING SECRETARY, U.S. DEPARTMENT OF LABOR; JESSICA LOOMIN, IN HER OFFICIAL CAPACITY AS ADMINISTRATOR OF THE WAGE AND HOUR DIVIVION; UNITED STATES DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION,

*Defendants-Appellees*.

---

Pursuant to this Court's Rule 29.2 and Federal Rule of Appellate Procedure 26.1, amicus curiae Public Citizen submits this supplemental certificate of interested persons to fully disclose all those with an interest in the amicus brief and provide the required information as to their corporate status and affiliations.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case, in addition to those listed in

i

the briefs of the parties. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

A.    Amicus curiae **Public Citizen, Inc.**, is a non-profit, non-stock corporation. It has no parent corporation, and no publicly traded corporation has an ownership interest in it of any kind.

B.    Amicus curiae **National Employment Law Project** is a non-profit, non-stock corporation. It has no parent corporation, and no publicly traded corporation has an ownership interest in it of any kind.

C.    Amici curiae are represented by **Adam R. Pulver** and **Michael T. Kirkpatrick** of **Public Citizen Litigation Group**, which is a non-profit, public interest law firm that is part of **Public Citizen Foundation, Inc.**, a non-profit, non-stock corporation that has no parent corporation and in which no publicly traded corporation has an ownership interest of any kind.

/s/ Adam R. Pulver
Adam R. Pulver
*Counsel for Amici Curiae*

August 23, 2024

# TABLE OF CONTENTS

AMICI CURIAE'S SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS PURSUANT TO FIFTH CIRCUIT RULE 29.2 ...................................................................................... i

TABLE OF AUTHORITIES ................................................................ iv

INTEREST OF AMICI CURIAE ........................................................ 1

INTRODUCTION .............................................................................. 3

ARGUMENT ...................................................................................... 6

I.   Worker misclassification is a persistent, serious problem. ............. 7

II.  The 2024 Rule is a reasonable step to eliminate the increased risk of worker misclassification created by the 2021 Rule. .................. 11

CONCLUSION ............................................................................... 177

CERTIFICATE OF SERVICE ........................................................... 18

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT .... 19

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Associated Gas Distributors v. FERC*,
   824 F.2d 981 (D.C. Cir. 1987) ................................................................16

*Beliz v. W.H. McLeod & Sons Packing Co.*,
   765 F.2d 1317 (5th Cir. 1985) ..............................................................13

*Carrell v. Sunland Construction, Inc.*,
   998 F.2d 330 (5th Cir. 1993) ..................................................................5

*Hobbs v. Petroplex Pipe & Construction, Inc.*,
   946 F.3d 824 (5th Cir. 2020) ..................................................................3

*Nationwide Mutual Insurance Co. v. Darden*,
   503 U.S. 318 (1992) ............................................................................3, 7

*New York v. U.S. Nuclear Regulatory Commission*,
   824 F.3d 1012 (D.C. Cir. 2016) ............................................................16

*Parrish v. Premier Directional Drilling, L.P.*,
   917 F.3d 369 (5th Cir. 2019) ..............................................................4, 5

*Rutherford Food Corp. v. McComb*,
   331 U.S. 722 (1947) ................................................................................7

*Tony & Susan Alamo Foundation v. Secretary of Labor*,
   471 U.S. 290 (1985) ..............................................................................10

*United States v. Rosenwasser*,
   323 U.S. 360 (1945) ............................................................................3, 7

*United States v. Silk*,
   331 U.S. 704 (1947) ................................................................................5

*Walling v. Portland Terminal Co.*,
  330 U.S. 148 (1947) .............................................................................. 12

**Statutes**

29 U.S.C. § 202(a) ........................................................................... 7, 10

29 U.S.C. §§ 203(g), (e) ......................................................................... 7

**Rules and Regulations**

29 C.F.R. §§ 795.105(c)–(d) (2021) ...................................................... 4

29 C.F.R. § 795.106(c) (2021) .............................................................. 4

29 C.F.R. § 795.110(a) .......................................................................... 5

29 C.F.R. § 795.110(b)(7) ...................................................................... 5

Department of Labor, Final Rule, Employee or Independent Contractor
  Classification Under the Fair Labor Standards Act,
  89 Fed. Reg. 1638 (Jan. 10, 2024) ........ 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15

