

**U.S. Department of Justice**
Civil Division

Tel: 202-353-9039

VIA CM/ECF

January 17, 2025

Lyle W. Cayce, Clerk of Court
Office of the Clerk
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place, Suite 115
New Orleans, LA 70130

   Re:  *Frisard's Transportation LLC v. U.S. Dep't of Labor*, No. 24-
        30223 (argument scheduled February 5, 2024)

       Pursuant to Federal Rule of Appellate Procedure 28(j), I write to
notify the Court of the recent decisions in parallel challenges to the rule at
issue in this case: *Warren v. Dep't of Labor*, No. 2:24-cv-007 (N.D. Ga.)
(Oct. 7, 2024) (Ex. A), *Littman v. Dep't of Labor*, No. 3:24-cv-00194 (M.D.
Tenn.) (Nov. 13, 2024) (Ex. B), and *Colt & Joe Trucking LLC v. Dep't of
Labor*, No. 1:24-cv-00391 (D.N.M) (Jan. 9, 2025) (Ex. C). In both *Warren*
and *Colt & Joe*, the district courts dismissed plaintiffs' claims for lack of
standing. In *Littman*, a magistrate judge issued a report recommending
the same result.

       As explained in the government's brief, the district court here
correctly determined that plaintiffs' concerns that the rule's fact-intensive
inquiry would result in their workers being reclassified was unsupported by
specific facts and too speculative to support irreparable harm. That
conclusion is supported by the reasoning of *Warren*, *Littman*, and *Colt &
Joe*, all of which have rejected similar theories of injury.

       In *Warren*, for example, the plaintiffs—who are self-described
"freelance writers and editors," Op. 2—alleged a future injury based on
"subjective concerns about the 2024 Rule's fact-intensive nature,"
speculating that it might require plaintiffs to be reclassified as employees in
some circumstances. Op. 17. The court concluded that this "hypothetical
and conjectural" harm was insufficient to support standing. Op. 20; *see*

*also Littman* Op. 16-23 (recommending the district court reject this same theory of standing).  Likewise, in *Colt & Joe*, the district court rejected a trucking company's challenge for lack of standing, explaining that "[m]erely alleging that a regulation creates a chilling effect is not sufficient to give rise to standing," and that the plaintiff's subjective "uncertainty" as to how the Department would apply the rule to particular workers was insufficient to support standing to challenge the rule.  Op. 12-14.  In the alternative, the court rejected plaintiff's claims on the merits, concluding that the rule is not arbitrary and capricious or contrary to the Fair Labor Standards Act.  Op. 14-30.  This reasoning supports affirmance of the district court's decision here.

Sincerely,

*/s/ Jennifer L. Utrecht*
Jennifer L. Utrecht

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 17, 2025, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system, which will serve all counsel of record.

<span style="display:block; text-align:right;">*/s/ Jennifer L. Utrecht*<br>JENNIFER L. UTRECHT</span>

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this letter complies with the word limitations of Federal Rule of Appellate Procedure 28(j) because the body of the letter contains 347 words.

<span style="display:block; text-align:right;">*/s/ Jennifer L. Utrecht*<br>JENNIFER L. UTRECHT</span>

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

KARON WARREN, DEBORAH
KAPLAN, KIMBERLY KAVIN, and,
JENNIFER SINGER,

        Plaintiffs,

        v.

UNITED STATES DEPARTMENT
OF LABOR, *et al.*,

        Defendants.

Civil Action No.

2:24-CV-7-RWS

## **ORDER**

This case comes before the Court on dispositive cross-motions: (1)

Plaintiffs' Motion for Summary Judgment [Dkt. 15]; and (2) Defendants' Cross-

Motion to Dismiss or Alternatively for Summary Judgment (the "Cross-Motion to

Dismiss," and together with Plaintiffs' Motion for Summary Judgment, the "Cross-

Motions") [Dkt. 19]. Those Cross-Motions are fully briefed. Having reviewed the

parties' briefs and the record, the Court enters the following Order.

## BACKGROUND

### I.  Factual Background[1]

This declaratory judgment action challenges the constitutionality of a federal agency's rule making authority. Plaintiffs are four freelance writers and editors from Georgia and New Jersey who operate as independent contractors and respectively publish works covering a variety of topics.[2] [Dkt. 1, at ¶¶ 7–10]. In 2019, Plaintiffs founded an informal coalition of freelancers and independent contractors "seeking to protect their ability to work independently from government overreach," called "Fight for Freelancers." [Id. at ¶ 39]. Together,

---

[1] Because this case is before the Court on a motion to dismiss, the Court presents the following facts as alleged in Plaintiffs' Complaint [Dkt. 1], supplemented by the parties' undisputed material facts where appropriate. See SkyHop Techs., Inc. v. Narra, 58 F.4th 1211, 1219 n.1 (11th Cir. 2023).

[2] Karon Warren resides in Ellijay, Georgia and "provides content for magazines, websites, and corporate brands," and "volunteers her time to help coordinate freelance opportunities for other professional writers." [Dkt. 1, at ¶ 7]. Deborah Abrams Kaplan resides in Westfield, New Jersey and primarily covers "the medical health, and supply chain fields," writing "articles for trade publications, print and web, in addition to writing annual reports, white papers, websites, and editing or ghostwriting articles for companies." [Id. at ¶ 8]. Kimberly Kavin resides in Washington Township, New Jersey and "writes and edits content for magazines, newspapers, and corporate brands, and has authored multiple books." [Id. at ¶ 9]. Jennifer Singer resides in Red Bank, New Jersey and "works with professionals from all backgrounds and a variety of clients as a ghostwriter or editor, and sometimes hires other freelance writers or editors to work with her on specific projects." [Id. at ¶ 10]. Ms. Warren, Ms. Kaplan, Ms. Kavin, and Ms. Singer are referred to collectively herein as "Plaintiffs."

Plaintiffs seek to invalidate a rule recently promulgated by the U.S. Department of Labor (the "DOL")[3] that provides interpretive guidance for determining when a working relationship qualifies as an employer-employee relationship entitled to the protections afforded by the Fair Labor Standards Act, 29 U.S.C. §§ 702 *et al.* (the "FLSA"). [Id. at ¶¶ 1, 4–6].

Congress enacted the FLSA in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202. In furtherance of that purpose, the FLSA requires employers to provide certain benefits—such as minimum wage and overtime pay—to their employees, subject to certain exceptions not relevant here. [Dkt. 1, at ¶ 18 (citing 29 U.S.C. §§ 201–19)]. But the FLSA does not require employers to provide those same benefits to independent contractors. [Id. at ¶ 19]. Importantly, the FLSA does not define the distinction between an "employee" and "independent contractor," nor does it codify a clear standard for determining when a worker qualifies as an employee or an independent contractor. [Id. at ¶ 22].

---

[3] Plaintiffs name the DOL, the DOL's Wage and Hour Division, and their respective acting leaders (Julie Su and Jessica Looman) as Defendants (collectively, the "Defendants"). [Dkt. 1, at ¶¶ 11–14].

In the absence of any such standard, courts have historically applied the economic reality test to determine whether a worker qualifies as an employee or an independent contractor.[4] [Id.]. The economic realities test is a multi-factor, totality-of-the-circumstances assessment that requires courts to analyze the specific facts of each case to determine whether the worker depends on the employer or maintains control in the relationship. [See Dkt. 19-1, at ¶ 8]. The relevant factors typically include (1) the worker's opportunity for sharing the business's profit and loss; (2) investment in the materials required to perform the work; (3) the permanency of the working relationship; (4) control over the work to be performed; (5) whether the work being performed is integral to the employer's business; and (6) skill and initiative required to perform the work. [Id. at ¶ 9]. None of those factors are dispositive, nor does any one factor carry more weight than the others. [See id. at ¶¶ 8, 11–13]. Rather, the economic realities test is treated as a true fact-specific assessment courts conduct on a case-by-case basis. [See id.].

In January 2021, the DOL endeavored—for the first time—to define the scope of employment relationships subject to the FLSA's protections by promulgating a rule titled "Independent Contractor Status Under the Fair Labor

---

[4] The economic reality test grew out of a series of opinion letters, fact sheets, and informal guidance issued by the DOL's Wage and Hour Division, which is tasked with enforcing the FLSA. [Dkt. 1, at ¶ 23].

Standards Act," 86 Fed. Reg. 1168 (the "2021 Rule"), which became effective in March 2021. [Dkt. 1, at ¶ 25]. Although the 2021 Rule reiterated the general principles underlying the longstanding economic realities test, the 2021 Rule altered the multi-factor analysis by placing greater emphasis on two "core" factors: (1) the nature and degree of control over the work to be performed; and (2) the worker's opportunity to share in profit and loss. [See id. at ¶¶ 26–27 (alleging these factors are "'more probative' of the underlying question of whether a worker is an employee and should carry greater weight in the analysis" (quoting 29 C.F.R. § 795.105))].

The DOL changed course in October 2022, announcing plans to replace the 2021 Rule with a revised proposal, which was finalized in January 2024 and ultimately codified at 89 Fed. Reg. 1638 (the "2024 Rule"). [Id. at ¶¶ 4, 31]. That proposal removed the 2021 Rule's emphasis on two core factors and enumerated seven factors to be weighed when determining whether an individual qualifies as an employee or an independent contractor. [Id. at ¶¶ 32–33 (explaining that "the use of core factors improperly 'predetermines' the analysis, and that the factors under an economic reality test must be entirely unweighted as a matter of law")]. Those factors are (1) the worker's "opportunity for profit or loss depending on managerial skill"; (2) "investments by the worker and the employer"; (3) "degree

of permanence of the work relationship"; (4) "nature and degree of control" over the work to be performed; (5) "extent to which the work to be performed is an integral part of the employer's business"; (6) the worker's "skill and initiative"; and (7) a catch-all factor stating that "additional factors may be relevant . . . if the factors in some way indicate whether the worker is in business for themselves." [Id. at ¶ 33 (cleaned up) (quoting 29 C.F.R. § 795.110)]. Importantly, the proposal made clear that none of those individual factors carry more weight than the others. [Id. at ¶¶ 35–36].

According to Plaintiffs, the 2024 Rule's multi-factor, totality-of-the-circumstances approach diverges from the 2021 Rule's more predictable guidance and "obscures the line between contractor and employee in an impenetrable fog." [Id. at ¶ 4; see also id. at ¶ 48 ("Under the new rule, significant uncertainty has been created which will chill [Plaintiffs'] future business practices.")]. During the rule making process, Plaintiffs and Fight for Freelancers "commented on the proposed [2024 Rule], attended public hearings, and testified before Congress, expressing concerns about the Rule's effect on its member businesses." [Id. at ¶ 40]. Fight for Freelancers specifically "expressed fears about the uncertainty associated with the [proposed 2024 Rule's] sprawling, multi-factor test," submitting the test offered little-to-no guidance as to how workers could operate as

6

independent contractors under the 2024 Rule's "confusing factors." [Id. at ¶ 41]. But, according to Plaintiffs, the DOL dismissed those concerns. [Id. at ¶ 42].

Plaintiffs now allege the 2024 Rule will negatively affect their ability to operate as freelancers (*i.e.*, independent contractors). [See id. at ¶¶ 44–48 (alleging Plaintiffs fear "they will lose business due to uncertainty or fear of liability risks" under the 2024 Rule, and "they are worried there may be no way to safely arrange their relationships to avoid risks to their clients")]. Specifically, Plaintiffs allege they "will have to alter their business practices and expend resources in an effort to remain independent in order to keep clients" when proceeding under the 2024 Rule, because the 2024 Rule eliminated the clarity and predictability afforded by the 2021 Rule's core factor emphasis. [See id. at ¶¶ 46, 48].

The 2024 Rule became effective on March 11, 2024. [Id. at ¶ 31]. Since then, Ms. Kavin and Ms. Kaplan claim to have already lost job opportunities because of the alleged uncertainty created by the 2024 Rule. Specifically, Ms. Kavin claims she has "already had to renegotiate and rewrite [her] contracts with two magazine clients to protect those clients from potential liability," and she "expect[s] other clients to follow suit" because they "have expressed concern that the [2024 Rule] threatens their business model of continuing to work with all kinds of freelancers." [Dkt. 15-5, at ¶¶ 14–15]. Ms. Kaplan similarly claims she has

already lost job opportunities because of the 2024 Rule, citing one client who said they "will not use [her] editing services for fear of running afoul of the [2024 Rule]." [Dkt. 15-4, at ¶ 10]. As a result, Ms. Kaplan further fears that "other clients . . . may make the same choice." [Id.].

## II.     Procedural History

Plaintiffs initiated suit by filing their Complaint in this Court on January 16, 2024. [Dkt. 1]. Therein, Plaintiffs claim Defendants violated sections 706(2)(A) and (C) of the Administrative Procedure Act (the "APA") and the U.S. Constitution by promulgating the 2024 Rule because the 2024 Rule is unconstitutionally vague and inconsistent with the FLSA's original meaning. [See id. at ¶¶ 50–54, 56–59, 61–63 (alleging the 2024 Rule is unconstitutionally "vague and amorphous" because it "fails to give [employers] sufficient guidance about who is covered under the FLSA")]. Plaintiffs seek redress in the form of (1) a preliminary injunction prohibiting Defendants from enforcing the 2024 Rule, (2) a court order declaring the 2024 Rule unlawful, and (3) attorneys' fees and costs. [Id. at 16].

Defendants were not served until March 15, 2024. [Dkt. 10]. On April 3, 2024, the parties filed a joint motion to waive the requirements imposed by Local Rules 16.2 and 26.1, and stay all relevant litigation deadlines because the parties

agreed this dispute could be resolved based solely on the contents of the relevant certified administrative record. [Dkt. 13]. The Court granted that joint motion two days later and entered a scheduling order adopting the parties' proposed briefing schedule for the instant Cross-Motions. [Dkt. 14].

Plaintiffs filed their Motion for Summary Judgment on April 29, 2024, requesting the Court (1) set aside the 2024 Rule as unlawful under the APA, (2) enjoin Defendants from enforcing the 2024 Rule, and (3) declare the 2021 Rule still in effect. [Dkt. 15]. Defendants responded on May 28, 2024, by filing their Cross-Motion to Dismiss, arguing (1) Plaintiffs lacked standing to pursue their claims and (2) even if Plaintiffs have standing, their claims fail because the 2024 Rule does not violate the APA or the U.S. Constitution. [Dkts. 19, 20].[5] Plaintiffs filed a consolidated opposition to Defendants' Cross-Motion to Dismiss and reply supporting their own Motion for Summary Judgment on July 2, 2024, and Defendants filed a reply supporting their Cross-Motion to Dismiss on July 23, 2024. [Dkts. 35, 41]. Thus, the parties' Cross-Motions are fully briefed and ripe for

---

[5] Defendants' briefs supporting their Cross-Motion to Dismiss and opposing Plaintiffs' Motion for Summary Judgment are identical. [See Dkt. 19-2, at 1 n.1; Dkt. 20, at 1 n.1]. For simplicity, the Court cites to [Dkt. 19-2] exclusively herein when referencing Defendants' relevant arguments.

this Court's consideration.[6]

## DISCUSSION

## I. Legal Standards

### A. Motion to Dismiss Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations" or "labels and conclusions," "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964–65 (2007)). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 127 S. Ct. at 1974). A claim to relief is plausible on its face when the plaintiff pleads factual content necessary for the court to draw a reasonable inference that the defendant is liable for the alleged conduct. Id.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences [taken] therefrom are construed in the light most

---

[6] The Court also notes that it received multiple amicus briefs from interested non-parties and has considered those amici curiae before resolving the instant Cross-Motions. [Dkts. 22, 24, 26, 28, 32, 36, 37].