Department of Labor, Final Rule, Independent Contractor Status
  Under the Fair Labor Standards Act,
  86 Fed. Reg. 1168 (Jan. 7, 2021) ..................................................... 4, 13

**Comments**

Center for Law and Social Policy and Governing for Impact, Comments
  Regarding DOL's Notice of Proposed Rulemaking on the Employee or
  Independent Contractor Classification Under the Fair Labor
  Standards Act, RIN 1235-AA43 (Dec. 12, 2022),
  https://www.regulations.gov/comment/WHD-2022-0003-53600 ......... 15

International Ass'n of Machinists and Aerospace Workers, AFL-CIO,
  Comments on RIN 1235-AA43, Employee or Independent Contractor

Classification Under the Fair Labor Standards Act (Dec. 13, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53353 .........11

Lawyers' Committee for Civil Rights Under Law and the Washington Lawyers' Committee for Civil Rights and Urban Affairs, Comments on RIN 1235-AA43: Employee or Independent Contractor Classification under the Fair Labor Standards Act (Dec. 13, 2022), https://www.regulations.gov/comment/WHD-2022-0003-52420 ... 12, 15

National Employment Law Project, Comments on RIN 1235-AA43: Employee or Independent Contractor Classification Under the Fair Labor Standards Act (Dec. 13, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53881 ..... 9, 11

Signatory Wall and Ceiling Contractors Alliance, Comments on Proposed Rule Regarding "Employee or Independent Contractor Classification Under the Fair Labor Standards Act" (RIN 1235-AA43) (Nov. 4, 2022), https://www.regulations.gov/comment/WHD-2022-0003-15886, ................................................................ 9, 15

United Brotherhood of Carpenters & Joiners of America, Comments, Employee or Independent Contractor Classification Under the Fair Labor Standards Act (RIN 1235-AA43) (Dec. 1, 2022), https://www.regulations.gov/comment/WHD-2022-0003-44589 .........15

**Other Authorities**

Françoise Carré, *(In)Dependent Contractor*, Economic Policy Institute (Jun. 8, 2015), https://files.epi.org/pdf/87595.pdf ..............................11

Department of Labor, Wage and Hour Division, "Low Wage, High Violation Industries," https://www.dol.gov/agencies/whd/data/charts/low-wage-high-violation-industries ...............................................................9

Treasury Inspector General for Tax Administration, *Additional Actions Are Needed to Make the Worker Misclassification Initiative with the Department of Labor a Success*, 2018-IC-R002 (Feb. 20, 2018),

https://www.tigta.gov/sites/default/files/reports/2022-02/2018IER002fr.pdf.............................................................10

## INTEREST OF AMICI CURIAE[1]

Amicus curiae National Employment Law Project (NELP) is a non-profit legal organization with over fifty years of experience advocating for the employment rights of workers in low-wage industries. NELP seeks to ensure that all employees receive the workplace protections guaranteed in our nation's labor and employment laws, and that all employers comply with those laws, including the child labor, minimum wage, and overtime protections of the Fair Labor Standards Act (FLSA). NELP has litigated directly on behalf of workers misclassified as "independent contractors," submitted amicus briefs in numerous independent contractor cases, testified to Congress regarding the importance and scope of the FLSA's employment coverage, and is an expert in independent contractor misclassification, its magnitude, and its impacts. NELP submitted comments in the rulemaking at issue in this case, and also in the rulemaking that led to the 2021 rule that preceded it.

---

[1] All parties have consented to the filing of this brief. The brief was not authored in whole or part by counsel for a party; no party or counsel for a party contributed money that was intended to fund this brief's preparation or submission; and no person other than the amici curiae, their members, or their counsel contributed money intended to fund the brief's preparation or submission.

Amicus curiae Public Citizen, Inc., a non-profit organization with members in all 50 states, appears before Congress, agencies, and courts on a wide range of issues. Among other things, Public Citizen works for enactment and enforcement of laws to protect workers, consumers, and the public, including federal agency efforts to administer and enforce worker protection statutes such as the FLSA. Public Citizen frequently appears as amicus curiae to address issues of statutory interpretation and administrative law.