10

favorable to the plaintiff." <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). But the same does not apply to legal conclusions set forth in the complaint. <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing <u>Iqbal</u>, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S. Ct. at 1949. Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 127 S. Ct. at 1965; <u>see also</u> <u>Oxford Asset Mgmt., Ltd. v. Jaharis</u>, 297 F.3d 1182, 1188 (11th Cir. 2002) ("Dismissal is not appropriate unless it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint. However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." (citation omitted)).

### B. Motion for Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The applicable substantive law determines which facts are "material." <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

the entry of summary judgment. Factual disputes that are unnecessary or irrelevant will not be counted." Id. A dispute about a material fact is "genuine" when the evidence could allow a reasonable jury to return a verdict in favor of the non-moving party. Id. at 2511.

The movant bears the initial burden of informing the Court "of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986)). The movant can carry that burden by establishing an absence of evidence supporting an essential element of the non-moving party's claims, thereby showing the non-moving party cannot prevail at trial. See Celotex, 106 S. Ct. at 2553. If the movant carries that burden, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. Anderson, 106 S. Ct. at 2514; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986) (noting that, once the moving party satisfies its initial burden, the non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts").

At summary judgment, the Court's function is not "to weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir. 2019) (citing Anderson, 106 S. Ct. at 2514). Therefore, when resolving a motion for summary judgment, the Court must "consider the [entire] record and draw all reasonable inferences in the light most favorable to the non-moving party." Blue v. Lopez, 901 F.3d 1352, 1357 (11th Cir. 2018). But the Court is bound only to draw those inferences that are reasonable. See Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (quoting Matsushita, 106 S. Ct. at 1356)).

## II.    Analysis

Plaintiffs seek summary judgment on all claims, requesting the Court enter an order declaring the 2024 Rule invalid and the 2021 Rule still in effect. [Dkt. 15]. Defendants, meanwhile, seek to dismiss Plaintiffs' Complaint for lack of standing or, alternatively, summary judgment in their favor because the 2024 Rule does not violate the APA or the Constitution. [Dkt. 19]. Because standing presents a threshold inquiry, the Court must first determine whether Plaintiffs have standing to pursue their claims before considering the parties' merits-based arguments. See

Corbett v. Transp. Sec. Admin., 930 F.3d 1225, 1228 (11th Cir. 2019) ("[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." (quotation omitted)); Coastal Conservation Ass'n v. Locke, No. 2:09-CV-641-FTM-29SPC, 2011 WL 4530631, at *11 (M.D. Fla. Aug. 16, 2011) ("Because the issue of standing is a threshold matter, the Court must first address the Defendants' challenge to [the plaintiff's] right to pursue the claims articulated in its Complaint.").

"[S]tanding is a necessary component of [federal] jurisdiction." Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd., 557 F.3d 1177, 1190 (11th Cir. 2009). Under Article III of the Constitution, federal jurisdiction is limited to "cases" and "controversies." U.S. Const. art. III, § 2. To establish standing, plaintiffs must show (1) they suffered an injury-in-fact (2) that was caused by the challenged conduct and (3) is likely to be redressed by a favorable court ruling. Lujan v. Defs. of Wildlife, 112 S. Ct. 2130, 2136 (1992); Steel Co. v. Citizens for a Better Env't, 118 S. Ct. 1003, 1017 (1998) (stating that the "party invoking federal jurisdiction bears the burden of establishing its existence" (citing FW/PBS, Inc. v. Dallas, 110 S. Ct. 596, 607–08 (1990))). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the

successive stages of litigation." Lujan, 112 S. Ct. at 2136 (citations omitted).

Where multiple plaintiffs bring suit, "[a]s long as one plaintiff . . . has standing,

[the] other plaintiffs may remain in the suit without a standing injury." Bayou

Lawn & Landscape Servs. v. Johnson, 173 F. Supp. 3d 1271, 1281–82 (N.D. Fla.

2016).

    Here, Defendants' standing argument focuses on the injury-in-fact element.

To establish an injury-in-fact, a plaintiff "must show that he has sustained or is

immediately in danger of sustaining some direct injury as the result of the

challenged official conduct, and the injury or threat of injury must be 'real and

immediate,' not 'conjectural or hypothetical.'" City of Los Angeles v. Lyons, 103

S. Ct. 1660, 1662 (1983) (citations omitted); see also Fla. State Conference of

N.A.A.C.P. v. Browning, 522 F.3d 1153, 1159 (11th Cir. 2008) ("[T]he plaintiff

must have suffered, or must face an imminent and not merely hypothetical prospect

of suffering, an invasion of a legally protected interest resulting in a concrete and

particularized injury." (quotation omitted)). When a plaintiff seeks injunctive or

declaratory relief—as Plaintiffs do here—they must additionally show they are

likely to suffer future harm if the challenged conduct is not enjoined.[7] See Houston

---

[7] Though Article III standing discussions typically refer to injunctive relief, the
same standard applies to declaratory relief. See A&M Gerber Chiropractic LLC v.
GEICO Gen. Ins. Co., 925 F.3d 1205, 1210 (11th Cir. 2019) ("Echoing the 'case or

v. Marod Supermarkets, Inc., 733 F.3d 1323, 1328–29 (11th Cir. 2013) ("In addition to past injury, a plaintiff seeking injunctive relief must show a sufficient likelihood that he *will* be affected by the allegedly unlawful conduct in the future."). In other words, where a plaintiff seeks injunctive or declaratory relief, they must establish both a concrete and particularized past injury, and a real and immediate threat of a realistic future injury resulting from the challenged conduct. See id. at 1329 ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." (quotation omitted)); Corbett, 930 F.3d at 1233 (stating that the future injury must "be substantially likely to actually occur, meaning that the threatened future injury must pose a realistic danger and cannot be merely hypothetical or conjectural").

Defendants argue Plaintiffs fail to satisfy the injury-in-fact requirement because Plaintiffs allege only hypothetical and speculative harm. [Dkt. 19-2, at 3]. Specifically, Defendants argue Plaintiffs cannot establish they either suffered a past injury or face an imminent threat of future harm caused by the 2024 Rule because Plaintiffs are freelance writers seeking engagement, not employers subject

---

controversy' requirement of Article III, the Declaratory Judgment Act 'provides that a declaratory judgment may only be issued in the case of an actual controversy.'" (quotation omitted)).

to the FLSA's requirements. [Id. at 7–13]. In response, Plaintiffs argue the 2024 Rule has (1) already prompted one Plaintiff "to stop working with subcontractors to avoid unwanted liability"; (2) "created tremendous uncertainty as to whether and to what extent Plaintiffs can remain contractors themselves"; and (3) "forced Plaintiffs to make changes to their businesses." [Dkt. 35, at 1–2]. Defendants reply that Plaintiffs' "alleged harm is based on nothing but speculative fears and imagined risks prompting self-initiated actions." [Dkt. 41, at 2]. The Court agrees with Defendants and finds Plaintiffs fail to adequately allege they are likely to suffer real and immediate future harm from the 2024 Rule.

Plaintiffs' alleged future injury stems solely from their subjective concerns about the 2024 Rule's fact-intensive nature. They do not allege that—if they continue to operate their respective freelancing businesses the way they did under the 2021 Rule—they necessarily *will* be classified as employees. [See Dkt. 1, at ¶¶ 44–45)]. Rather, they allege that, because the 2024 Rule adopts a fact-specific, multi-factor approach, they *may* qualify as employees in some instances and, thus, *may* lose future work opportunities. [Id.]. In reality, Plaintiffs take issue with the perceived "uncertainty" resulting from the 2024 Rule's fact-specific approach. [See id. at ¶ 48 ("Under the [2024 Rule], significant uncertainty has been created which will chill [Plaintiffs'] future business practices.")]. But that perceived

"uncertainty" is precisely what forecloses Plaintiffs' ability to pursue their claims.

The Eleventh Circuit has made clear that, to satisfy standing to pursue claims for injunctive and declaratory relief, plaintiffs must establish a "threatened future injury [that] pose[s] a realistic danger," not one that is "merely hypothetical or conjectural." Corbett, 930 F.3d at 1233. By definition, the 2024 Rule's fact-specific approach cannot pose a realistic danger to Plaintiffs' ability to operate as independent contractors because the ultimate classification may change from case-to-case. Sure, Plaintiffs *may* qualify as independent contractors in one instance and employees in another, but that conjectural possibility is not enough to establish standing. See id. at 1236–38 (finding plaintiff lacked standing to pursue injunctive relief even where the court "recognize[d] there[] [was] a chance that [he] might" suffer a future harm because "that is not enough under our case law to show a substantial likelihood of future injury"); see also Bowen v. First Fam. Fin. Servs., Inc., 233 F.3d 1331, 1340 (11th Cir. 2000) (observing that a "perhaps or maybe chance" of an injury occurring is not enough for standing).

In Corbett, the Eleventh Circuit found that a frequent flyer did not satisfy the injury requirement when he feared that the Transportation Security Administration's new random screening policy would subject him to future harm. 930 F.3d at 1237, 1240. The court reasoned that parties "cannot manufacture

standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending . . . .” Id. at 1239. Because the plaintiff could not demonstrate “that the possible harm of maybe having to undergo mandatory AIT screening at some indeterminate time is impending,” “his subjective fear of this harm [was] not sufficient to create standing.” Id.

       Likewise, the Supreme Court denied standing when a citizen challenged a police department’s regular use of the chokehold technique during arrests. Lyons, 103 S. Ct. at 1663, 1671. In Lyons, the Court found that “among the countless encounters between the police and the citizens of . . . Los Angeles, there w[ould] be certain instances in which strangleholds w[ould] be illegally applied.” Id. at 1668. However, “it [was] . . . no more than speculation to assert either that Lyons himself w[ould] again be involved in one of those unfortunate instances, or that he w[ould] be arrested in the future and provoke the use of [the] chokehold.” Id.; see also Corbett, 930 F.3d at 1237 (“And in Lyons, the Supreme Court relied in part on the recognition that not every ‘traffic stop, arrest, or other encounter between the police and a citizen’ will result in ‘the police [acting] unconstitutionally and inflict[ing] injury without provocation or legal excuse.’” (quoting Lyons, 103 S. Ct. at 1668)).

19

As was the case in <u>Corbett</u> and <u>Lyons</u>, Plaintiffs here seek relief from a speculative harm—the unpredictable nature of the 2024 Rule's fact-specific, totality-of-the-circumstances test. But the 2024 Rule's multi-factor test is unpredictable *because* it is a fact-specific, totality-of-the-circumstances test. Practically speaking then, if a court down the road finds that Plaintiffs qualified as employees in a specific case, it will be because the facts of that case reflected an employee-employer relationship, not an independent contractor relationship.

Because the 2024 Rule's multi-factor test is inherently unpredictable, the Court finds Plaintiffs' fears of being classified as employees to be hypothetical and conjectural under <u>Corbett</u> and <u>Lyons</u>, thus failing to satisfy Article III's injury-in-fact requirement. This Court accordingly holds that Plaintiffs lack standing to pursue their claims for injunctive and declaratory relief.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs lack standing to pursue their claims. Accordingly, Defendants' Cross-Motion [Dkt. 19] is **GRANTED**, Plaintiffs' Motion [Dkt. 15] is **DENIED**, and Plaintiffs' Complaint [Dkt. 1] is **DISMISSED WITH PREJUDICE**.

The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 7th day of October, 2024.

_____

**RICHARD W. STORY**
United States District Judge

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

| | | |
|---|---|---|
| **MARGARET LITTMAN** *et al.* | ) | |
| | ) | **Case No. 3:24-cv-00194** |
| **v.** | ) | **Judge Crenshaw** |
| | ) | **Magistrate Judge Holmes** |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF LABOR** *et al.* | ) | |

TO:   Honorable Waverly D. Crenshaw, Jr., United States District Judge

## REPORT AND RECOMMENDATION[1]

Plaintiffs Margaret Littman and Jennifer Chesak initiated this case under the Administrative Procedures Act, 5 U.S.C. § 702, *et seq.* ("APA") against Defendants the United States Department Labor ("DOL"), the DOL's Wage and Hour Division, Julie Su in her official capacity as acting U.S. Secretary of Labor, and Jessica Looman in her official capacity as head of the DOL's Wage and Hour Division. Plaintiffs seek declaratory and injunctive relief related to the DOL's implementation of a 2024 rule titled "Employee or Independent Contractor Classification Under the Fair Labor Standards Act," which was promulgated to help determine whether someone is an "employee" under the Fair Labor Standards Act, 29 U.S.C. §§ 702, *et seq.* ("FLSA").

Presently pending before the Court are three cross-motions: Plaintiffs' motion for preliminary injunction (Docket No. 7); Defendants' motion to dismiss or, in the alternative, for summary judgment (Docket No. 11); and Plaintiffs' motion for summary judgment (Docket No. 25).

---

[1] By order entered February 26, 2024, the Court referred the above captioned case to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)( B), Rule 72 of the Federal Rules of Civil Procedure, and the Local Rules of the Court. (Docket No. 4.)

For the reasons discussed below, the undersigned respectfully recommends that Plaintiffs' motion for preliminary injunction (Docket No. 7) be **DENIED**; Defendants' motion to dismiss or, in the alternative, for summary judgment (Docket No. 11) be **GRANTED**; and Plaintiffs' motion for summary judgment (Docket No. 25) be **DENIED**.

## I.     LEGAL BACKGROUND

### A.     The FLSA

Congress enacted the FLSA in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The FLSA requires employers to provide certain benefits to their employees, including the payment of a minimum wage and overtime wages. 29 U.S.C. §§ 201–19. The FLSA applies only to employees, which it defines as "any individual employed by an employer." 29 U.S.C. § 203(e)(1)); *Gilbo v. Agment, LLC*, 831 F. App'x 772, 775 (6th Cir. 2020). The FLSA does not apply to independent contractors, and it does not define that term. *Id.*

To determine whether a worker is an employee or independent contractor, courts typically apply what has come to be known as the economic realities test. *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 807 (6th Cir. 2015). The Sixth Circuit has identified six factors to consider when applying this test: (1) the permanency of the relationship between the parties; (2) the degree of skill required for the rendering of the services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon his skill; (5) the degree of the alleged employer's right to control the manner in which the work is performed; and (6) whether the service rendered is an integral part of the alleged employer's business. *Id.* (citing *Donovan v. Brandel*, 736 F.2d 1114, 1117 (6th Cir. 1984)). No one factor is determinative.

2

*Id.* Rather, the "central question is the worker's economic dependence upon the business for which he is laboring." *Brandel*, 736 F.2d at 1120.

## B.    The DOL's 2021 Rule and 2024 Rule

In January 2021, the DOL issued a rule interpreting a worker's status as an employee or independent contractor under the FLSA (the "2021 Rule"). 86 Fed. Reg. 1168. The 2021 Rule was intended to "promote certainty for stakeholders, reduce litigation, and encourage innovation in the economy." *Id.* at 1168. The 2021 Rule emphasized two "core factors" when determining whether to classify a worker as an employee or independent contractor: (1) the nature and degree of the worker's control over the work; and (2) the worker's opportunity for profit or loss. *Id.* at 1171.

According to Plaintiffs, the 2021 Rule "provided clarity and helped alleviate the problem of misclassification under FLSA, benefiting both businesses and workers." (Docket No. 1 at ¶ 26.) Plaintiffs also contend that the DOL included a "robust cost-benefit analysis" and "relied on an exhaustive study of facts, statutory, and other legal considerations" when it decided to adopt the 2021 Rule. (*Id.* at ¶ 27 (citing 86 Fed. Reg. 1168).)