Amici agree with DOL that the Court need not address the merits in order to affirm the district court's decision and, should the Court determine that the district court abused its discretion when it concluded that plaintiffs failed to establish irreparable harm, that the Court should remand to the district court to assess the merits in the first instance. Nonetheless, amici submit this brief to ensure that the Court has a complete context for the 2024 rule challenged in this case given the extensive discussion by Appellants and their amici of the merits. Particularly, amici seek to provide the Court with information as to the problem of worker classification and how the 2021 rule that the 2024 rule replaced worsened that problem.

## INTRODUCTION

The FLSA provides vital minimum wage, overtime, and other protections to "employees" and vests authority in the Wage and Hour Administrator, a Department of Labor (DOL) official, to administer the law. Since the FLSA's enactment in 1938, disputes have arisen over whether certain workers are "employees," who are protected by the statute, or are instead "independent contractors," who are not. In resolving such disputes, courts, including the Supreme Court, have relied on the fact that the statutory definition of the term "employee" under the FLSA is one of "striking breadth"—indeed, broader than the definition of that term under other statutes and the common law. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *United States v. Rosenwasser*, 323 U.S. 360, 362, 363 n.3 (1945).

Recognizing this breadth, both the courts and the Department of Labor, for decades, took the view that whether a worker is an employee or an independent contractor is to be analyzed using a holistic assessment of the "economic realities" and considering a non-exhaustive list of factors, without placing a thumb on the scale for any particular factor. *See, e.g.*, *Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824,

829–36 (5th Cir. 2020); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379–88 (5th Cir. 2019). In 2021, though, DOL issued a new interpretation that departed from this longstanding approach, and, in doing so, created employer confusion and risked making the problem of worker misclassification worse. DOL, Final rule, Independent Contractor Status Under the Fair Labor Standards Act, 86 Fed. Reg. 1168 (Jan. 7, 2021). The 2021 Rule confusingly divided the relevant factors into "core" factors and "other" factors to be considered. *Id.* at 1246–47 (29 C.F.R. §§ 795.105(c)–(d) (2021)). While stating that the identified factors were "not exhaustive, and no single factor is dispositive," DOL stated that the new "core" factors— "the nature and degree of control over the work" and "the individual's opportunity for profit or loss"—were deemed "most probative," and suggested that, "if they both point towards the same classification," it was "highly unlikely" that the other factors were relevant. *Id.* at 1246 (§ 795.106(c) (2021)).

In 2024, after a notice-and-comment process, DOL turned away from this "core"/"other" framework and returned to a holistic approach— as it and courts had taken for decades—finding such an approach more consistent with the statute. *See* DOL, Final Rule, Employee or

Independent Contractor Classification Under the Fair Labor Standards Act, 89 Fed. Reg. 1638 (Jan. 10, 2024), *codified at* 29 C.F.R. parts 780, 788, 795. The 2024 Rule accurately reflects the courts' and DOL's longstanding view that, to determine employee status under the FLSA, the "task is to determine whether the individual is, as a matter of economic reality, in business for himself." *Parrish*, 917 F.3d at 379 (quoting *Carrell v. Sunland Constr., Inc.*, 998 F.2d 330, 332 (5th Cir. 1993)). Consistent with the broad statutory definition of "employee," and the longstanding interpretation of the courts, including the Supreme Court and this Court, the Rule identifies "non-exhaustive factors" to be considered as part of a "totality of the circumstances test," while making clear that "no single factor is determinative" and that "the factors should not be applied mechanically." 89 Fed. Reg. at 1742 (§ 795.110(a); (b)(7)); *see also Parrish*, 917 F.3d at 379–80 (applying *United States v. Silk*, 331 U.S. 704, 716 (1947));

DOL's return to this standard was a reasoned approach to the well-documented problem of worker misclassification, and concerns that the 2021 Rule would worsen that problem. As DOL explained, the 2021 Rule allowed employers to make cosmetic changes to remove workers from the

scope of the FLSA and its protections, without actually altering the economic realities. Moreover, as confirmed by comments submitted during the rulemaking, employers misunderstood, and thus were misapplying, the 2021 Rule, thereby wrongfully depriving workers of their statutory protections. As such, DOL had good reason for changing course from the 2021 Rule, and it appropriately considered the impact of doing so on both workers and employers. Thus, the district court was correct in denying plaintiffs' request for a preliminary injunction not only because of their failure to establish irreparable harm, but because plaintiffs were unlikely to succeed on the merits of their claim that the 2024 Rule is arbitrary and capricious.