However, in October 2022, the DOL announced rulemaking to replace the 2021 Rule. This new rule was finalized on January 10, 2024 and went into effect on March 11, 2024 (the "2024 Rule"). 89 Fed. Reg. 1638.[2] The 2024 Rule, like the 2021 Rule, "addresses how to determine whether a worker is properly classified as an employee or independent contractor." *Id.* at 1638. It provides "general interpretations for determining" a worker's employment status and is "intended

---

[2] The 2024 Rule amended certain sections of Title 29 of the Code of Federal Regulations, which pertains to Labor. This includes Chapter 5, titled "Wage and Hour Division, Department of Labor"; Subchapter B, titled "Statements of General Policy or Interpretation Not Directly Related to Regulations"; Part 795 "Employee or Independent Contractor Classification Under the Fair Labor Standards Act"; and Section 795.110, titled "Economic reality test to determine economic dependence." 89 Fed. Reg. 1638, 1741–42.

3

to serve as a 'practical guide to employers and employees' as to how the [DOL] will seek to apply the [FLSA]." *Id.* at 1741–42 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 138 (1944)). The 2024 Rule was intended to "replace" the analysis for determining a worker's status with one that "is more consistent with judicial precedent and the [FLSA's] text and purpose." *Id.* at 1638. The 2024 Rule is meant to guide the administrator of the DOL's Wage and Hour Division "unless and until . . . otherwise directed by authoritative decisions of the courts." *Id.* at 1742.

The 2024 Rule eliminated the two "core factors" set forth in the 2021 Rule and, instead, adopted an "economic reality test" that focuses on "whether the worker is either economically dependent on the potential employer for work or in business for themself." 89 Fed. Reg. 1638, 1742. That test is based on six non-exhaustive factors that are meant to "guide an assessment of the economic realities of the working relationship and the question of economic dependence." *Id.* Those six factors are: (1) "opportunity for profit or loss depending on managerial skill"; (2) "investments by the worker and the potential employer"; (3) "degree of permanence of the work relationship"; (4) "nature and degree of control"; (5) "extent to which the work performed is an integral part of the potential employer's business"; and (6) "skill and initiative." *Id.* Additional factors may be relevant if they "indicate whether the worker is in business for themself, as opposed to being economically dependent on the potential employer for work." *Id.*

According to Plaintiffs, the 2024 Rule provides "no guidance or useful information about how to classify and structure economic relationships." (Docket No. 1 at ¶ 35.) Accordingly, they contend that it will "lead to increased confusion, litigation, and costs" because businesses and workers will find it difficult to distinguish between employees and independent contractors under the 2024 Rule's "economic reality test." (*Id.*) Plaintiffs argue that the DOL "cited contradictory

case law and acknowledges that it is adopting the view held by some courts over the view held by other courts in formulating the 2024 Rule." (*Id.* at ¶ 34.)

## II.     FACTUAL AND PROCEDURAL BACKGROUND[3]

Plaintiffs are freelance writers based in Nashville, Tennessee. (Docket No. 1 at ¶ 2.) They do not wish to be classified as employees under the FLSA. (*Id.* at ¶¶ 39, 44.) They believe that the 2024 Rule increases the risk that the companies with which they work will face liability for classifying them as independent contractors and will cease to work with them. (*Id.* at ¶¶ 41, 46.) Plaintiffs assert that, under the prior 2021 Rule, they were able to confidently predict how their commercial relationships with employers would be evaluated. (*Id.*) However, under the current 2024 Rule, Plaintiffs contend they face confusion and uncertainty, which, they allege, "will chill [their] future business practices." (*Id.*)

Plaintiff Chesak asserts that companies with which she works have "taken measures" to comply with the 2024 Rule that have harmed her. (*Id.* at ¶ 45.) She states that companies have required her to "spend many unpaid hours documenting precise tasks she performs as a freelancer"; "limited the number of hours [she] can work . . . as a freelancer"; and required her "to sign an agreement to indemnify the company if it were found liable for misclassifying" her. (*Id.*)

In their complaint –filed on February 21, 2024, before the 2024 Rule became effective – Plaintiffs assert three claims for relief against Defendants. *First*, Plaintiffs claim that Defendants violated the APA because the 2024 Rule is "arbitrary, capricious, an abuse of discretion, and

---

[3] Because Defendants' motion to dismiss is before the Court (Docket No. 11), the Court takes these facts from Plaintiffs' complaint. However, because the parties' motions for summary judgment are also before the Court, the Court will discuss which material facts are or are not disputed when analyzing the merits of the parties' arguments.

otherwise not in accordance with law." (*Id.* at ¶ 53.) In support of this claim, Plaintiffs assert that the DOL "failed to provide a reasoned explanation for its shift from the 2021 Rule's two-factor test to the 2024 Rule's six-factor test." (*Id.* at ¶ 50.) *Second*, Plaintiffs claim that Defendants violated the APA because the 2024 Rule is "in excess of statutory jurisdiction [or] authority." (*Id.* at ¶ 54.) In support of this claim, Plaintiffs assert that the 2024 Rule deviates from the text of the FLSA and that the FLSA does not provide the DOL with the authority to promulgate legislative rules that determine whether an employment relationship exists under the FLSA. (*Id.* at ¶¶ 55–56.) *Third and finally*, Plaintiffs claim that Defendants violated the non-delegation doctrine and separation of powers set forth in Article 1, Section 1 of the United States Constitution. (*Id.* at ¶ 58.) In support of this claim, Plaintiffs assert that Congress did not grant the DOL the authority to promulgate legislative rules to determine whether an employment relationship exists under the FLSA. (*Id.* at ¶ 61.)

Plaintiffs ask the Court to provide them with the following relief: enjoin Defendants preliminarily and permanently from enforcing the 2024 Rule; issue a declaratory judgment holding that the 2024 Rule is unlawful and setting it aside; award attorney's fees and costs; and issue any other relief the Court deems proper. (*Id.* at 12.)

Shortly after filing their complaint, Plaintiffs filed a motion for preliminary injunction. (Docket No. 7.) In response, Defendants moved to dismiss Plaintiffs' claims, or, in the alternative, moved for summary judgment on Plaintiffs' claims. (Docket No. 11.) Defendants opposed Plaintiffs' motion for preliminary injunction and supported their own motion with a "Consolidated Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction and in Support of Defendants' Cross-Motion to Dismiss or, in the Alternative, for Summary Judgment" (Docket No. 12), a

statement of undisputed material facts (Docket No. 13), and a notice of filing of the administrative record along with the administrative record itself (Docket Nos. 14, 14-1).

In response to these filings, Plaintiffs filed a combined cross-motion for summary judgment, opposition to Defendants' cross-motion to dismiss, and reply in support of their motion for preliminary injunction (Docket No. 25); Defendants filed a combined opposition to Plaintiffs' cross-motion for summary judgment, and reply in support of their cross-motion to dismiss (Docket No. 27); and Plaintiffs filed a reply in support of their cross-motion for summary judgment (Docket No. 31).[4]

The parties' three cross-motions – (1) Plaintiffs' motion for preliminary injunction; (2) Defendants' motion to dismiss, or in the alternative, for summary judgment; and (3) Plaintiffs' motion for summary judgment – are fully briefed and ripe for this Court's consideration.

### III.    LEGAL STANDARDS

#### A.    Motion for Preliminary Injunction Standard

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). The movant bears the burden of making a "clear showing" of the need for the grant of a preliminary injunction. *Doe v. Burlew*, No. 4:24-CV-00045-GNS, 2024 WL 3402531, at *3 (W.D. Ky. Jul. 12, 2024) (citing *Gonzales v. O Centro Espirita Beneficente Uniã do Vegetal*, 546 U.S. 418, 429 (2006) ("[T]he

---

[4] The Court considered, but was not bound by, arguments and legal authority set forth in other, later filings, including a brief in support of Defendants' opposition to Plaintiffs' motion for preliminary injunction filed by amici curiae National Employment Law Project and Public Citizen, Inc. (Docket No. 29); a notice of supplemental authority filed by Defendants (Docket No. 39); and a response to the notice of supplemental authority filed by Plaintiffs (Docket No. 40).

burdens at the preliminary injunction stage track the burdens at trial.")). A plaintiff seeking a preliminary injunction may not rely on unsupported allegations, but rather must come forward with more than "scant evidence" to substantiate their allegations. *Tactical Edge, LLC v. Garland*, 696 F. Supp. 3d 460, 463 (M.D. Tenn. 2023) (citations omitted).

The party seeking a preliminary injunction must meet make four showings: (1) a likelihood of success on the merits, (2) irreparable harm in the absence of the injunction, (3) that the balance of equities favors them, and (4) that public interest favors an injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 403 (6th Cir. 2022). "These factors are not prerequisites that must be met but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)). Notwithstanding this balancing approach, however, the likelihood of success and irreparable harm factors predominate the preliminary injunction inquiry. *Cox v. Jackson*, 579 F. Supp. 2d 831, 853 (E.D. Mich. 2008). Accordingly, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)

**B.     Motion to Dismiss Legal Standard**

A motion made under Rule 12(b)(6) asks the Court to test the legal sufficiency of the allegations made in the complaint. When presented with a motion to dismiss under Rule 12(b)(6), the Court does not assess the veracity of disputed facts, but whether the facts as alleged in the complaint "establish a cognizable theory of relief." *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 255 F.R.D. 443, 446 (W.D. Mich. 2009).

Generally, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to survive a motion to dismiss under Rule 12(b)(6). *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)). When reviewing a motion made under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff[] [and] accept all well-pleaded factual allegations as true[.]" *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951–52 (6th Cir. 2018) (quoting *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017)). Matters outside of the pleadings are generally not considered in connection with a Rule 12(b)(6) motion to dismiss. *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citation omitted).

## C. Motion for Summary Judgment Legal Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine issue of material fact is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of showing the absence of a genuine dispute over material facts. *Id.* at 249–50. Once the moving party has presented evidence sufficient to support a motion for summary judgment, the non-moving party must present significant probative evidence to support its position. *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). In considering whether summary judgment is appropriate, the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875 (2000). The Court must view the evidence and all inferences

9

drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.), *cert. denied*, 534 U.S. 896 (2001).

When a motion for summary judgment is properly supported under Rule 56, the non-moving party may not merely rest on the allegations in the litigation but must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact that requires that the action proceed to trial. *See Celotex Corp.*, 477 U.S. at 323–24; *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

## IV.    ANALYSIS

Plaintiffs seek summary judgment on their claims and ask the Court to set aside the 2024 Rule as unlawful under the APA and the U.S. Constitution. Plaintiffs also ask the Court to preliminarily enjoin Defendants from enforcing the 2024 Rule. By contrast, Defendants seek to dismiss Plaintiffs' claims because they believe Plaintiffs lack standing. Alternatively, Defendants seek summary judgment in their favor because they contend that the 2024 Rule does not violate the APA or U.S. Constitution.

Under the APA, Plaintiffs must demonstrate that they have both constitutional and prudential standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."). "[T]he proper practice is to resolve all questions regarding subject matter jurisdiction prior to ruling upon merits of the claim." *Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir. 1983). The Court, therefore, will begin with a discussion on standing before ruling upon the merits of Plaintiffs' claims under the APA and the U.S. Constitution, if appropriate.

## A.    The Standing Doctrine

To establish subject matter jurisdiction, a plaintiff must show, among other things, that she has standing to litigate a particular claim. *Copas v. Lee*, 396 F. Supp. 3d 777, 786 (M.D. Tenn. 2019) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) ("Standing to sue is part of the common understanding of what it takes to make a justiciable case."); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.")). The standing doctrine limits the category of federal court litigants to those whose disputes are appropriately resolved through the judicial process – preventing courts from "being used to usurp the powers of the political branches." *Protect Our Aquifer v. Tennessee Valley Auth.*, 654 F. Supp. 3d 654, 668 (M.D. Tenn. 2023) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). Simply put, standing preserves the "proper – and properly limited – role of the courts in a democratic society." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

To demonstrate standing, a plaintiff must establish that (1) she suffered an injury in fact – a legally-protected interest that is concrete, particularized, and actual or imminent; (2) the defendants likely caused the injury; and (3) judicial relief would likely redress the injury. *Defs. of*

11

*Wildlife*, 504 U.S. at 560–61. The injury-in-fact element requires the plaintiff to "allege an injury to [her]self that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (internal citations omitted). For an injury to be sufficiently distinct, or "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (citation omitted). In addition to being particularized, the injury must also be "concrete," which means that it must be "*de facto*," must actually exist, and must be real rather than abstract. *Id.* at 339–40 (citation omitted).

"The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Defs. of Wildlife*, 504 U.S. at 561 (internal citations and quotation marks omitted). Where a plaintiff moves for a preliminary injunction, the district court should normally evaluate standing "under the heightened standard for evaluating a motion for summary judgment." *Waskul v. Washtenaw Cnty. Comm. Mental Health*, 900 F.3d 250, 255 n.3 (6th Cir. 2018) (quotation omitted). However, under a motion to dismiss under Rule 12, general factual allegations of injury resulting from the defendant's conduct may suffice to establish standing because the litigation is at the pleading stage. *See Nat'l Wildlife Fed'n*, 497 U.S. at 889 (a motion to dismiss "presumes that general allegations embrace those specific facts that are necessary to support the claim"). At the summary judgment stage, however, the party invoking federal jurisdiction and responding to the summary judgment motion "cannot rely on 'mere allegations' with respect to each standing element, 'but must set forth by affidavit or other evidence specific facts, which for

12

purposes of the summary judgment motion will be taken to be true.'" *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) quoting *Defs. of Wildlife*, 504 U.S. at 561). *See also Clapper*, 568 U.S. at 411–12.

Here, the Court is faced with all three motions – for a preliminary injunction against Defendants, to dismiss Plaintiffs' claims, and for summary judgment on Plaintiffs' claims. However, because the litigation is past the pleading stage and at the summary judgment stage, the Court will examine whether Plaintiffs have set forth specific facts, either by affidavit or other evidence, to demonstrate standing or whether Plaintiffs have relied on mere allegations to demonstrate standing. *McKay*, 823 F.3d at 867.

## B.    The Parties' Arguments

Defendants contend that Plaintiffs have failed to establish a "substantial likelihood" of standing. Their argument centers on whether Plaintiffs have demonstrated the injury-in-fact element. Defendants contend that Plaintiffs' claimed injuries are "founded upon mere speculation" that the 2024 Rule will cause them harm. (Docket No. 12 at 16.)