## ARGUMENT

The 2021 Rule diverged from the courts' and the agency's long-held understanding of the statutory definitions and how to determine whether an individual is an employee by promoting an analysis that was both unduly narrow and unclear. Because the 2021 Rule risked exacerbating the persistent, serious problem of worker misclassification and stripping low-paid workers of the bedrock wage protections afforded by the FLSA, DOL had good reason to rescind the 2021 Rule. Moreover, DOL had good

reason to revert to the multifactor approach DOL and the Courts had taken for decades.

## I.  Worker misclassification is a persistent, serious problem.

Congress enacted the FLSA to combat "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). It did so by providing minimum standards that govern employment, and by adopting broad definitions as to the scope of covered relationships— defining "employ" as "to suffer or permit to work," and an "employee" as "any individual employed by an employer." 29 U.S.C. §§ 203(g), (e). These definitions, borrowed from child labor laws, reflect a "striking breadth" that "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Darden*, 503 U.S. at 326 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947)); *see also Rosenwasser*, 323 U.S. at 362 ("A broader or more comprehensive coverage of employees within the stated categories would be difficult to frame."); 89 Fed. Reg. at 1640 (discussing the breadth of the statutory definition).

Despite the broad scope of the statutory text, not to mention its purpose, many employers have misclassified workers as "independent contractors." 89 Fed. Reg. at 1656 (citing studies and data). Opponents of the 2024 Rule, including employer representatives, conceded this much, "acknowledg[ing] that 'independent contractor status can be abused'" and "that worker misclassification is a pressing issue to be solved at the Federal level." *Id.* at 1657 (quoting comments). "The misclassification of workers as independent contractors is occurring with increased frequency as workplaces fissure, and firms outsource bigger and bigger portions of their workforces to other entities and to workers themselves." *Id.* at 1656 (cleaned up) (quoting comment).

Misclassification both harms workers themselves, denying them the minimum wage, child labor, and overtime protections of the FLSA, and creates competitive advantages over businesses that provide their workers with the benefits Congress directed they provide. *Id.* at 1647, 1657. Workers misclassified as "self-employed" earn significantly less than their employee counterparts, and they are also more likely to be the

victims of wage theft.[2] DOL has found that wage theft is prevalent in the agricultural, retail, food service, hotel, construction, janitorial, landscaping, and beauty and nail salon industries where misclassification is common.[3] *See also* 89 Fed. Reg. at 1657. One construction employer group, for example, estimated that 20 percent of construction workers are misclassified, resulting in a loss of "close to $1 billion in wages annually."[4] Misclassified workers are also wrongfully denied FLSA-mandated break time to pump breast milk, and face a variety of other consequences beyond those directly related to the statute, including "decreased access to employment benefits such as health insurance or retirement benefits, inability to access paid sick leave, unemployment insurance, and workers' compensation, a lack of ability to

---

[2] NELP, Comments on RIN 1235-AA43: Employee or Independent Contractor Classification Under the Fair Labor Standards Act at 4 (Dec. 13, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53881 (citing sources).

[3] DOL, Wage and Hour Div., "Low Wage, High Violation Industries," https://www.dol.gov/agencies/whd/data/charts/low-wage-high-violation-industries.

[4] Signatory Wall and Ceiling Contractors Alliance (SWACCA), Comments on Proposed Rule Regarding "Employee or Independent Contractor Classification Under the Fair Labor Standards Act" (RIN 1235-AA43), at 8 (Nov. 4, 2022), https://www.regulations.gov/comment/WHD-2022-0003-15886 (quoted in 89 Fed. Reg. at 1657).

take collective action to improve workplace conditions, and a lack of anti-discrimination protections under various civil rights laws." 89 Fed. Reg. at 1657. Misclassification is particularly pervasive in low-wage, labor-intensive industries, where workers of color and immigrants are overrepresented. *Id.*

Misclassification of employees as independent contractors also places law-abiding businesses at a competitive disadvantage, in direct contravention of the statute's purpose to combat unfair competition, 29 U.S.C. § 202(a).[5] *See Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985) (noting impact of misclassification of workers on competing businesses). Businesses that misclassify their employees pocket between 20 to 40 percent of payroll costs, which they would otherwise incur for unemployment insurance, workers compensation premiums, the employer share of social security, and health insurance