In their complaint, both Plaintiffs make several identical allegations of injuries. They contend that the 2024 Rule "increases the risk" that the companies with which they work will "face liability," "misclassify" them as employees, and "cease to work" with them. (Docket No. 1 at ¶¶ 41, 46.) Plaintiffs also contend that the 2024 Rule "will chill" their business practices. (*Id.* at ¶¶ 42, 47.) In response, Defendants assert that these alleged injuries are neither claims of specific present objective harm or threats of a specific future harm. (Docket No. 12 at 17 (citing *Clapper*, 568 U.S. at 418).) Defendants argue that Plaintiffs' fears are unreasonable because the 2024 Rule was intended to not disrupt the business of independent contractors like Plaintiffs and because the

2024 Rule is derived from the "economic realities" test that has been applied by courts for decades. (*Id.* at 17–18.)

Plaintiff Chesak makes allegations of ways in which she alone was injured. She asserts that she "works with companies that, to comply with the 2024 Rule, have taken measures that harm" her. (Docket No. 1 at ¶ 45.) Those measures include requiring her to spend unpaid hours documenting tasks that she performs as a freelancer, limiting the number of hours she can work as a freelancer, and requiring her to sign an agreement to indemnify the company if it were found liable for misclassifying her. (*Id.*) In response, Defendants argue that Plaintiff Chesak's allegations also do not establish standing. Defendants argue that these injuries are merely "conclusory statement[s]" and the complaint is devoid of "plausible" allegations that these injuries were sustained as a result of the 2024 Rule. (Docket No. 12 at 18.) Defendants point out that the companies allegedly took these measures prior to the filing of the complaint on February 21, 2024, and therefore any alleged injuries were sustained before the 2024 Rule went into effect on March 11, 2024. (*Id.*) Defendants therefore maintain that these injuries were not caused by the 2024 Rule. (*Id.*)

In response to Defendants' arguments, Plaintiffs contend that they meet the injury, traceability, and redressability requirements. (Docket No. 25-1 at 5–9.) They assert that the 2024 Rule does, indeed, inflict multiple injuries on them. In particular, they claim that the 2024 Rule "threatens" "classic pocketbook injury'" on them because it "threatens to unravel their economic relationships." (Docket No. 25-1 at 5.) They also claim that the 2024 Rule imposes "administrative and compliance costs and burdens" on them because companies have "passed along" costs to freelancers. (*Id.*) Plaintiffs point specifically to the costs imposed on Plaintiff Chesak, including the unpaid time she has spent documenting her tasks, the limitation to her hours, and the

indemnification agreement she was required to sign. (*Id.*) Plaintiffs also contend that the administrative record shows that their injuries are not "speculative." (*Id.* at 6–7.) They point to prior objections from other people that are included in the record and that state that the 2024 Rule would create "uncertainty and confusion." (*Id.* at 7 (quoting 89 Fed. Reg. 1666–67).)

As for the traceability and redressability requirements, Plaintiffs urge that they met these as well. (Docket No. 25-1 at 8.) They contend that their injuries are traceable to the DOL's implementation of the 2024 Rule because it is not "implausible" or "illogical" that, in response to the 2024 Rule, companies would take the measures that Plaintiff Chesak alleges have harmed her. (*Id.*) They contend that their injuries are redressable because "a favorable decision would reinstate the 2021 Rule, which provided the Freelancers with greater clarity and certainty about how they can structure their economic relationships." (*Id.*)

In reply to Plaintiffs' arguments about the harms they have suffered, Defendants reiterate that the alleged injuries are "conjectural and hypothetical" and "speculative." (Docket No. 27 at 10.) They contend that Plaintiffs have provided "no factual basis" to show that compliance costs have been passed on to them. (*Id.*) According to Defendants, Plaintiffs' reliance on public comments criticizing the 2024 Rule is not enough to show that Plaintiffs themselves have suffered an injury because of the 2024 Rule. (*Id.* at 11.) This is particularly so considering that the DOL disagreed with those "unsworn, uncorroborated" comments and considering that the 2024 Rule "does nothing more than explain how the [DOL] will interpret the FLSA in its enforcement efforts." (*Id.* at 11–12.) Defendants also argue that the 2024 Rule's return to the status quo of the pre-2021 Rule period "belies" Plaintiffs' arguments of harm because Plaintiffs have not alleged that they were harmed before the 2021 Rule went into effect. (*Id.* at 11.)

15

In addition, Defendants contend that Plaintiffs' allegations regarding the injuries that Plaintiff Chesak sustained are more possible than plausible. (*Id.* at 12 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).) Plaintiffs argue that there is "nothing implausible" about their allegation that companies have taken measures that have harmed Plaintiff Chesak because of the 2024 Rule (Docket No. 25-1 at 8), but Defendants contend that it is equally possible that companies have taken the referenced measures that have allegedly harmed Plaintiff Chesak for reasons that have nothing to do with the 2024 Rule. (Docket No. 27 at 12.)

## C.    The Court's Analysis of Plaintiffs' Standing

The Court largely agrees with Defendants and finds that Plaintiffs have failed to demonstrate, for the purposes of their motion for preliminary injunction and motion for summary judgment, that they will suffer an "actual or imminent" injury related to the 2024 Rule. Most of Plaintiffs' alleged injuries are ones of future harm that stem from increased risks, confusion, and uncertainty. (Docket No. 1 at ¶¶ 41–42, 46–47.) The Supreme Court has explained that alleged future harms, like the ones that Plaintiffs have made, cannot be "too speculative … but rather must be *certainly* impending." *Kanuszewski v. Michigan Dep't of Health & Hum. Svcs.*, 927 F.3d 396, 409–10 (quoting *Clapper*, 568 U.S. at 409) (internal brackets omitted). The Supreme Court clarified that this does not require "literal certainty" but at least a "substantial risk" that the harm will occur. *Id.* (quoting *Clapper*, 568 U.S. at 414) (internal brackets omitted).

Plaintiffs claim that the 2024 Rule injures them because it provides no guidance on how to "classify and structure economic relationships," which "will lead to increased confusion, litigation, and costs" and will make it more difficult for businesses and workers to distinguish between employees and independent contractors. (Docket No. 1 at ¶ 35.) According to Plaintiffs, it is this uncertainty about how a worker is classified that "increases the risk" that companies will face

liability over how they classify workers and "increases the risk" that those companies will cease working with Plaintiffs. (*Id.* at ¶¶ 41, 46.) Plaintiffs also maintain that this uncertainty that "will chill" their "future business practices." (*Id.* at ¶¶ 42, 47.) All these allegations are ones of potential and future harm.

The Court finds that Plaintiffs have not plausibly alleged, much less demonstrated, that their injuries are "certainly impending." *Clapper*, 568 U.S. at 402. Plaintiffs' fatal problem is that they do not provide enough of a concrete link between the 2024 Rule and their alleged harms. In other words, they have not demonstrated a substantial risk that companies will cease to work with them or that their future business practices will be chilled because of the implementation of the 2024 Rule.

Instead, Plaintiffs' complaints of harm are premised on many assumptions.[5] Plaintiffs assume that the unidentified companies with which they work will behave in a certain way in response to the 2024 Rule. They also assume that this behavior from the companies will impact them in negative ways. For example, for Plaintiffs' alleged future injuries to occur, these companies would have to face liability from the DOL (or be certain enough that they would face liability from the DOL) because of their decision to classify Plaintiffs as either employees or independent contractors under the 2024 Rule. The companies would then have to stop working

---

[5] Plaintiffs' claims rest on the assumption that they are independent contractors and not employees. For purposes of summary judgment, the parties generally do not dispute that each Plaintiff "wishes to continue her work as an independent contractor" and not be classified as an employee. (Docket No. 27-1 at ¶¶ 28–29.) This assumption, however, does not necessarily establish, for purposes of analyzing standing in connection with summary judgment, that both Plaintiffs will always be considered "independent contractors" under the FLSA pursuant to the 2024 Rule. Nevertheless, the Court finds it unnecessary to wade deeper into this issue because of the other considerations that support the outcome recommended here.

with Plaintiffs because of their concerns stemming from the 2024 Rule, and not because of any other factors.

The analysis undertaken by the Sixth Circuit Court of Appeals in *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977 (6th Cir. 2020) [*Shelby Advocates*], is instructive. In that case, four individual plaintiffs and one organization filed suit against several election officials and entities claiming that "in future elections, the defendants will burden [the plaintiffs'] right to vote, dilute their votes, and disenfranchise them in violation of the Fourteenth Amendment's Equal Protection and Due Process clauses." *Id.* at 979. The district court dismissed the lawsuit because it found that the plaintiffs lacked a "concrete injury" and therefore lacked standing. *Id.* at 980. The Sixth Circuit agreed with the district court.

The Sixth Circuit found that the plaintiffs had an "imminence problem" when it came to their injuries, all of which were based on future harms. *Id.* at 981. The individual plaintiffs alleged that they planned to vote in future elections, but feared their votes would be denied or substantially burdened. *Id.* at 979–80. They pointed to a variety of election administration problems and to issues with digital voting machines, including that the machines sometimes "flipped" votes. *Id.* at 980. The Sixth Circuit summarized the individual plaintiffs' theory of injury as an "alleged future risk of vote dilution or vote denial stemming from maladministration and technology problems." *Id.* at 981. In other words, the plaintiffs relied on past harms (i.e. vote flipping) to demonstrate that future harms (i.e. a burden on their right to vote) were impending.

However, the Sixth Circuit held that the individual plaintiffs failed to demonstrate "imminent harm." *Id.* at 982. Importantly, the court held that "past occurrences of unlawful conduct" do not create standing to obtain an injunction against the risk of future unlawful conduct. *Id.* at 981 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–98 (1974) (allegation, based on past

examples, of discriminatory prosecution); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983) (allegation, based on plaintiff's past experience, that policy of using constitutionally excessive chokeholds increased risk of experiencing another)). Further, a plaintiff's fear that individual mistakes will recur is not enough to create a "cognizable imminent risk of harm." *Id.*

The Sixth Circuit explained this principle by summarizing *Lyons*, 461 U.S. 95, a decision of the Supreme Court of the United States:

> Think about how the Court addressed this point in *Lyons*, a case in which the plaintiffs sought to enjoin members of a police department, who had violated the constitutional rights of arrestees in the past, from engaging in similar misconduct in the future. The Court concluded that the plaintiff could establish standing only if he pleaded "(1) that all police officers in Los Angeles always" take the challenged action, using unnecessary chokeholds, when interacting with "any citizen with whom they happen to have an encounter," or (2) "that the City ordered or authorized police officers to act in such manner." *Lyons*, 461 U.S. at 105–06, 103 S.Ct. 1660. Today's plaintiffs face a similar plight. They do not allege – they cannot plausibly allege – that Shelby County election officials always make these mistakes, and they do not allege that the government entities ordered the election workers to make any such mistakes.

*Id.*

Using *Lyons*, the Sixth Circuit found that the individual plaintiffs' allegations of past harm (i.e. the past vote flipping) did not establish "imminent" future harm. *Id.* This was because the plaintiffs did not assert that the past vote flipping actually happened *to* them. *Id.* In other words, it would be too much of a logical leap to rely on a prior harm that occurred to an unknown person or group and extrapolate that prior harm to result in a future harm to the individual plaintiff.

However, even if the individual plaintiffs had adequately alleged past harm (i.e., had shown that the vote flipping did occur to them), they did not plausibly allege, much less show, that the future harm was "certainly impending." *Id.* at 981–82 (quoting *Clapper*, 568 U.S. at 402). Put another way, the individual plaintiffs did not show that there was a "substantial risk" that they

would be impacted in the future by vote flipping. *Id.* (citing *Clapper*, 568 U.S. at 414 n.5; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

Here, Plaintiffs have failed to established a past harm or that a future harm is "certainly impending," just as the plaintiffs in *Shelby Advocates* and *Lyons* failed to do. Importantly, Plaintiffs do not allege, much less establish, any prior harm as a result of the 2024 Rule.[6] For example, they do not assert that companies have penalized them previously because of the 2024 Rule. Instead, they merely allege that the 2024 Rule will harm them in the future, but they offer no substantive evidence to show that this harm is imminent or certain. Mere allegations of future harm are not sufficient to establish standing. Accordingly, Plaintiffs have not established a "substantial risk" that either (1) the companies with which they work will face liability for classifying them as independent contractors and will cease to work with them, or (2) they will face confusion and uncertainty which will chill their future business practices. In the absence of imminent harm, the individual plaintiffs have no standing to sue and therefore no basis for moving forward with their claims. *See Shelby Advocates*, 947 F.3d at 982; *Kanuszewski*, 927 F.3d at 410.

Similarly, a "plaintiff cannot manufacture standing based on an overreaction to speculative fears of potential enforcement." *Grumpy's Bail Bonds, LLC v. Rutherford County, Tennessee*, No. 3:20-cv-00923, 2022 WL 3051004, at *6 (M.D. Tenn. Aug. 2, 2022) (quoting *Yatooma v. Birch Run Twp.*, No. 1:22-CV-10870, 2022 WL 1913601, at *2 (E.D. Mich. June 3, 2022) (citing *Clapper*, 568 U.S. at 414). This is precisely what has occurred here. Plaintiffs allege that the 2024 Rule creates "confusion and uncertainty." According to them, it necessarily follows that there is an increased risk that companies will face liability if they continue to classify Plaintiffs as

---

[6] The Court separately addresses below Plaintiff Chesak's individualized allegations of prior harm as a result of the 2024 Rule.

independent contractors and will pass on those associated costs to Plaintiffs. However, without Plaintiffs alleging particularized facts that would give the Court any reason to believe that the DOL *will* classify Plaintiffs as employees, the Court can only speculate over whether this would happen. Further, the Court can only speculate as to whether those companies are likely to face liability or pass costs on to Plaintiffs, let alone if such an outcome is "certainly impending."

Importantly and fatally, there is no evidence in the record – for example, no affidavits, declarations, statements of undisputed material fact – to show that the DOL or any other entity has classified or will classify Plaintiffs in a particular way because of the 2024 Rule; that companies have faced or will face liability because of the 2024 Rule; or that companies have passed or will pass costs on to Plaintiffs because of the 2024 Rule. The Court is, therefore, left with no way to determine whether these alleged injuries are actual or imminent. Accordingly, Plaintiffs have failed to establish, for purposes of their motion for preliminary injunction and their motion for summary judgment, that they have standing to pursue their claims in this Court.

Finally, with respect to Plaintiff Chesak's individual allegations of past injury, those come closer to establishing standing. However, Plaintiffs fail to demonstrate that the claimed injuries are traceable to any actual or possible conduct on the part of Defendants. Plaintiffs allege that Plaintiff Chesak "works with companies that, to comply with the 2024 Rule, have taken measures that harm Ms. Chesak." (Docket No. 1 at ¶ 45.) These harms include requiring her to spend unpaid hours documenting tasks she performs as a freelancer, limiting the number of hours she can work as a freelancer, and requiring her to sign an agreement to indemnify the company if it were found liable for misclassifying her. (*Id.*) In other words, Plaintiff Chesak has allegedly been injured by unnamed third-party companies that she claims took actions to comply with the 2024 Rule.

However, it is the actions of these unnamed third-party companies, and not Defendants, that have directly harmed Plaintiff Chesak.

"[P]laintiffs bear the burden of pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm. Plaintiffs cannot rely on speculation about 'the unfettered choices made by independent actors not before the court.'" *Clapper*, 568 U.S. at 414 n.5 (citing *Defs. of Wildlife*, 504 U.S. at 562). "[W]here a causal relation between injury and challenged action depends upon the decision of an independent third party …, standing is not precluded, but it is ordinarily substantially more difficult to establish." *California v. Texas*, 593 U.S. 659, 675 (2021) (quoting *Defs. of Wildlife*, 504 U.S. at 562) (internal quotations omitted). *See also Clapper*, 568 U.S. at 414 (expressing "reluctance to endorse standing theories that rest on speculation about the decisions of independent actors"). To satisfy that burden, the plaintiff must show at the least "that third parties will likely react in predictable ways." *Id.* (quoting *Dept. of Commerce v. New York*, 588 U.S. 752, 768 (2019)).

Here, Plaintiffs have not demonstrated "concrete facts" to show that Defendants' actions caused Plaintiff Chesak's injuries. The only evidence in the record related to Plaintiff Chesak's injuries are the allegations in her verified complaint (Docket No. 1 at ¶ 45) and a statement of fact that repeats the allegations in her verified complaint but that is disputed by Defendants (Docket No. 27-1 at 14, ¶ 33). The Court has not been presented with any evidence from the unnamed third-party companies to demonstrate that they took the referenced measures "to comply with the 2024 Rule" or that they are likely to react in predictable ways. Instead, the Court is left to merely speculate on why these unnamed third-party companies required Plaintiff Chesak to spend unpaid hours documenting tasks or to sign an indemnity agreement. They may have done so because they incurred costs or thought themselves likely to incur costs because of the 2024 Rule and decided to

22

pass those costs on to Plaintiff Chesak. However, they may have done so for any number of other reasons unrelated to the 2024 Rule. The Court can only guess, which is not enough to establish standing. Accordingly, Plaintiffs have not met their burden to demonstrate that Plaintiff Chesak's injuries are traceable to the actions of Defendants.[7]

For these reasons, the Court finds that Plaintiffs lack standing to pursue their claims for injunctive relief and a declaratory judgment. Because Plaintiffs lack standing, the Court lacks subject matter jurisdiction and has no authority to adjudicate Plaintiffs' claims. Accordingly, the Court will not address the merits of Plaintiffs' claims under the APA and the U.S. Constitution.