---

[5] Treasury Inspector General for Tax Administration, *Additional Actions Are Needed to Make the Worker Misclassification Initiative with the Department of Labor a Success* at 1, 2018-IC-R002 (Feb. 20, 2018), https://www.tigta.gov/sites/default/files/reports/2022-02/2018IER002fr.pdf; *see* 2024 Rule, 89 Fed. Reg. at 1646–47.

premiums.[6] Such savings "create[] perverse incentives for companies to misclassify workers," leading to a "race to the bottom."[7]

Misclassification also imposes huge costs on federal and state governments, which lose billions of dollars each year in unreported payroll taxes and unemployment insurance contributions.[8]

## II. The 2024 Rule is a reasonable step to eliminate the increased risk of worker misclassification created by the 2021 Rule.

DOL explained its rescission of the 2021 Rule in part by discussing concerns that the 2021 Rule would lead to increases in worker misclassification, depriving workers of the wages Congress intended they be paid. *See*, *e.g.*, 89 Fed. Reg. at 1656–68. These concerns provide an appropriate reason for DOL to shift course from the 2021 Rule and are supported by the record.

---

[6] Françoise Carré, *(In)Dependent Contractor*, Econ. Policy Inst. at 5 (Jun. 8, 2015), https://files.epi.org/pdf/87595.pdf.

[7] International Ass'n of Machinists and Aerospace Workers, AFL-CIO (IAM), Comments on RIN 1235-AA43, Employee or Independent Contractor Classification Under the Fair Labor Standards Act, at 4 (Dec. 13, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53353 (citation omitted) (quoted in 89 Fed. Reg. at 1657).

[8] NELP Comments at 6–7.

By shifting the focus away from the totality of the circumstances, and focusing on two narrow factors, the 2021 Rule made it easy for employers to exclude workers from coverage with minor, cosmetic changes to the employer-employee relationship—changes that would not have been enough under the broader multi-factor test long applied by courts. The 2021 Rule's focus on control in particular created opportunities for evasion; "[i]n many low-wage industries, it is common for businesses to delegate or relinquish direct or 'actual' control in order to create the illusion of independent contractor status, while maintaining authority over the important terms of the working relationship."[9] As DOL noted, "elevating the importance of control in every FLSA employee or independent contract analysis brought the 2021 Rule closer to the common law control test that courts have rejected when interpreting the Act." 89 Fed. Reg. at 1652–53; *see also Walling v. Portland Terminal Co.*, 330 U.S. 148, 150 (1947) ("[I]n determining who are 'employees' under

---

[9] Lawyers' Committee for Civil Rights Under Law and the Washington Lawyers' Committee for Civil Rights and Urban Affairs (Lawyers' Committee), Comments on RIN 1235-AA43: Employee or Independent Contractor Classification under the Fair Labor Standards Act" at 4 (Dec. 13, 2022), https://www.regulations.gov/comment/WHD-2022-0003-52420; *see also* 89 Fed. Reg. at 1652 (discussing comments raising this concern).

the Act, common law employee categories or employer-employee classifications under other statutes are not of controlling significance."); *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1327 (5th Cir. 1985) (holding that it "is not essential that the [employers] have control over all aspects of the work of the laborers or the contractor" to satisfy the FLSA's definition of employment).

DOL also explained that "[b]y elevating certain factors, devaluing other factors, and precluding the consideration of certain relevant facts," the 2021 Rule "may have led employers to believe the test no longer includes as many considerations." 89 Fed. Reg. at 1658. Indeed, as DOL noted, that the 2021 Rule engendered such a mistaken belief was supported by the fact that, in commenting on the proposed rescission of the 2021 Rule, employer commenters who were in favor of keeping the 2021 Rule themselves expressed different understandings of what it meant. *See id.* at 1656. For example, some commenters viewed the 2021 Rule as not requiring consideration of factors other than the two factors identified by the agency as "core," unless those two factors pointed in different directions; others viewed the Rule as not requiring consideration of the other factors at all. *See id.* (discussing comments).

In addition, some commenters viewed the 2021 Rule as codifying the common-law test, contrary to the statute and despite DOL's insistence in the 2021 Rule that its "standard for employment remains broader than the common law." 86 Fed. Reg. at 1201; *see* 89 Fed. Reg. at 1656. The employers' "confusion and misapplication of [the 2021 Rule] could deprive many workers of protections they are entitled to under the FLSA." 89 Fed. Reg. at 1658. Moreover, the presence of such widespread employer confusion casts serious doubt on Appellants' argument about "reliance." *See* Appellants' Br. 29–30. Employer "reliance" on an incorrect understanding of the 2021 Rule was not a basis to maintain the 2021 Rule.