## V.     RECOMMENDATION

Based on the foregoing, it is respectfully **RECOMMENDED** that Plaintiffs' motion for preliminary injunction (Docket No. 7) be **DENIED**; Defendants' motion to dismiss or, in the alternative, for summary judgment (Docket No. 11) be **GRANTED**; and Plaintiffs' motion for summary judgment (Docket No. 25) be **DENIED**.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140

---

[7] Plaintiffs also argue that they have standing to challenge the 2024 Rule because they are objects of the 2024 Rule. (Docket No. 25-1 at 3–4.) Because the Court finds that Plaintiffs do not meet all of the injury, traceability, and redressability requirements of the standing doctrine, the Court will not address whether Plaintiffs are, indeed, the objects of the 2024 Rule.

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge

24

# Exhibit C

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

COLT & JOE TRUCKING, LLC.

      Plaintiff,

      v.                             Case No. 24-cv-00391-KWR-GBW

U.S. DEPARTMENT OF LABOR ET AL.,

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Plaintiff's Motion for Summary Judgment (**Doc. 22**) and Defendant's Cross-Motion to Dismiss, or in the Alternative, for Summary Judgment (**Doc. 30**). Plaintiff requests that the Court enjoin and set aside as unlawful a 2024 Department of Labor Rule. Having reviewed the parties' briefings, the administrative record, and the relevant law, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendants' Cross-Motion to Dismiss, or in the alternative, for Summary Judgment.

## LEGAL BACKGROUND

### I.    Fair Labor Standards Act ("FLSA")

Congress enacted the Fair Labor Standards Act ("FLSA") in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The FLSA requires employers to provide certain benefits to their employees, including the payment of a minimum wage and overtime wages. 29 U.S.C. §§ 201–19. The FLSA applies only to employees, which it defines as

1

"any individual employed by an employer." 29 U.S.C. § 203(e)(1)). The FLSA does not apply to, nor does it define, "independent contractors."

To resolve the debate around independent contractors, courts have applied what has come to be known as the "economic realities test."   In a series of cases, the Supreme Court developed a series of factors as "important" for distinguishing employees and independent contractors.  *U.S. v. Silk*, 331 U.S. 704 (1947); *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947); *Bartels v. Birmingham*, 332 U.S. 126 (1947).  The Court's inquiry was whether, as a matter of economic reality, the worker was economically dependent on the employer for work (thus rendering them an employee) or is in business for themselves (thus rendering them an independent contractor).

The *Silk* factors include "degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation[,] and skill required in the claimed independent operation are important for decision."  *Silk*, 331 U.S. at 716.  The Court emphasized repeatedly that no one factor should receive more consideration than the next, but rather, courts should consider the totality of the circumstances.  *Id.* ("No one [factor] is controlling nor is the list complete."); *Rutherford*, 331 U.S. at 730 ("We think, however, that the determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity."); *Bartels*, 332 U.S. at 130 ("It is the total stiuation that controls." (error in original)).

The Tenth Circuit's version of the economic realities test includes six factors:

(1) the degree of control exerted by the alleged employer over the worker;
(2) the worker's opportunity for profit or loss;
(3) the worker's investment in the business;
(4) the permanence of the working relationship;
(5) the degree of skill required to perform the work; and
(6) the extent to which the work is an integral part of the alleged employer's business.

*Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998). As with *Silk* and its progeny, courts applying the economic realities test do not give one factor more weight than the others, instead favoring a totality-of-the-circumstances consideration. *Id.* at 1441. Plaintiff alleges that this has led to confusion about proper classification of independent contractors. **Doc. 22 at 5.**

## II.    The Department of Labor's 2021 and 2024 Rules

In January 2021, the DOL issued a rule attempting to clarify the differences in a worker's status as an employee or independent contractor under the FLSA (the "2021 Rule"). 86 Fed. Reg. 1168. The Rule aimed to "promote certainty for stakeholders, reduce litigation, and encourage innovation in the economy." *Id.* at 1168. The 2021 Rule created a five-factor analysis, designating two of the five factors as "core factors." 89 Fed. Reg. at 1638. The two core factors were: (1) the nature and degree of control over the work and (2) the worker's opportunity for profit or loss (which included the worker's initiative and investments). *Id.* at 1644. The three remaining factors were (3) the amount of skill required for the work, (4) the degree of permanence of the working relationship, and (5) whether the work is part of an integrated unit of production. Id. at 1645; 86 Fed. Reg. at 1171. Non-core factors were "less probative and, in some cases, may not be probative at all" of economic dependence and were "highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors." 89 Fed. Reg. at 1645.

In October 2022, the DOL announced rulemaking to rescind and replace the 2021 Rule. After considering over 55,000 comments, the DOL promulgated the new rule on January 10, 2024 ("2024 Rule"), and it became effective on March 11, 2024. 89 Fed. Reg. 1638-01. The 2024 Rule again "addresses how to determine whether a worker is properly classified as an employee or independent contractor." *Id.* at 1638. The 2024 Rule aimed to "replace" the analysis for

determining a worker's status with one that "is more consistent with judicial precedent and the [FLSA's] text and purpose." *Id*. at 1638.

The 2024 Rule eliminated the two "core factors" set forth in the 2021 Rule in favor of an "economic reality test" focusing on "whether the worker is either economically dependent on the potential employer for work or in business for themselves." 89 Fed. Reg. 1638, 1742. The test involves six factors meant to "guide an assessment of the economic realities of the working relationship and the question of economic dependence." *Id*.

Those six factors are: (1) "opportunity for profit or loss depending on managerial skill"; (2) "investments by the worker and the potential employer"; (3) "degree of permanence of the work relationship"; (4) "nature and degree of control"; (5) "extent to which the work performed is an integral part of the potential employer's business"; and (6) "skill and initiative." *Id*. Additional factors may be relevant if they "indicate whether the worker is in business for themself, as opposed to being economically dependent on the potential employer for work." *Id*. Unlike the 2021 Rule, no one factor should receive any predetermined weight. *Id.* at 1645. The preamble to the 2024 Rule also provides a detailed analysis about the application of each factor to serve as a guide for determining whether a worker is an employee. See 89 Fed. Reg. at 1671-1725.

## FACTUAL BACKGROUND

Plaintiff is a family-run trucking business with twelve employees and regulated by the FLSA. **Doc. 22 at ¶¶22–23**. Plaintiff routinely hires drivers as independent contractors. *Id.* **at ¶22.** Plaintiff alleges that, because of the changes in the 2024 Rule, they "must spend more time and resources analyzing whether drivers with whom it contracts are properly classified as independent contractors or employees." *Id.* **at ¶25.** Because of this, the "working relationship between Plaintiff and one of its four independent drivers ended in April 2024." *Id.* Plaintiff further alleges

4

that they have been unable to hire a replacement driver "in part due to greater uncertainty and regulatory burdens created by the 2024 Rule." *Id.* Plaintiff asserts that the 2024 Rule "upends Plaintiff's business operations, increasing costs, increasing potential liability, depriving truckers of the opportunity to operate independently within their own business, and potentially driving many of the contractors Plaintiff relies on out of business, or into different lines of business than Plaintiff's, depriving Plaintiff of needed manpower to deliver cargo." **Doc. 1 at ¶55.** In short, Plaintiff asserts that the 2024 Rule "has and will continue to cause [Plaintiff] harm." *Id.*

On April 25, 2024, Plaintiff filed a complaint seeking declaratory, injunctive, and other relief, asking the Court to set aside the 2024 Rule as unlawful for several reasons. **Doc. 1**. However, as discussed in both Defendants' Answer (**Doc. 14**) and the parties' Joint Motion for Order *for Schedule for Administrative Record Production and Briefing, and for Page Limits* (**Doc. 15**), a Complaint was not the proper method for requesting review of a final APA action. **Doc. 14 at 3**; *see also Forest Guardians v. U.S. Fish & Wildlife Serv*., 611 F.3d 692, 702 n.12 (10th Cir. 2010) ("Even though this action was originally filed in the form of a complaint, the parties later agreed to proceed as if it properly had been filed as a petition for review of agency action.").

Plaintiff subsequently filed a Motion for Summary Judgment, styled as an appellate brief, per Tenth Circuit precedent (**Doc. 22**). In the brief, Plaintiff asserts the following:

I. The 2024 Rule is based on the DOL's Erroneous Legal Interpretations

II. The DOL's Test is Arbitrary and Capricious and Violates Due Process

III. The 2024 Rule Violates the APA and Regulatory Flexibility Act ("RFA") Because the DOL Ignores Costs

IV. Defendant SU Lacked the Authority to Promulgate the 2024 Rule.

Plaintiff requested that the Court vacate the 2024 Rule in its entirety. **Doc. 22 at 33**.

Defendants subsequently filed a Cross-Motion to Dismiss, or, in the Alternative, For Summary Judgment. **Doc. 30**. In their motion, Defendants assert the following:

I.     Plaintiff lacks standing to challenge the 2024 Rule and the Court should therefore dismiss for lack of subject-matter jurisdiction.

II.    Plaintiff has failed to show that the 2024 Rule is arbitrary, capricious, contrary to law, or in excess of the Department's authority under the FLSA.

III.   Plaintiff has failed to show that the 2024 Rule is unconstitutionally vague.

IV.    Plaintiff has failed to show that any purported defect in Acting Secretary Su's appointment affected the 2024 Rule.

V.     Vacatur is an inappropriate remedy.

Having reviewed the parties' briefing and applicable law, the Court now addresses both motions together below. [1]

## LEGAL STANDARD

"Under 5 U.S.C. § 702, the United States waives sovereign immunity as to actions in a court of the United States seeking relief other than money damages…" *Gilmore v. Weatherford*, 694 F.3d 1160, 1166, n.1 (10th Cir. 2012). *See also United States v. Testan*, 424 U.S. 392, 399 (1976) ("[T]he United States, as sovereign, is immune from suit save it consents to be sued."). The Administrative Procedure Act ("APA") allows a trial court to and set aside as unlawful final agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "unsubstantiated by substantial evidence," or "unwarranted by the facts." 5 U.S.C. §702(A), (E), (F). An agency action is arbitrary and capricious if the agency relied on "factors which Congress has not intended it to consider, entirely failed to consider an important

---

[1] The Court considered, but was not bound by, arguments and legal authority set forth in other filings, including several amicus briefs, **Doc. 28, 39, & 43**, and a notice of supplemental authority filed by the Defendants, **Doc. 48**.

aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the produce of agency expertise." *Arizona Public Service Co. v. Environmental Protection Agency*, 562 F.3d 1116, 1122–1123 (10th Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983)).

Even though the Court's inquiry into the basis of an agency action must be "searching and careful," trial courts are instructed not to set aside an agency action because of a less-than-ideal explanation so long as the agency's decision-making process is reasonably discerned. *Arizona Public Service Co.*, 562 F.3d at 1123; *Maier v. EPA*, 114 F.3d 1032, 1039 (10th Cir. 1997); *Alaska Dep't of Env't Cons.*, 540 U.S. 497. The review is, therefore, "narrow and deferential" to the agency, giving it a presumption of validity, and the Court must uphold the agency's action if it has articulated a rational basis for the decision and has considered relevant factors. *Wolfe v. Barnhart*, 446 F.3d 1096, 1100 (10th Cir. 2006); *Wyoming v. USDA*, 661 F.3d 1209, 1227 (10th Cir. 2011); *Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780, 793 (10th Cir. 2010); *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1197 (10th Cir. 2014) (noting that the agency's action has a presumption of validity and that the burden of proof rests with the party challenging the agency action). Judicial review of agency action is generally restricted to the administrative record unless there is clear evidence that the agency did not properly designate the administrative record. *Citizens for Alternatives to Radioactive Dumping v. Dep't of Energy*, 485 F.3d 1091, 1096 (2007); *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993).

Judicial review is based upon "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Thus, review of an agency's action under the APA "is to be based on the full administrative record that was before [the agency] at the time [it] made [its] decision." *Citizens to*

*Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971). "Even though judicial review rests with a district court, the district court does not act as a factfinder." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

Review of final agency actions by a district court is conducted according to the Federal Rules of Appellate Procedure. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir. 1994). When determining whether the final agency decision is arbitrary and capricious, the court must focus on the rationality of the agency's decision-making process—rather than the rationality of the actual decision—meaning that the grounds upon which the agency acted must be disclosed and sustained by the record. *Id*. This analysis requires this Court to review the Department's decision-making process and determine whether it had examined all the relevant factual information, articulated a satisfactory explanation for its action, and rationally connected the factual record and the decision. *Id.*; *Ctr. For Biol. Diversity v. Dep't of the Interior*, 72 F.4th 1166, 1178 (10th Cir. 2023); *Kobach*, 772 F.3d at 1197 (the reviewing court must "ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made."). "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *State Farm*, 463 F.3d at 50.

If the reviewing court determines that the agency acted arbitrarily and capriciously, it may set aside the agency's action, findings, and conclusions. *See* 5 U.S.C. § 706(2); *Olenhouse*, 42 F.3d at 1573-74. "Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Orlando Ventura*, 537 U.S. 12, 17 (2002); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action … the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

Although the Tenth Circuit has found that "motions for summary judgment" are generally "conceptually incompatible with the very nature and purpose of an appeal," *Olenhouse*, 42 F.3d at 1580, district courts may use summary judgment motions "to 'decid[e], as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.'" *N.M. Health Conns. v. HHS*, 946 F.3d 1138, 1161 (10th Cir. 2019) (internal quotations omitted). Agency "actions are entitled to a presumption of regularity, and [plaintiff] bears the burden of persuasion to show [the agency] acted arbitrarily and capriciously." *Id*. at 1162.

## ANALYSIS

Plaintiff makes several assertions in their motion for summary judgment. Chiefly, Plaintiff asserts that the 2024 Rule is arbitrary and capricious for numerous reasons, and that the 2024 Rule is unlawful because Defendant Su lacked the authority to promulgate it. **Doc. 22 at 33**. Defendants' cross-motion to dismiss, or in the alternative, for summary judgment argues that the 2024 Rule is neither arbitrary and capricious nor unconstitutionally vague. **Doc. 30 at 12, 29**. Moreover, Defendants argue that Plaintiff lacks standing to challenge the 2024 Rule and the Court should instead dismiss the action for lack of subject-matter jurisdiction. *Id.* The Court addresses the parties' arguments in turn below.

### I. **Plaintiff does not have Article III standing to challenge the 2024 Rule.**

Defendants move to dismiss on several grounds. As a preliminary matter, Defendant asserts that Plaintiff does not have Article III standing, and the Court therefore lacks jurisdiction to even hear the case at issue. **Doc. 30 at 30**. Defendants argue that Plaintiff cannot show any concrete and particularized injury, and that any injury of which Plaintiff complains is merely speculative. *Id.* Plaintiff argues that they have standing as the object of the regulation and that they have incurred concrete injuries traceable to the 2024 Rule and redressable by vacatur. **Doc.**

**46 at 3–4.** The Court finds that Plaintiff has not sufficiently demonstrated that they have Article III standing to challenge the 2024 Rule.