DOL's concern that that the 2021 Rule would result in increased misclassification was validated by stakeholders who, based on their experiences and knowledge, believed that the 2021 Rule would result in increased misclassification. Commenters identified several specific industries where the 2021 Rule posed such risks. *See* 89 Fed. Reg. at 1657 (discussing such comments). For one, farmworkers were particularly vulnerable to misclassification under the 2021 Rule, as their employment status is particularly dependent on "special skill" and "integral part of

14

the employer's business" factors.[10] "De-emphasizing them in favor of the 'core factors,'" as the 2021 Rule did, "would make it more difficult to determine the status of farmworkers and incentivize farm operators to adopt more exploitative working arrangements like sharecropping."[11] The 2021 Rule also posed an increased risk of misclassification for construction workers; as explained by both employer and worker groups based on their knowledge of the industry, construction businesses were likely to seize upon the 2021 Rule's departures from the broader multi-factor test "to gain or solidify a competitive advantage."[12] In addition to these industry-level concerns, commenters provided specific examples of

---

[10] Center for Law and Social Policy (CLASP) and Governing for Impact (GFI), Comments Regarding DOL's Notice of Proposed Rulemaking on the Employee or Independent Contractor Classification Under the Fair Labor Standards Act, RIN 1235-AA43, at 5 (Dec. 12, 2022), https://www.regulations.gov/comment/WHD-2022-0003-53600.

[11] *Id.* (citation omitted), *quoted in* 89 Fed. Reg. at 1657.

[12] SWACCA Comments at 6; *see also* United Bhd. of Carpenters & Joiners of Am., Comments, Employee or Independent Contractor Classification Under the Fair Labor Standards Act (RIN 1235-AA43), at 4–5 (Dec. 1, 2022), https://www.regulations.gov/comment/WHD-2022-0003-44589 (explaining how 2021 Rule would lead to increased misclassification in the construction industry).

workers who would be harmed by the 2021 Rule and its focus on isolated factors.[13]

DOL was not, as Appellants suggest, required to ground its decision to return to a more holistic standard, like the standard that this Court applied for decades, in "data." Appellants' Br. 27. "An agency does not engage in arbitrary or capricious decision-making by making predictive judgments or even by relying on incomplete data." *New York v. U.S. Nuclear Regul. Comm'n*, 824 F.3d 1012, 1022 (D.C. Cir. 2016) (cleaned up) (citations omitted); *cf. Associated Gas Distribs. v. FERC*, 824 F.2d 981, 1008 (D.C. Cir. 1987) ("Agencies do not need to conduct experiments in order to rely on the prediction that an unsupported stone will fall."). "To the contrary, such judgments are entitled to deference, and a challenge to the agency's assumptions must be more than an effort by a [plaintiff] to substitute its own analysis for the agency's." *New York*, 824 F.3d at 1022. Here, DOL's predictions as to the impacts of the 2021 Rule on worker misclassification were reasonable based on the agency's expertise and the record and thus provided a valid rationale for the 2024 Rule.

---

[13] *See, e.g.*, Lawyers' Committee Comments at 4–5.

Together, the record provided DOL with ample reason for its conclusions that the 2021 Rule did *not* provide the "clarity" invoked by Appellants, Appellants' Br. 6, and that it would worsen the problem of worker misclassification. Its decision to jettison that Rule in favor of an approach that more closely tracked long-established judicial and agency precedent was thus not arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's denial of a preliminary injunction.

Respectfully submitted,

/s/ Adam R. Pulver
Adam R. Pulver
Michael T. Kirkpatrick
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Attorneys for Amici Curiae

August 23, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2024, the foregoing brief has been served through this Court's electronic filing system upon counsel for the parties.

/s/ Adam R. Pulver
Adam R. Pulver
*Attorney for Amici Curiae*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and the Rules of this Court, it contains 3,206 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in 14-point Century Schoolbook.

August 23, 2024                          /s/ Adam R. Pulver
                                         Adam R. Pulver
                                         *Attorney for Amici Curiae*