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. Const. art. III, § 2, cl. 1; *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). The case or controversy limitation requires that a plaintiff have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61 (1992). A plaintiff bears the burden of establishing the elements of standing. *Lujan*, 504 U.S. at 559–61; *Rocky Mountain Peace & Just. Ctr. v. United States Fish & Wildlife Serv.*, 40 F.4th 1133, 1151 (10th Cir. 2022). Standing must exist throughout the entire action. *Id.* A plaintiff has standing when (1) they have suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 559–61.

"An APA plaintiff does not have a complete and present cause of action until she suffers an injury from final agency action. . . ." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2450 (2024). An "injury in fact" is an invasion of a legally protected interest that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. *Id.* These three elements of standing are "an indispensable part of the plaintiff's case," and thus the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* Because injury-in-fact is a constitutional requirement, Congress "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547–48 (2016) (internal citations omitted) ("Article III standing requires a *concrete injury* even in the context of a statutory violation") (emphasis added).

10

Standing is a matter of subject matter jurisdiction and therefore generally falls under the purview of Federal Rule of Civil Procedure 12(b)(1). *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Where a party facially attacks the sufficiency of a complaint, the reviewing court must accept the allegations in the complaint as true. *Id.* When a party challenges the underlying facts establishing subject matter jurisdiction, "a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *Id.*

Rule 56, on the other hand, governs "when resolution of the jurisdictional question is intertwined with the merits of the case." *Id.* "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id.* In evaluating a Rule 56 motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1212 (10th Cir. 2002); Fed. R. Civ. P. 56(c). "In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts. . . which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)) (cleaned up). "A mere scintilla of evidence supporting the nonmovant's position will not create a genuine issue of material fact; the fact issue must make it so that a reasonable jury could find for the nonmovant." *Rocky Mountain Wild, Inc. v. United States Forest Serv.*, 56 F.4th 913, 921 (10th Cir. 2022).

Here, both parties filed motions for summary judgment. Rule 56 therefore governs the court's review of Plaintiff's standing. Defendants argue that Plaintiff has not suffered an injury-

11

in-fact yet, because they have not demonstrated any harm that is not conjectural. **Doc. 30 at 8**; *cf. Citizen Ctr. v. Gessler*, 770 F.3d 900, 913 (10th Cir. 2014) (finding that "alleged chill is too conjectural to establish an injury in fact."). Plaintiff argues they have "self-evident standing as a regulated employer to challenge a regulation that expands the definition of FLSA employee." **Doc. 22 at 10.** Because Plaintiff invoked federal jurisdiction in filing this administrative action, "[t]he burden is therefore on Plaintiffs 'clearly to allege facts demonstrating that [they are] a proper party to invoke judicial resolution of the dispute.'" *State of Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998) (quoting *United States v. Hays,* 515 U.S. 737, 743 (1995) and *Warth v. Seldin,* 422 U.S. 490, 518, (1975)). Plaintiff has failed to carry that burden in alleging the requisite concrete and particularized injury.

Merely alleging that a regulation creates a chilling effect is not sufficient to give rise to standing. *Gessler*, 770 F.3d at 900 (citing *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1153 (2013) (stating that the Supreme Court has never held that "plaintiffs can establish standing simply by claiming that they experienced a 'chilling effect' that resulted from a governmental policy that does not regulate, constrain, or compel any action on their part")). Indeed, the "Supreme Court has never upheld standing based solely on a governmental policy lacking compulsion, regulation, or constraints on individual action." *Gessler*, 770 F.3d at 912. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id.* (quoting *Laird v. Tatum,* 408 U.S. 1, 13–14 (1972)).

Concrete efforts to *avoid* litigation, on the other hand, may demonstrate injury sufficient to establish standing. *United States v. Supreme Ct. of New Mexico*, 839 F.3d 888, 900 (10th Cir. 2016) ("Furthermore, prosecutors' efforts to avoid sanctions, and the resulting reduction in available evidence in grand-jury and other criminal proceedings, demonstrate sufficient injuries to

establish federal-court jurisdiction."); *Bronson v. Swensen*, 500 F.3d 1099, 1108 (10th Cir. 2007) ("Standing may still exist even when a plaintiff ends the proscribed behavior, so long as a credible threat remains that such behavior, if taken in the future, would be prosecuted."). However, there must be a credible threat of enforcement for the avoidance actions to give rise to standing. *Tennessee v. Equal Emp. Opportunity Comm'n*, No. 2:24-CV-84-DPM, 2024 WL 3012823 at *3 (E.D. Ark. June 14, 2024). Factual dissimilarity "between the plaintiff's intended future conduct and the conduct that triggered any prior prosecutions under the challenged statute" dilutes the credibility of the threat, and therefore the potential for standing. *Id.*

Plaintiff has not properly alleged concrete efforts to avoid litigation, only that the 2024 Rule *may* have subjectively chilled their business practices. In the Complaint, **Doc. 1**, the Motion for Summary Judgment, **Doc. 22**, and the accompanying affidavit, **Doc. 22-1**, Plaintiff asserts repeatedly that they have taken concrete steps to avoid litigation incurring significant costs and time spent "analyzing whether owner-operators with whom it contracts are properly classified as independent contractors or employees." **Doc. 22-1 at ¶10.** Plaintiff additionally apparently "faces the burden of being forced to dedicate resources to preparing for and potentially defending against investigation or litigation regarding worker classification." ***Id.*** However, neither of these repeated assertions are sufficient to give rise to Article III standing because they are not specific *facts*, but rather conclusory assumptions about Plaintiff's future.[2] *See Lujan*, 504 U.S. at 561 (Plaintiff must set forth by affidavit or other evidence specific facts for purposes of summary judgment).

---

[2] For example, Plaintiff's supposed "costs" are speculatory as alleged. For example, the Small Businesses Administration "concluded that the 2024 Rule *would* impose significant additional compliance and recordkeeping costs on small businesses that hire independent contractors." **Doc. 22 at 11 (emphasis added).** "Would" does not mean Plaintiff has yet suffered those costs, and without more to demonstrate otherwise, the Court cannot assume that Plaintiff has indeed suffered those costs.

Plaintiff's only evidence is an assertion that it "has not entered into a relationship with a new independent owner-operators in part due to regulatory uncertainty and burdens created by the 2024 Rule." *Id.* **at ¶11.** However, that is insufficient at the summary judgment stage. While it is true that "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case," *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994), that motion must be supported by more than a "mere scintilla of evidence." *Rocky Mountain Wild, Inc.*, 56 F.4th at 921. The single factual allegation is insufficient to create a factual situation in which no jury could find for Defendant. *See id.* ("[T]he fact issue must make it so that a reasonable jury could find for the nonmovant.").

The Court therefore finds that Plaintiff does not have Article III standing to challenge the 2024 Rule.

## II.     The 2024 Rule Was Not Arbitrary and Capricious

Additionally, even if Plaintiff did have standing to challenge the 2024 Rule, the 2024 Rule is not arbitrary or capricious. The Court declines to find it unlawful.

The administrative record before the Court is voluminous. Judicial review is based upon "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Here, the Department of Labor received over 50,000 comments during the notice-and-comment period on the 2024 Rule alone. 89 Fed. Reg. 1638-01. While it is true that the district court must conduct its own review of the factual record before the agency, *Olenhouse*, 42 F.3d at 1576, a complete plenary review of the entire existing administrative record involving both the 2021 Rule and the 2024 is simply not possible. The Court therefore confines its review to the portions of the administrative record cited by the parties. *See* 5 U.S.C. § 706.

14

Plaintiff's main contention is that the DOL acted arbitrarily and capriciously when it promulgated the 2024 Rule. Plaintiff advances several arguments underlying that assertion. First, Plaintiff argues that the DOL operated from a "faulty legal premise" when it promulgated the 2024 Rule. **Doc 22 at 13**. Plaintiff then argues that the DOL failed to properly account for various costs to regulated parties in promulgating the 2024 Rule. **Id. at 23**. Next, Plaintiff argues that the DOL acted in excess of its statutory authority. **Id. at 26**. Plaintiff also asserts that the 2024 Rule increases regulatory confusion, rather than ameliorating it. **Id. at 23**. Finally, Plaintiff argues that the DOL's analysis of several relevant factors was flawed. **Id. at 13**. Agency "actions are entitled to a presumption of regularity, and [plaintiff] bears the burden of persuasion to show [the agency] acted arbitrarily and capriciously." *N.M. Health Conns.*, 946 F.3d at 1162. The Court addresses each argument in turn below and finds that Plaintiff has failed to carry its burden of persuasion regarding any of its arbitrary and capricious arguments.

However, the Court must clarify the case law binding its arbitrary and capricious review. Petitioner appears to assert that the Supreme Court's decision to overturn *Chevron's* deference for agency actions[3] in *Loper Bright Enterprises v. Raimondo* extends to the Court's arbitrary and capricious review. 144 S. Ct. 2244, 2257-2273 (2024); *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). While *Loper Bright* did overturn judicial deference to an agency's reasonable interpretation of an ambiguous statute, it did not overturn the APA's "mandate that judicial review of agency policymaking and factfinding be deferential." 144 S. Ct. at 2261 (citing 5 U.S.C. § 706(2)(A) and (E)). *See COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d

---

[3] *Chevron* deference refers to a now overturned two-step framework to interpret statutes administered by federal agencies. Under the framework, the reviewing court must first determine whether Congress has spoken directly on the issue at hand; if Congressional intent is clear, then the court must rule in favor of the interpretation that is in line with that intent. If the statute is silent or ambiguous or silent with respect to the specific issue, however, the court must defer to the agency's interpretation if it is based on a permissible construction of the statute. *See Loper Bright*, 144 S. Ct. at 2254; *Chevron*, 467 U.S. at 842.

269, 274 (4th Cir. 1999) ("When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources."). The Court declines to extend *Loper Bright*'s standard to arbitrary and capricious review until the Tenth Circuit or Supreme Court speaks directly on the issue.

Moreover, while Petitioner invokes *Loper Bright*, Petitioner does not argue that the Department's interpretation of the FLSA is *ambiguous*. Rather, Petitioner argues that the Department's decision to rescind the 2021 Rule and promulgate the 2024 Rule was arbitrary and capricious. **Doc. 22 at 20.** *Loper Bright*, therefore, has no bearing on this case. *See* 144 S. Ct. at 2261. The Court's arbitrary and capricious review proceeds under the original standard for deference to agency action laid out in *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983) and followed by federal courts since its issuance.

### a. The Department of Labor did not act from a "faulty legal premise" in promulgating the 2024 Rule.

Plaintiff's first contention is that the Department of Labor acted from a faulty legal premise that the 2021 Rule was unlawful and therefore acted unlawfully in rescinding the 2021 Rule and promulgating the 2024 Rule. However, Plaintiff's arguments misunderstand basic premises of administrative law and when and why agencies may promulgate a rule.

Plaintiff asserts that Defendants operated from a faulty legal premise in rescinding the 2021 Rule and promulgating the 2024 Rule. **Doc. 22 at 21**. In the 2021 Rule, the DOL concluded control over work and opportunity to work for profit and investment were the two "most probative" factors in distinguishing employees from independent contractors. 86 Fed. Reg. at 1246–47. In the 2024 Rule, the DOL changed its position and found that a test that focuses on two factors, rather than the totality of the circumstances, "did not fully comport with the FLSA's text and purpose." 89 Fed. Reg. at 1647. Instead, Defendants maintain that they promulgated the 2024

Rule "based upon the correct reading of the FLSA's text, as that text has been interpreted *by courts* for over fifty years." **Doc. 30 at 13 (emphasis in original)**. Unlike the 2021 Rule, the 2024 Rule does not allow regulated parties to emphasize any one factor as more probative than the other. 89 Fed. Reg. at 1647. Defendants argue that this is more consistent with the text of the FLSA and precedent, and that they had been mistaken in promulgating a rule that allowed for the emphasis of two factors. **Doc 30 at 12**.

Plaintiff argues that there is nothing in the text of the FLSA that does not permit a test that emphasizes two factors, and that therefore the DOL acted erroneously when it issued the 2024 Rule supposedly to correct mistakes from the 2021 Rule. **Doc. 22 at 14.** Plaintiff also characterizes FLSA's definitions of "employ" and "employee" as "circular and unhelpful." *Id*. This, Plaintiff argues, supports a test that emphasizes control and opportunity to work for wages as the most probative factors based on common law and a common understanding of the already "unhelpful" FLSA. *Id.*

It is true that an agency that relies *solely* on faulty grounds may act arbitrarily or capriciously in rescinding a regulation and promulgating a new one. *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 88 (1943). However, where the agency acts on legitimate grounds and still elects to change a policy, it need not demonstrate "that the reasons for the new policy are better than the reasons for the old one." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Chenery*, 318 U.S. at 95. Rather, the agency need only show that "the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better." *FCC*, 556 U.S. at 515. The Supreme Court has "made clear . . . that a court is not to substitute its judgment for that of the agency." *Vermont Yankee*, 556 U.S. at 514.

As a preliminary matter, it is not clear that the FLSA even permits a test that emphasizes two factors. The Supreme Court routinely emphasized that "no one factor is controlling" in creating the economic realities test in *Silk* and *Rutherford*. *Silk*, 331 U.S. at 716; *Rutherford*, 331 U.S. at 730 ("We think, however, that the determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity."); *Bartels*, 332 U.S. at 130 ("It is the total stiuation that controls." (error in original)). The Tenth Circuit similarly has favored a 'totality of the circumstances' test and do not give one factor more weight than the others. *Baker*, 137 F.3d 1440. While it is true that most tests list control and opportunity to work for profit first in the list of factors, that does not itself mean that the FLSA allows for a decisionmaker to consider those to be the most probative. There could be several reasons for listing them first, not least of which would be simply following the example set by the Supreme Court in *Silk*, *Rutherford*, and *Bartels*. *Silk*, 331 U.S. at 716; *Rutherford*, 331 U.S. at 730; *Bartels*, 332 U.S. at 130. If the FLSA does prohibit a test that emphasizes two factors, that would mean that Plaintiff's assertion that the DOL operated from a "faulty legal premise" fails, because the 2024 Rule would be correcting the potentially unlawful 2021 Rule.

However, Plaintiff is still correct that the Supreme Court never overtly prescribed a specific test. **Doc. 22 at 15**. But contrary to what Plaintiff asserts, that does not mean that a two-factor test is the *only* option available. Even if the FLSA does allow for a test that emphasizes two factors, it also allows for a multi-factor 'totality of the circumstances' test. Indeed, both the Supreme Court and Tenth Circuit have routinely affirmed that a 'totality of the circumstances' test is preferable, if not proper. *Rutherford*, 331 U.S. at 730 (citing *Silk*, 331 U.S. at 716, 719 (denying the existence of a "rule of thumb to define the limits of the employer-employee relationship" and determining employment status based on "the total situation")); *Baker*, 137 F.3d at 1441 (Finding

18

that "[n]one of the factors alone is dispositive; instead, the court must employ a totality-of-the-circumstances approach.").

When promulgating a rule that changes agency policy, the DOL did *not* need to demonstrate that the 2024 Rule was better than the 2021 Rule, only that it acted on legitimate grounds and had reason to do so. *FCC*, 556 U.S. at 515; *Chenery*, 318 U.S. at 95. All that the Supreme Court mandates is that that the DOL show that the 2024 Rule is "permissible under the [FLSA], that there are good reasons for it, and that the agency believes it to be better." *Id.* The 2024 Rule more than satisfies those requirements. It clearly lays out its reasons for believing that the 2021 Rule created regulatory confusion and departed from established precedent, as well as its reasons for creating the 2024 Rule's test. 89 Fed. Reg. at 1651. Where an agency acted within a zone of reasonableness, the court cannot supplant the agency's decision simply because the previous rule may have pleased certain regulated parties more. *Vermont Yankee*, 556 U.S. at 514.

Moreover, the DOL does not automatically act arbitrarily or capriciously by using 'ameliorating regulatory confusion' created by the agency's departure from established policy in 2021 or 'consistency with established precedent' as justifications for rescinding the 2021 Rule or promulgating the 2024 Rule. Indeed, the Supreme Court *requires* that agencies remain "cognizant [of] longstanding policies [that] may have engendered serious reliance interests. . . ." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1913 (2020) (internal quotations omitted). Changing policy for the sake of consistency or to ensure a "settled rule" is similarly valid. *State Farm*, 463 U.S. at 42.

Because Defendants did not act from an erroneous legal premise in promulgating the 2024 Rule, the Court cannot find that its departure from the probative factors test in the 2021 Rule was arbitrary or capricious.

19

**b.** __The Department of Labor properly accounted for costs to regulated parties.__

Plaintiff also asserts that Defendant failed to properly account for the costs to regulated parties the 2024 Rule might impose because it did not discuss them at length in the final 2024 Rule. Plaintiff asserts that this is sufficient to strike the 2024 Rule down as arbitrary and capricious. Plaintiff is incorrect—Defendant properly considered concerns raised during the notice-and-comment period, and therefore did not arbitrarily or capriciously disregard those concerns from commenters.

An agency's decision is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem" or otherwise totally ignored evidence before it. *Utah Envtl. Cong. v. Troyer*, 479 F.3d 1269, 1280 (10th Cir. 2007) (quotations omitted). However, an agency's decision is "entitled to a presumption of regularity," and the reviewing court may not substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415-416 (1971). The Court must uphold the agency's decision if the agency "articulated a rational connection between the facts found and the decision made." *Payton v. U.S. Dep't of Agric.*, 337 F.3d 1163, 1168 (10th Cir. 2003). However, the agency need not promulgate a final rule that fully incorporates every piece of evidence before it. Rather, the agency must examine all the relevant factual information, articulate a satisfactory explanation for its action, and rationally connect the factual record and the decision. *Ctr. For Biol. Diversity v. Dep't of the Interior*, 72 F.4th 1166, 1178 (10th Cir. 2023); *Kobach*, 772 F.3d at 1197 (the reviewing court must "ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made."). "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *State Farm*, 463 F.3d at 50.

Plaintiff contends that Defendant wholly ignored comments about potential increases in compliance costs to regulated businesses and independent contractors because the 2024 Rule does not include the changes proposed in comments. Defendant does maintain that they properly considered costs to regulated parties, but more importantly, that the 2024 Rule is guidance for regulated parties, and therefore does not bind any regulated party like the FLSA would.

However, Defendants' contention that the 2024 Rule does not bear the force of law is irrelevant to dismissing Plaintiff's original arguments. Assuming the 2024 Rule does bind regulated parties, and is not mere guidance, Defendants still did not need to promulgate a rule that satisfied every commenter or included every piece of evidence presented during the notice-and-comment period. Rather, Defendants only had to consider all the comments before them, promulgate a rule rationally connected to the factual record and articulate the reasoning for including or disregarding comments. Defendants have more than satisfied their burden to elucidate a rational connection between the facts presented and the conclusion reached.

First, Defendants clearly considered and addressed issues raised by regulated small businesses in the notice-and-comment period. In its factor analysis, for example, Defendants discussed the "challenge of setting forth a regulation that would capture all of the facts relevant to the nature and degree of a potential employer's control while balancing the practical considerations of the way businesses . . . must simultaneously comply with a host of legal, regulatory, and business-related demands." 89 Fed. Reg. at 1694. Indeed, Defendants acknowledged that "comments have persuaded [them] that the provision as proposed may lead to unintended consequences. . . ." *Id.* However, Defendants went on to clearly demonstrate its rationale for not finding these concerns persuasive. The 2024 Rule provided clear counterexamples and arguments for dismissing commenters' concerns and indeed spent several pages outlining its reasoning. *Id.*

21

Regardless of whether one agrees with the decision, it is certainly possible to see how Defendants *made* that decision, which is all the law requires. *See Olenhouse*, 42 F.3d at 1575 ("If the agency has failed to provide a reasoned explanation for its action, or if limitations in the administrative record make it impossible to conclude the action was the product of reasoned decisionmaking, the reviewing court may supplement the record or remand the case to the agency for further proceedings.").

In its factor analysis, Defendants also clearly considered the impacts on independent contractors discussed during notice-and-comment. For example, Defendants clearly discussed the hypothetical "disruptive economic consequences" that could arise from the 2024 Rule's potential to chill small businesses engaging independent contractors. 89 Fed. Reg. at 1648. In doing so, it both discussed the comments it found particularly illuminating, and laid out its reasons for dismissing the concerns: the 2024 Rule's new factor test would, in Defendants' opinion, "offer[] a better framework for understanding and applying" classification parameters. *Id.*

Moreover, Defendants also discussed at length the potential compliance costs to both regulated businesses and independent contractors. 89 Fed. Reg. at 1733. Defendants clearly laid out its parameters for determining compliance costs, which included "(1) the number of establishments and government entities using independent contractors, and the current number of independent contractors; (2) the wage rates for the employees and for the independent contractors reviewing the rule; and contractors reviewing the rule; and (3) the number of hours that it estimates employers and independent contractors will spend reviewing the rule." *Id.* It went on to say that the Department believes that it would take one hour to familiarize oneself with the 2024 Rule. *Id.*[4]

---

[4] In doing so, the DOL also clearly divided up how it expected parties to spend that hour. It expects independent contractors to spend roughly thirty minutes on regulation familiarization. 89 Fed. Reg. at 1733. It expects businesses and governments to spend roughly one hour of regulation familiarization. *Id.*

The DOL received several comments suggesting that the "rule familiarization cost was too low." 89 Fed. Reg. at 1734. It discussed the most persuasive comments from the Heritage Foundation, the U.S. Chamber of Commerce, and the Modern Economy Project. *Id.* "In response to all the comments received on this topic, the Department reconsidered the time for rule familiarization and doubled its original estimates, increasing them to 1 hour for potentially affected firms and 30 minutes for independent contractors." *Id.* This is because Defendants believe "a longer time estimate would not be appropriate because this estimate represents an average of the firms who may spend more time for review, and those who will not spend any time reviewing the rule." *Id.* In other words, Defendants chose to account for parties who may not read the regulation at all and parties who may spend too much time on the regulation in order to understand it.

This is more than sufficient to demonstrate that Defendants considered the concerns which commenters raised about compliance costs. Neither regulated parties nor commenters are entitled to a Rule that fully addresses every concern they raise. *See Olenhouse*, 42 F.3d at 1575. Rather, it is the duty of the agency to demonstrate that it acted within a "zone of reasonableness" in *considering* all the evidence before it before making its decision. *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). An agency is still entitled to disregard pieces of evidence presented during notice-and-comment if they clearly elucidate their reasoning and do not ignore major problems in their entirety. *Id.* However, the DOL did properly demonstrate that it considered the concerns about costs to regulated parties and independent contractors that commenters raised during the notice-and-comment period, even if it did not promulgate a final rule that fully addressed or ameliorated all of those concerns.

As such, the Court cannot disturb the DOL's findings because there is a clearly discernible rational connection between the comments received and the final 2024 Rule. The Court cannot

mandate that agencies satisfy every single commenter—such a mandate would be wholly impossible. Nor can the Court set aside a rule because it is *possible* to have come to a different conclusion. If possible, the Court must uphold an agency's action "on the basis articulated by the agency itself." *State Farm*, 463 F.3d at 50. The Court will not disturb the DOL's rationale where that rationale is easily followed.

Because Defendants have carried their burden, the Court rejects Plaintiff's argument that the 2024 Rule is arbitrary and capricious for failure to properly consider compliance costs.

### c. The Department of Labor's factor analysis was proper and within the agency's statutory authority.

Finally, Defendant's analysis of the relevant judicially created factors in promulgating the 2024 Rule was proper under the APA.

It is true that a Court's inquiry into the basis of an agency action must be "searching and careful." *Arizona Public Service Co.*, 562 F.3d at 1123; *Maier v. EPA*, 114 F.3d 1032, 1039 (10th Cir. 1997); *Alaska Dep't of Env't Cons.*, 540 U.S. 497. However, as discussed at length *supra*, trial courts may not set aside an agency action because of a less-than-ideal explanation if the Court can reasonably discern the agency's decision-making process. *Id.* The review is, therefore, "narrow and deferential" to the agency, giving it a presumption of validity, and the Court must uphold the agency's action if it has articulated a rational basis for the decision and has considered all relevant factors. *Wolfe v. Barnhart*, 446 F.3d 1096, 1100 (10th Cir. 2006); *Wyoming v. USDA*, 661 F.3d 1209, 1227 (10th Cir. 2011); *Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780, 793 (10th Cir. 2010); *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1197 (10th Cir. 2014) (noting that the agency's action has a presumption of validity and that the burden of proof rests with the party challenging the agency action). An agency may seek to create consistency with established precedent or remedy confusion created by inconsistent policy without acting arbitrarily

or capriciously. *Regents of the Univ. of California*, 140 S. Ct. at 1913. Agencies must remain "cognizant [of] longstanding policies [that] may have engendered serious reliance interests. . . ." *Id.* (internal quotations omitted); *State Farm*, 463 U.S. at 42.

Plaintiff argues that Defendants improperly relied on the FLSA's remedial purpose to broaden the statute's coverage by misconstruing several economic reality factors. **Doc. 22 at 26**. Moreover, Plaintiff argues that the DOL failed to "explain its departure from the 2021 Rule's treatment of the same factors." ***Id.*** Defendants assert that they acted within the bounds of their statutory authority and clearly articulated their reasoning for rebalancing each factor. **Doc. 30 at 13**. Defendants also maintain that their purpose was twofold: ameliorating regulatory confusion and ensuring DOL regulations complied with "the most faithful interpretation of the FLSA's text, as articulated by courts for over seventy years." ***Id.* at 15**

Regarding the 2024 Rule's new test, the parties argue over four of the economic reality factors. Plaintiff asserts that Defendants have impermissibly expanded their regulatory control by broadening the reach of each factor beyond what the FLSA covers. **Doc. 22 at 26**.

### i. *Control*

Plaintiff raises several objections to the 2024 Rule's classification of the control factor. First, Plaintiff asserts that "the 2024 Rule improperly elevates "reserved right or authority to [] control worker[s]" under a contract to the same importance as "actual practice." **Doc. 22 at 19** (edits in original) (*quoting* 89 Fed. Reg. 1638, 1639, 1653.). In other words, Plaintiff argues "that the 2024 Rule's recognition that reserved control can be indicative of an employment relationship is somehow in tension with the Supreme Court's emphasis on 'economic reality.'" **Doc. 30 at 19**. This, Plaintiff asserts, is contrary to the "Supreme Court['s] command[] that economic reality

rather than technical concepts is to be the test for employment under the FLSA." **Doc. 22 at 19** (quoting *Goldberg*, 366 U.S. at 33 (citing *Silk*, 331 U.S. at 713; *Rutherford*, 331 U.S. at 726)).

However, the Court agrees with Defendants' assertion that "precedent does not support 'the adoption of a generally applicable rule that in all circumstances reserved or unexercised rights, such as the right to control, are in every instance less indicative of the economic reality than the actual practices of the parties.'" **Doc. 30 at 19** (quoting 89 Fed. Reg. at 1720).

Second, Plaintiff asserts that the "DOL inappropriately expands the object of an employer's control." **Doc. 22 at 20.** The 2021 Rule focused its analysis on control over "key aspects of the performance of the work," 86 Fed. Reg. at 1246–47. Conversely, the 2024 Rule redefines control to include control over "the performance of the work and the economic aspects of the working relationship." 89 Fed. Reg. at 1743. Plaintiff asserts that this is inconsistent with *Silk* and does not appear in any case applying the economic reality test. **Doc. 22 at 20.**

However, *Silk* offers little guidance as to this part of the control element. Indeed, neither *Silk* nor *Rutherford* offer any insight. *Silk*, 331 U.S. 714; *Rutherford*, 331 U.S. 722. However, several circuit courts *have* considered the "economic aspects of the working relationship" in evaluating the control factor, which the DOL includes in its justification. 89 Fed. Reg. at 1693 (collecting cases); *see e.g.*, *Hopkins v. Cornerstone Am.*, 545 F.3d 338 (5th Cir. 2008); *Verma v. 3001 Castor, Inc.*, 937 F.3d 221 (3d Cir. 2019). The DOL explained clearly that it chose to follow those cases in expanding the control factor to include the "economic aspects of the working relationship," which is not arbitrary or capricious to do. *FCC*, 592 U.S. at 423 ("A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision.").

Finally, Plaintiff argues that "the 2024 Rule . . . states that a business requiring workers to follow legal and safety obligations may indicate employee classification." **Doc. 22 at 20.** In doing so, Plaintiff argues that "these types of requirements are generally imposed by employers on both employees and independent contractors," so "insisting on adherence to certain rules to which the worker is already legally bound would not make the worker more or less likely to be an employee." *Id.* (quoting 86 Fed. Reg. at 1182–83). Defendants counter that this is a misrepresentation, and that "the 2024 Rule explains that actions taken by the potential employer for the sole purpose of complying with legal requirements are not indicative of control." **Doc. 30 at 20** (internal quotations omitted); 89 Fed. Reg. at 1694, 1743; 29 C.F.R. § 795.110(b)(4).

Plaintiff's argument lacks merit. The DOL specifically identified cases to support their position and clearly addressed concerns raised by commenters. *See* 89 Fed. Reg. at 1693- 94 & n.370 (*citing Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1316 (11th Cir. 2013); *Shultz v. Mistletoe Exp. Serv., Inc.,* 434 F.2d 1267, 1271 (10th Cir. 1970)). That is sufficient to satisfy a deferential arbitrary and capricious inquiry. *FCC*, 592 U.S. at 423.

Moreover, the additional work that may be created by this interpretation of the control factor does not "go an inch beyond the minimum legal requirement," which would be unlawful. **Doc. 47 at 17**; *c.f. Vermont Yankee*, 435 U.S. 545–549 (establishing the floor and ceiling of requirements for agency process). Indeed, in a totality of circumstances inquiry, which this Court has already found that the DOL is allowed to impose, one would need to conduct a facts-intensive inquiry. *See Rutherford*, 331 U.S. at 730 (citing *Silk*, 331 U.S. at 716, 719 (denying the existence of a "rule of thumb to define the limits of the employer-employee relationship" and determining employment status based on "the total situation")); *Baker*, 137 F.3d at 1441 (Finding that "[n]one

27

of the factors alone is dispositive; instead, the court must employ a totality-of-the-circumstances approach.").

The Court cannot find that the DOL's interpretation of the control factor is arbitrary and capricious where the interpretation is reasonable, in line with appellate precedent, and clearly discernible in the final text of the 2024 Rule.

### ii.  *Integral part*

Next, Plaintiff objects to the DOL's decision to replace the 2021 Rule's "integrated unit of production" factor with asking whether the person is an "integral part" of the business such that "the work they perform is critical, necessary, or central to the potential employer's principal business." 29 C.F.R. § 795.110(b)(5); *see also* 89 Fed. Reg. at 1707-11.

However, the departure is neither inconsistent with law nor otherwise arbitrary and capricious.  *Silk* concluded that coal "unloaders" were employees of a retail coal company in part because they were 'an integral part of the business[] of retailing coal." 331 U.S. at 716. Nor does the Tenth Circuit allow for the term "integrated unit."  *Baker*, 137 F.3d at 1440, 1443.  Rather, courts use the term "integral," focusing on the worker's work and its integrality to the business, not just the worker's integration into the business itself.  *Id.*

Moreover, all of this is clearly discernible in the 2024 Rule.  89 Fed. Reg. at 1707-11.  The DOL may promulgate a rule with the goal of creating consistency in policy and precedent if they provide a reasoned explanation for doing so.  *State Farm*, 463 U.S. at 42; *Regents*, 140 S. Ct. 1913 (Requiring that agencies remain "cognizant [of] longstanding policies [that] may have engendered serious reliance interests. . . .").  The Court cannot upend the DOL's decision where it clearly complied with these requirements.  *FCC*, 592 U.S. at 423.

### iii.    *Investment*

Plaintiff next objects to the DOL's decision to break "investments" and "opportunity for profit or loss" into separate factors and to consider a worker's investments "on a relative basis with the potential employer's investments in its overall business."  **Doc. 22 at 22**; 29 C.F.R. § 795.110(b)(2); *see also* 89 Fed. Reg. at 1676-85.  Plaintiff argues that *Silk* analyzed these factors together, but that the 2024 Rule separates them improperly.  **Doc. 22 at 22**. Moreover, Plaintiff categorizes any decision to separate the two by an appellate court as "dicta."  *Id.*

Plaintiff is incorrect.  *Silk* did not clearly analyze the two together, but rather listed them successively as factors in the economic realities test.  *Silk*, 331 U.S. at 716 (The *Silk* factors include "degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation[,] and skill required in the claimed independent operation are important for decision.").  Moreover, the Tenth Circuit *does* analyze the two separately.  The relevant factors from *Baker* are "the worker's opportunity for profit or loss," *as well as* "the worker's investment in the business."  *Baker*, 137 F.3d at 1440.  It was not improper for the DOL to separate the two where the Supreme Court has not expressly required that they be analyzed together and where federal appellate courts analyze them separately.

### iv.    *Permanence*

Finally, Plaintiff objects to the DOL's decision to conclude that that a worker is more likely to be an employee "when the work relationship is indefinite in duration, continuous, or exclusive of work for other employers," but that impermanence "is not necessarily indicative of independent contractor status" where "a lack of permanence is due to operational characteristics that are unique or intrinsic to particular businesses or industries and the workers they employ." 29 C.F.R. §

795.110(b)(3); *see also* 89 Fed. Reg. at 1685-90.  Plaintiff categorizes this approach as "logically flawed."  **Doc. 22 at 22.**

However, it is not for this Court to determined whether or not the DOL's analysis of the permanence factor to be the best or most logically sound analysis available.  *Olenhouse*, 42 F.3d at 1575.  Rather, the Court must only ascertain whether the DOL acted reasonably, and their rationale is easily determinable and connected to the record. *FCC*, 592 U.S. at 423.  The DOL's analysis is both clearly discernible and at least consistent with Tenth Circuit case law.  See 89 Fed. Reg. at 1686-88; *Baker*, 137 F.3d at 1442.  That is all that the Court needs to find that this analysis was not arbitrary or capricious.  *Olenhouse*, 42 F.3d at 1575 (an agency must provide a reasonable explanation for its action).

Plaintiff's objections to the four specific factors thus necessarily fail. The 2024 Rule was not arbitrary and capricious, and the Court will not find it unlawful.

### III.　　**Defendant Su had authority to lawfully promulgate the 2024 Rule.**

Finally, Plaintiff argues that the 2024 Rule is unlawful because Defendant Su lacked the authority to promulgate it.  **Doc. 22 at 38.**  For the reasons below, the Court disagrees.

Article II vests the power to nominate executive officers to the President.  U.S. Const. art. II.  However, *appointment* of executive officers generally requires the advice and consent of the Senate.  *Id.*  The Federal Vacancies Reform Act ("FVRA" or "Vacancies Act") provides an exception to that general constitutional rule.  Where an officer of an executive agency "whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office," the President may temporarily authorize the first assistant to that office to perform the functions and duties of the office.  5 U.S.C. §3345(a)(1).  The acting officer must have served in

the position of first assistant for more than 90 days and they may only act subject to the time limits of the FVRA. *Id.* at (b)(1)(A)(i) & (ii). If an appointment does not comply with the FVRA, regulations promulgated by the acting officer "shall have no force or effect." 5 U.S.C. §3348(d).

Under the FVRA, an acting executive officer may not serve for more than 210 days beginning on the day the vacancy occurs. 5 U.S.C. §3346(a)(1). If the President nominates the acting officer to fill the vacancy permanently, the 210-day period begins on the date of the nomination. *Id.* at (a)(2). If the nomination fails and the President submits a second nomination, the acting officer may serve until confirmed or for 210 days after the Senate rejects the second nomination or it is otherwise returned to the President. *Id.* at (b)(2)(A) & (B).

Plaintiff argues that Defendant Su's time as acting Secretary of Labor has long exceeded the time limits laid out in the FVRA. **Doc. 22 at 33.** Defendants argue that Defendant Su serves lawfully pursuant to 52 U.S.C. § 552, which authorizes the properly confirmed Deputy Secretary of Labor to temporarily fill the role of Secretary of Labor.

It is not clear whether the FVRA's time limits apply to Defendant Su's service. 29 U.S.C. §556 does not speak to any time limits, a fact Defendants were quick to point out. **Doc. 22 at 33.** Indeed, the Government Accountability Office ("GAO") conducted a review of Defendant Su's service as Acting Secretary and concluded both that it was lawful and that time limits did not apply to the service. U.S. Department of Labor—Legality of Service of Acting Secretary of Labor, B-335451 at 4–5 (Sept. 21, 2023), https://www.gao.gov/assets/870/861240.pdf (*hereinafter* "GAO Letter"). The office concluded that "when an officer is serving under a position-specific authority," the FVRA's time limits do not apply "to their acting service." *Id.* at 5. It is possible that Defendant Su's service could be lawful regardless of any time limitations. This is especially

31

persuasive when considering the language of 29 U.S.C. §552, which authorizes the Deputy Secretary to fill the role of Secretary "*until a successor is appointed*." (emphasis added).

However, it is also true that the GAO review took place in 2023, over a year ago at this point. And the GAO noted that Defendant Su "may continue to serve in that position *until a successor is appointed*." GAO Letter at 5 (emphasis added). This, it would appear, implies that even the GAO assumed that Defendant Su's service would likely end, and that her nomination to permanently fill the position would be successful. Moreover, federal courts have routinely emphasized the exclusivity provision of the FVRA—the FVRA is the *only* method to authorize an acting official to perform the functions of an executive officer. 5 U.S.C. §3347(a); *see also Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109, 125 (D.D.C.), *aff'd,* 920 F.3d 1 (D.C. Cir. 2019), *judgment entered,* 762 F. App'x 7 (D.C. Cir. 2019); *Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, 605 F. Supp. 3d 28, 46 (D.D.C. 2022), *appeal dismissed,* No. 22-5205, 2022 WL 4086993 (D.C. Cir. Sept. 2, 2022); *Bullock v. United States Bureau of Land Mgmt.*, 489 F. Supp. 3d 1112, 1125 (D. Mont. 2020). While it may be true that the FVRA implicitly authorizes service without a statute of limitations for certain role-specific acts, the Court will treat the GAO's decision as persuasive, not a mandate.

However, the GAO's decision is not the only authority before this Court. Defendant Su still served lawfully at the time of the 2024 Rule's promulgation, even within the confines of the FVRA. The FVRA tolls its 210-day time limit where the President resubmits a nomination to the Senate. 5 U.S.C. §3346(b)(2)(B). The 2024 Rule's issuance fell outside of the 210-day period for Defendant Su's *original* March 14, 2023, nomination, PN388 - Nomination of Julie A. Su for Department of Labor, 118th Congress (2023-2024), PN388, 118th Cong. (2024), https://www.congress.gov/nomination/118th-congress/388., which would have rendered the rule

unlawful had that been the *only* action on Defendant Su's nomination. 5 U.S.C. § 3348(d); *see also United States v. Santos-Caporal*, No. 118CR171AGFACL, 2019 WL 468795 at *3 (E.D. Mo. Jan. 9, 2019), *report and recommendation adopted,* No. 1:18CR00171 JAR, 2019 WL 460563 (E.D. Mo. Feb. 6, 2019) ("If an appointment is not in compliance with the FVRA, § 3348(d) provides that 'any function or duty of a vacant office' performed by a person not properly serving under the statute 'shall have no force or effect.'").

President Biden resubmitted Defendant Su's nomination on January 8, 2024. 170 Cong. Rec. S1011 (daily ed. Feb. 27, 2024). According to the text of the FVRA, that restarted the clock on the 210-day time limit, allowing Defendant Su to serve at least through August of 2024. 5 U.S.C. §3346(b)(2)(B). The 2024 Rule came out two days later, which is well within the new 210-day time-period. *See id*; 89 Fed. Reg. 1638-01. While the Court makes no judgement on whether Defendant Su is *currently* serving lawfully, she *was* plainly serving lawfully at the time of the 2024 Rule's promulgation.

Plaintiff also argues that Defendant Su is not serving "temporarily" because the President "refuse[s] to make a good-faith effort to fill the position on a permanent basis." **Doc. 22 at 39**. It is true that there comes a time where "courts can and must play a role in policing 'acting' appointments that are effectively permanent." *Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, 605 F. Supp. 3d 28, 47 (D.D.C. 2022) (citing *Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109, 153 (D.D.C. 2019)). However, Plaintiff points to no authority requiring such a 'good-faith effort,' to support their assertion. *Id.* The FVRA does not speak to such a 'good-faith effort' requirement for a first officer to serve as an acting secretary and the Court will not impose one where it is not required. Defendant Su's service complies with the time limits laid out by the FVRA.

The Court therefore concludes that Defendant Su's service is lawful under the Appointments Clause and the FVRA. As such, the Court cannot find that the 2024 Rule is unlawful because of supposed deficiencies in Defendant Su's authority.

### IV.    Plaintiff has waived any Due Process or Regulatory Flexibility Act claim.

Defendant argues that Plaintiff improperly briefed arguments about potential violations of due process or the Regulatory Flexibility Act and has thus waived them. **Doc. 47 at 24.** The Court finds that Plaintiff has waived the remaining due process and Regulatory Flexibility Act arguments and therefore declines to address the merits of either argument.

Parties waive arguments if they do not raise them in responses to motions for summary judgment. *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768–69 (10th Cir. 2001); *Lewis v. XL Catlin*, 542 F. Supp. 3d 1159, 1168 n.6 (D.N.M. 2021), *appeal dismissed*, No. 21-2077, 2021 WL 6197126 (10th Cir. Sept. 27, 2021) ("Implicit in [D.N.M. LR-Civ. 7.1(b)] is that the failure to respond to an argument raised in a motion constitutes consent to grant the motion to the extent associated with that particular argument."); *Ortega v. Edgman*, No. CIV 21-0728 RB/JHR, 2022 WL 796374, at *9 (D.N.M. Mar. 16, 2022) (same). Once a party files a motion for summary judgment, the party resisting that motion cannot rest solely on their initial pleadings. *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992). Rather, a party that fails to address or rebut arguments raised in an opposing party's motion for summary judgment loses the opportunity to do so later on. *Id.*; *Tran v. Trustees of State Colleges in Colo.*, 355 F.3d 1263, 1266 (10th Cir.2004) ("Issues not raised in the opening brief are deemed abandoned or waived." (quoting *Coleman v. B–G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir.1997)) (internal quotation marks omitted)).

Parties also waive arguments where they fail to properly brief them, even if they mention the arguments in a perfunctory fashion. *Iweha v. State of Kansas*, 121 F.4th 1208, 1236 (10th Cir. 2024). This includes arguments that parties improperly categorize or conflate. *N. New Mexicans Protecting Land, Water & Rts. v. United States*, 704 F. App'x 723, 727–28 (10th Cir. 2017); *see also Conroy v. Vilsack*, 707 F.3d 1163, 1170–71 (10th Cir. 2013) ("[The party] has not briefed any arguments pertaining to that claim, so we consider it abandoned.").

Plaintiff alleged that the 2024 Rule violated both the Regulatory Flexibility Act ("RFA") and its due process rights in its initial complaint. **Doc. 1**. Subsequently, the parties agreed that this was the improper vehicle in which to advance arguments and Plaintiff filed its opening brief, styled as a motion for summary judgment. **Doc. 22.** In that initial briefing, Plaintiff does briefly touch on the RFA and due process claims it initially discussed in its Complaint. *Id.* Defendant filed a Cross-Motion to Dismiss, or in the alternative, for Summary Judgment. **Doc. 30.** It is with response to this Cross-Motion that Plaintiff waives its due process and RFA arguments because Plaintiff fails to properly advance arguments *in response* to a motion for summary judgment. **Doc. 46**; *Hinsdale*, 19 F. App'x at 768.

Defendant addresses both the RFA and due process issues in its cross-motion. **Doc. 30 at 25, 29**. However, Plaintiff's Reply mentions the RFA only once and does not mention due process at all. **Doc. 46.** Because Defendant filed a motion for summary judgment, Plaintiff was obligated to raise any arguments in response that it did not wish to waive. *Iweha*, 121 F.4th at 1236 (A "[non-movant's] failure to rebut the arguments raised by defendants in their motion for summary judgment is fatal to his attempt to raise and rebut such arguments on . . . appeal." (quoting *Coffey*, 955 F.2d at 1393)). This includes Defendant's arguments that it did not violate the RFA or Plaintiff's due process rights. *Id.* Based on Plaintiff's failure to properly and specifically respond

35

to arguments in Defendant's Motion means that Plaintiff has waived them. *Ortega v. Edgman*, No. CIV 21-0728 RB/JHR, 2022 WL 796374, at *9 (D.N.M. Mar. 16, 2022) (Failing to "specifically respond to Defendants' arguments regarding the claim" means that Plaintiff "has waived this claim.").

However, because Plaintiff also filed a motion for summary judgment, the Court feels obligated to address the arguments as they were raised in Plaintiff's initial motion. Plaintiff's arguments are improperly briefed even absent its failure to renew. Plaintiff's RFA and Due Process arguments in its initial Motion for Summary Judgment are briefed in only a perfunctory fashion. In its Motion, Plaintiff's due process argument is less than a page, and raises insufficiently specific or persuasive arguments necessary to surmount the procedural barrier already discussed *supra*. Its argument rests on the continued assertion that the 2024 Rule is lacking in clarity, which is a branch of its arbitrary and capricious analysis. Regardless, Plaintiff waived the argument by failing to raise it in its Reply, so any cursory analysis—either in the Complaint or in its Motion— is without the force of procedure.

Moreover, even in its opening Motion, Plaintiff references the RFA only in its argument that the 2024 Rule is arbitrary and capricious. **Doc. 22 at 26**. It uses the RFA as additional support for its argument that the 2024 Rule is somehow arbitrary or capricious and appears to be an offshoot of its "faulty legal premise" argument that the Court discusses above. This is precisely the kind of improper argument classification and confusion that the Tenth Circuit has already prohibited. *See N. New Mexicans Protecting Land, Water & Rts.*, 704 F. App'x at 727–28. Plaintiff's RFA argument has been improperly briefed from the beginning.

The Court therefore finds that Plaintiff has waived its remaining arguments and declines to address the merits of either.

## CONCLUSION

Plaintiff lacks the Article III standing necessary to challenge the 2024 Rule, and its arguments are therefore not properly before the Court.  If they were, Plaintiff's arguments either fail or have been improperly briefed and therefore waived.  For these reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment (**doc. 22**) and **GRANTS** Defendant's Cross-Motion to Dismiss, or in the alternative, for Summary Judgment (**doc. 30**).

**IT IS SO ORDERED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE